## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| FTD Companies, Inc., et al.,[1] | : | **Case No. 19-11240 (LSS)** |
|  | : |  |
| Debtors. | : | **(Jointly Administered)** |
|  | : |  |
|  | : | **Re: Docket No. 19** |
|  | : |  |

**INTERIM ORDER PURSUANT TO SECTIONS
105, 361, 362, 363, 364, AND 507 OF THE BANKRUPTCY
CODE, BANKRUPTCY RULE 4001, AND LOCAL RULE 4001-2,
(I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION
FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,
(III) SCHEDULING FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion of the Debtors, Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, for Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling Final Hearing, and (IV) Granting Related Relief* [Docket No. 19] (the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking entry of (i) an interim order (this "Interim Order") and (ii) a final order

---

[1] The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce LLC (0019); and Provide Creations, Inc. (8964). The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Motion or the DIP Documents (defined below), as applicable.

(the "<u>Final Order</u>"); and the Debtors' having requested on the record at the interim hearing on the

Motion (the "<u>Interim Hearing</u>") that the Court enter this Interim Order, *inter alia*:

       (a)      authorizing FTD Companies, Inc. ("<u>FTD</u>" or "<u>Borrower</u>") and its affiliated

Debtors to obtain secured postpetition financing on a superpriority basis (the "<u>DIP Facility</u>", and

the loans provided to FTD thereunder, the "<u>DIP Loans</u>") pursuant to the terms and conditions of

that certain Superpriority Secured  Debtor-in-Possession Credit Agreement filed as <u>Exhibit B</u> to

the Motion (as the same may be amended, supplemented, restated or otherwise modified from time

to time, the "<u>DIP Agreement</u>"), by and among (i) the Borrower, (ii) the other Debtors (collectively

the "<u>Guarantors</u>"), (iii) Bank of America, N.A. as administrative agent (the "<u>DIP Agent</u>"), and (iv)

the lenders from time to time party thereto (each a "<u>DIP Lender</u>" and collectively, the "<u>DIP

Lenders</u>" and collectively with the DIP Agent and providers of hedge products and treasury

management services secured by the DIP Collateral (as defined below), the "<u>DIP Secured Parties</u>");

       (b)      authorizing the Debtors to execute the DIP Agreement and the other

documents, agreements and instruments delivered pursuant thereto or executed or filed in

connection therewith, all as may be reasonably requested by the DIP Secured Parties (as the same

may be amended, restated, supplemented or otherwise modified from time to time, and collectively

with the DIP Agreement, the "<u>DIP Documents</u>");

       (c)      authorizing the Debtors to consummate the transactions contemplated by

the DIP Documents;

       (d)      granting to the DIP Secured Parties the DIP Liens (as defined below) on all

of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and

outstanding thereunder and under the DIP Documents, as applicable, and this Interim Order and

any Final Order, as applicable (collectively, and including all "Secured Obligations" as defined in

the DIP Agreement, the "DIP Obligations"), subject only to prior payment of the Carve-Out (as defined in paragraph 17 below);

(e)    granting allowed superpriority administrative expense claims to the DIP Secured Parties in connection with the DIP Facility;

(f)    authorizing the Debtors to use Prepetition Collateral and Cash Collateral (each as defined below) (together with the DIP Facility, the "Postpetition Financing Arrangement");

(g)    authorizing the Debtors to grant adequate protection to the Prepetition Lenders (as defined below);

(h)    authorizing the Debtors to pay off the Bridge Facility (defined below) with the proceeds of borrowings under the DIP Facility;

(i)    scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of the Final Order; and

(j)    granting such other and further relief as this Court deems necessary and just ((a) through (j) collectively, the "Requested Relief");

and the interim hearing on the Motion (the "Interim Hearing") having been held on June 4, 2019; and upon all of the pleadings filed with the Court and the evidence proffered or adduced and representations of counsel at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the Requested Relief; and it appearing that the Requested Relief is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.      <u>Petition Date</u>.  On June 3, 2019 (the "<u>Petition Date</u>"), the Debtors commenced their chapter 11 cases (these "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "<u>Creditors' Committee</u>") has been appointed in any of these Chapter 11 Cases.

B.      <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  The Court is a proper venue of these Chapter 11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

C.      <u>Notice</u>.  Notice of the Motion, the relief requested therein and the Interim Hearing (the "<u>Notice</u>") has been served by the Debtors pursuant to Bankruptcy Rules 2002 and 4001 and in accordance with the Local Bankruptcy Rules of the District of Delaware (the "<u>Local Rules</u>") on (i) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis, (ii) counsel to the DIP Agent and the Prepetition Agent, (iii) any parties that have filed a notice of appearance in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, (iv) all known holders of liens upon the Debtors' assets, (v) the Internal Revenue Service, and (vi) the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>").  Under the circumstances, the Notice constitutes good

---

[3]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

and sufficient notice of the Requested Relief, and no further notice of the Requested Relief and the relief granted by this Interim Order is necessary or shall be required.

      D.     <u>Debtors' Acknowledgements and Stipulations</u>.   In requesting the Postpetition Financing Arrangement and in exchange for and as a material inducement to, the DIP Secured Parties to agree to provide the Postpetition Financing Arrangement, and to the Prepetition Lenders in exchange for the Diminution (as defined below), the Debtors acknowledge, represent, stipulate and agree, for themselves and their estates, subject to the challenge rights set forth in paragraph 19 herein, as follows:

      (i)     the Borrower, certain of the Debtors as guarantors (in such capacity, the "<u>Debtor Guarantors</u>" and collectively with the Borrower, the "<u>Prepetition Obligors</u>"), and Interflora British Unit (the "<u>UK Borrower</u>") are parties to the Credit Agreement, dated as of July 17, 2013 (as the same has been amended, restated, supplemented or modified from time to time, the "<u>Prepetition Credit Agreement</u>") with Bank of America, N.A. as administrative agent, swing line lender and L/C issuer (the "<u>Prepetition Agent</u>"), Wells Fargo Bank, National Association, as syndication agent (the "<u>Syndication Agent</u>"), PNC Bank, National Association, Compass Bank and BMO Harris Bank, N.A. as co-documentation agents (the "<u>Co-Documentation Agents</u>") and certain lender parties thereto (collectively with the Prepetition Agent, the Syndication Agent, the Co-Documentation Agents and providers of hedge products and treasury management services secured by the Prepetition Collateral (as defined below), the "<u>Prepetition Lenders</u>");

      (ii)     to secure the "Obligations" (as defined in the Prepetition Credit Agreement, the "<u>Prepetition Obligations</u>"), the Prepetition Obligors granted to the Prepetition Agent, for the benefit of the Prepetition Lenders, liens upon and security interests in (the

"Prepetition Liens") all of the Prepetition Obligors' property and assets (other than the "Excluded Assets" (as defined in the Prepetition Credit Agreement)), as set forth in certain security documents and instruments including: (i) the Pledge and Security Agreement, dated as of July 17, 2013, by and among the Borrower, the other Prepetition Obligors, and the Prepetition Agent (as the same has been amended, restated, supplemented or modified from time to time, the "Prepetition Security Agreement") (together with the Prepetition Credit Agreement, and all other agreements, documents, notes, guarantees, subordination agreements, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, each as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Loan Documents"), and, in all instances, the proceeds and products thereof (collectively, the "Prepetition Collateral");

(iii)    as of the Petition Date: (A) the current outstanding principal balance of the Prepetition Obligations (exclusive of interest, fees, reimbursable expenses and other charges) is not less than $149,428,041.37 (which amounts include $12,000,000.00 of advances under an increase to the borrowing availability under the Prepetition Credit Agreement advanced from and after May 25, 2019 (the "Bridge Facility")); (B) all of the Prepetition Obligations are absolutely and unconditionally owed by the Prepetition Obligors to the Prepetition Lenders; (C) the Prepetition Obligations constitute legal, valid and binding obligations of the Prepetition Obligors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code to the extent applicable); (D) no recoupments, offsets, defenses or counterclaims exist to the Prepetition Obligations; and (E) no portion of the Prepetition Obligations or any payments or other transfers made to the Prepetition Agent or any other

Prepetition Lender or applied to the Prepetition Obligations prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, recoupment, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    the Prepetition Liens constitute valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected liens with priority over any and all other liens in the Prepetition Collateral (except as otherwise provided in the Prepetition Loan Documents) and are not subject to any challenge or defense, including without limitation, respectively, avoidance, subordination, recharacterization, recovery, reduction, set-off, offset, attack, counterclaim, cross-claim or Claim (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(v)    the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Obligations and the Prepetition Liens on the Prepetition Collateral and to assert any recoupments, offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against any Prepetition Lender with respect to the Prepetition Loan Documents, the Prepetition Obligations, the Prepetition Liens or the Prepetition Collateral;

(vi)    any payments made on account of the Prepetition Obligations before the Petition Date were (A) payments out of the Prepetition Collateral and/or (B) made in the ordinary course of business and in exchange for reasonably equivalent value and did not diminish any property otherwise available for distribution to unsecured creditors;

RLF1 21346592v.4

(vii)    all of the Debtors' cash, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below);

(viii)    none of the DIP Secured Parties or the Prepetition Lenders is a control person or insider (as defined in section 101(31) of the Bankruptcy Code) of any Debtor;

(ix)    until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the DIP Secured Parties by offering subsequent lender or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral pursuant to section 364(d) of the Bankruptcy Code or otherwise, except with respect to the Carve-Out (as defined below);

(x)    until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time seek allowance of any administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any  administrative expenses of the kind specified in, or arising or ordered under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113 and 1114 of the Bankruptcy Code that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out; and

(xi)    the Prepetition Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date (the

"Diminution"), caused by or arising as a result of (A) the incurrence and payment of the DIP Obligations, (B) the use of Prepetition Collateral (including Cash Collateral), (C) the granting of the DIP Liens and the DIP Superpriority Claim, (D) the subordination of the Prepetition Obligations to the Carve-Out, and (E) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

E.      Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Secured Parties or the Prepetition Lenders have a lien, security interest or any other interest (including, without limitation, any adequate protection liens or security interests), whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise, and shall include, without limitation:

(i)      all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, in or on which the DIP Secured Parties or the Prepetition Lenders have a lien or a replacement lien, whether as part of the DIP Collateral or the Prepetition Collateral, or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of these Chapter 11 Cases, or arose or was generated thereafter;

(ii)      all of the respective deposits, refund claims and rights in retainers of the Debtors on which the DIP Secured Parties or the Prepetition Lenders hold a lien or replacement lien, whether as part of the DIP Collateral or Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)      the proceeds of any sale, transfer or other disposition of DIP Collateral or Prepetition Collateral.

-9-

F.    Adequate Protection.  The Prepetition Lenders are entitled, pursuant to sections 361, 363(e) and 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any Diminution resulting from (i) the incurrence of the DIP Obligations, (ii) the use of Prepetition Collateral (including Cash Collateral), (iii) the granting of the DIP Liens and the DIP Superpriority Claim, (iv) the subordination of the Prepetition Obligations to the DIP Obligations and the Carve-Out, and (v) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

G.    Purpose and Necessity of Financing.  The Debtors require the Postpetition Financing Arrangement to (i) permit the continuation of their businesses and maximize and preserve their going concern value, (ii) satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Documents and the Approved Budget (as defined below), (iii) provide adequate protection to the Prepetition Lenders, (iv) pay fees and expenses related to the DIP Documents and these Chapter 11 Cases, and (v) for such other purpose as set forth in, or otherwise permitted by, the DIP Documents (including the Approved Budget).  If the Debtors do not obtain authorization to use the Prepetition Collateral (including Cash Collateral) and borrow under the DIP Agreement, they will suffer immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable only as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth in the DIP Documents.  A loan facility in the amount provided by the DIP Documents is not available to the Debtors without granting the superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Documents.  After considering

-10-

all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the Postpetition Financing Arrangement, including without limitation, the DIP Facility, is the best financing available to them at this time.

H.    <u>Good and Sufficient Cause Shown</u>.  Good and sufficient cause has been shown for entry of this Interim Order.  The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Documents and use of the Prepetition Collateral (including the Cash Collateral) is vital to the Debtors' estates and creditors.  The liquidity to be provided under the DIP Documents and this Interim Order will enable the Debtors to continue to operate their businesses in the ordinary course and preserve the value of the Debtors' businesses pending the sale of substantially all of their assets.  Among other things, entry of this Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of the Debtors, their estates and their creditors.

I.    <u>Sections 506(c) and 552(b) Waivers</u>.  In light of (i) the DIP Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve-Out, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility and (ii) the Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the DIP Obligations, the Carve-Out and the DIP Liens, and to permit the use of the Prepetition Collateral (including Cash Collateral for payments made in accordance with the Approved Budget (as defined below) and the terms of this Interim Order), upon entry of the Final Order, each of the DIP Secured Parties and the Prepetition Lenders are entitled to a waiver of the provisions of section 506(c), and the Prepetition Lenders are entitled to a waiver of the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code.

-11-

J.      <u>Good Faith</u>.   The terms of the DIP Documents and the use of the Prepetition

Collateral (including the Cash Collateral) pursuant to this Interim Order, including, without

limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more

favorable to the Debtors than those available from alternative sources.   Based upon the record

before the Court, the DIP Documents and the use of the Prepetition Collateral (including the Cash

Collateral) pursuant to this Interim Order have been negotiated in good faith and at arm's-length

among the Debtors, the DIP Secured Parties and the Prepetition Lenders.   Any DIP Loans and

other financial accommodations made to the Debtors by the DIP Secured Parties pursuant to the

DIP Documents and this Interim Order shall be deemed to have been extended by the DIP Secured

Parties in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and each of

the DIP Secured Parties shall be entitled to all protections and benefits afforded thereby.

K.      <u>Fair Consideration and Reasonably Equivalent Value</u>.   All of the Debtors have

received and will receive fair and reasonable consideration by virtue of their obtaining access to

the DIP Loans, the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this

Interim Order and all other financial accommodations provided under the DIP Documents and this

Interim Order.   The terms of the DIP Documents and this Interim Order are fair and reasonable,

reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties

and are supported by reasonably equivalent value and fair consideration.

L.      <u>Immediate Entry of Interim Order</u>.   The Debtors have requested immediate entry

of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2) and Local Rule 4001-2(b).   The

permission granted herein to enter into the DIP Documents, to obtain funds thereunder and to use

the Prepetition Collateral (including the Cash Collateral) pursuant to this Interim Order is

necessary to avoid immediate and irreparable harm to the Debtors.   This Court concludes that entry

of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful sale of substantially all of their assets.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      <u>Disposition</u>.  The relief requested by the Debtors in the Motion and otherwise on the record at the Interim Hearing is granted on the terms set forth in this Interim Order.  Any objection to the interim relief sought by the Debtors that has not previously been withdrawn or resolved is hereby overruled on its merits.

2.      <u>Authorization For DIP Financing</u>.  The Debtors are hereby authorized, on an interim basis, to incur DIP Obligations immediately during the period prior to entry of the Final Order, subject to the terms of this Interim Order, the Approved Budget and the DIP Documents, in an aggregate principal amount not to exceed $47,000,000.00 ("<u>Interim Borrowings</u>"), with the maximum principal amount that may be borrowed following entry of the Final Order not to exceed $94,485,608.00 (inclusive of any outstanding Interim Borrowings) (the "<u>Maximum Commitment</u>").[4]  Available financing and advances under the DIP Agreement shall, on an interim basis, be made to fund, in accordance with the DIP Documents and the Approved Budget, working capital and general corporate requirements of the Debtors, adequate protection to the Prepetition

---

[4]      For the avoidance of doubt, the portion of Interim Borrowings include the Interim Order Roll Up Amounts (as defined in this Section), and after the Final Order, borrowings up to the Maximum Commitment are inclusive of the Interim Order Roll Up Amounts and the additional $27,485,608.00 of prepetition obligations which are treated as DIP Loans for purposes of the DIP Agreement, the Interim Order and any Final Order.

Lenders, bankruptcy-related costs and expenses (including interest, fees, and expenses in accordance with this Interim Order and the DIP Documents), and any other amounts required or allowed to be paid in accordance with this Interim Order, but only as and to the extent authorized by the Approved Budget and the DIP Documents.  Upon entry of this Interim Order and subject to paragraph 19, $12,000,000.00 of Prepetition Obligations constituting revolving loans held by DIP Lenders (allocated in accordance with their respective shares of the DIP Loans) shall be converted into DIP Loans (the "Interim Order Roll Up Amounts") and, upon entry of the Final Order, $27,485,608.00 of the principal amount of the Prepetition Obligations held by DIP Lenders (allocated in accordance with their respective shares of the DIP Loans) shall be converted into DIP Loans.  Prior to entry of the Final Order, notwithstanding the fact that the Interim Order Roll Up Amounts are DIP Loans, the Interim Order Roll Up Amounts shall only be secured by DIP Liens in the assets of Debtors who were borrowers or guarantors in respect of the Prepetition Obligations.

3.       Authorization for Use of Cash Collateral.  The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the Approved Budget and the DIP Documents, without further approval by the Court.

4.       Approved Budget.

(a)       The Debtors have delivered to the DIP Agent a detailed budget that sets forth projected cash receipts and cash disbursements on a weekly basis for the time period from and including the Petition Date through August 2, 2019 that has been approved by the Required DIP Lenders (defined below), and a copy of which is attached hereto as Exhibit A (as updated, amended, supplemented or otherwise modified in accordance herewith, the "Approved Budget"). The Approved Budget also sets forth, for each week, the amount of DIP Loans anticipated to be

advanced or otherwise used for such week after giving effect to any budgeted inflows. The Debtors shall provide to the DIP Secured Parties financial reporting in accordance with the terms of the DIP Documents. Funds borrowed under the DIP Agreement and Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with the DIP Documents, including the Approved Budget, and this Interim Order. The consent of the Required DIP Lenders to the Approved Budget shall not be construed as a commitment of the DIP Lenders to provide DIP Loans or of the DIP Secured Parties or Prepetition Lenders to permit the use of Cash Collateral (subject to the Carve-Out) after the occurrence of a Termination Event (as defined below) under this Interim Order, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(b)    The Approved Budget and Approved Variance Report (as defined below) shall, including any and all updates, amendments, supplements and modifications, at all times be in form and substance reasonably acceptable to the Required DIP Lenders and approved in writing by the DIP Agent prior to the implementation thereof. Notwithstanding anything herein to the contrary, any updates, amendments, supplements or modifications to the Approved Budget, must be consented to in writing by the DIP Lenders holding more than fifty percent (50%) of the DIP Loan commitments (the "Required DIP Lenders") prior to the implementation thereof and shall not require further notice, hearing, or Court order.

(c)    The DIP Secured Parties (i) may assume the Debtors will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance, and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget other than to permit the Debtors' use of Cash Collateral as expressly provided herein prior to the occurrence of a Termination Event.

All advances and extensions of credit shall be based upon the terms and conditions of the DIP Documents, as the same may be amended from time to time with the consent of the DIP Lenders or Required DIP Lenders (as applicable in accordance with the DIP Documents).  Subject to the terms and conditions of this Interim Order, the DIP Lenders shall have the right, but not the obligation, to extend credit independent of any Approved Budget restrictions on loan availability set forth in the DIP Documents, and all DIP Loans shall be entitled to the benefits and protections of this Interim Order.  For the avoidance of doubt, no DIP Lender shall be obligated to extend credit outside the terms of the DIP Documents.

(d)    On or before 5:00 p.m. Eastern time on the fourth Business Day of each week, commencing after the end of the second full week following the Petition Date, the Debtors shall deliver to the DIP Agent a cash flow reconciliation and variance report in form and substance reasonably acceptable to the Required DIP Lenders (an "Approved Variance Report") that shows (A) comparisons of actual results for each line item against such line item in the Approved Budget for the prior periods ended and (B) indicates whether there are any adverse variances that exceed the Permitted Variance.  As used herein, "Permitted Variance" means (a) "Total Operating Disbursements" (as set forth in the Approved Budget) for the first two-week and three-week periods exceeding the projected amounts in the Budget for such periods by no more than 20%, and for any four-week period exceeding the projected amounts in the Budget for such period by more than 10%; or (b) "Total Operating Receipts" (as set forth in the Approved Budget) (i) for the first two-week period to be at least 75% of the projected amounts in the Budget on a cumulative basis, (ii) for the first three-week period to be at least 80% of the projected amounts in the Budget on a cumulative basis, and (iii) for any four-week period to be at least 82.5% of the projected amounts in the Budget on a cumulative basis.  The Approved

-16-

Variance Report shall also provide a commercially reasonable narrative explanation of each material line item variance. The DIP Agent shall promptly deliver to the DIP Lenders, a copy of each Approved Variance Report upon such agent's receipt.

5.      Reserved.

6.      Authority to Execute and Deliver Necessary Documents. Each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Documents, in each case including any amendments, supplements and modifications thereto in accordance with the terms thereof. Each of the Debtors is further authorized to negotiate, prepare, enter into and deliver any other UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents, instruments, or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Documents, each as may be reasonably requested by the DIP Agent.

7.      Authority to Perform Obligations and Acts. Each of the Debtors is further authorized to (a) perform all of its obligations and acts contemplated by the DIP Documents and such other agreements as may be required by the DIP Documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Documents and this Interim Order.

8.      Valid and Binding Obligations. All obligations under the DIP Documents and this Interim Order shall constitute valid and binding obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Documents or this Interim Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d)

-17-

of the Bankruptcy Code) or subject to any avoidance, reduction, set-off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

9.      Termination of DIP Documents.  Notwithstanding anything in this Interim Order to the contrary, the DIP Lenders' commitments under the DIP Documents will terminate and the DIP Obligations will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Documents and this Interim Order by way of acceleration or otherwise), and the Debtors' authority to use Cash Collateral in accordance with this Interim Order will terminate, on the date that is the earliest to occur of (in each case, the "Maturity Date"): (i) the date that is three (3) months following the Petition Date; (ii) the date which is thirty (30) days following the entry of this Interim Order if the Court has not entered the Final Order on or prior to such date; (iii) the acceleration of the DIP Loans and the termination of the commitments to make the DIP Loans resulting from the occurrence of an Event of Default (as defined in the DIP Agreement) (including, without limitation, the failure to meet any Sale Milestone by the applicable specified deadline); (iv) the effective date of a confirmed plan of reorganization in the Chapter 11 Cases; (v) the filing of a motion by the Debtors seeking dismissal of any or all of the Chapter 11 Cases, the dismissal of any or all of the Chapter 11 Cases, the filing of a motion by the Debtors seeking to convert of any or all of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, the conversion of any or all of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or the appointment or election of a trustee under chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy

-18-

Code) under section 1106 of the Bankruptcy Code; (vi) the effective date of a sale of all or substantially all of the assets of the Debtors; and (vii) the filing or support by any Debtor of a plan of reorganization or liquidation (a "Plan") that is not otherwise acceptable to the DIP Agent and the Required DIP Lenders in their sole discretion, other than a Plan which purports to pay the DIP Obligations and the Prepetition Obligations in cash in full on the effective date of such Plan.

10.    Termination of Authority to Use Cash Collateral.  Subject to paragraph 21(f), the Debtors' ability to use Cash Collateral prior to the Maturity Date will terminate immediately upon the occurrence of any event described below (each a "Termination Event"):

(a)    any Debtor fails to comply in any material respect with any of the terms or conditions of this Interim Order, and such failure is not cured during any applicable Remedies Notice Period;

(b)    any Debtor seeks any modification or extension of this Interim Order, without consent of the Required DIP Lenders;

(c)    an application (other than the application for financing provided by a third party which seeks authority to pay all of the DIP Obligations and the Prepetition Obligations in full upon entry of the order approving such financing) is filed by any Debtor for the approval of (or an order is entered by the Court approving) any claim arising under section 507(b) of the Bankruptcy Code or otherwise, or any lien in any of the Chapter 11 Cases, which is *pari passu* with or senior to the Prepetition Obligations, the Adequate Protection Liens or the Adequate Protection Superpriority Claim, excluding liens arising under this Interim Order or pursuant to any other financing agreement made with the prior written consent of the Required DIP Lenders;

(d)    the commencement or support of any action by any Debtor or any party exercising the authority of the Debtor (other than an action pursuant to paragraph 19) against any

-19-

of the DIP Lenders or the Prepetition Lenders, or their respective agents and employees, to subordinate or avoid any liens made in connection with the Prepetition Loan Documents or the DIP Documents or to avoid any obligations incurred in connection with the Prepetition Loan Documents or the DIP Documents;

(e)    any Order shall be entered granting relief from the stay arising under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, set-off or any similar remedy with respect to any assets of the Debtors with an aggregate value of more than $250,000;

(f)    (i) any Debtor shall assert in any pleading filed in any court that any material provision of this Interim Order is not valid and binding for any reason, or (ii) any material provision of this Interim Order shall for any reason, or any other order of this Court approving the Debtors' use of Cash Collateral, without the prior written consent of the Required DIP Lenders, cease to be valid and binding;

(g)    any Debtor withdraws or modifies the motion to approve the sale of all or substantially all of the Debtors' assets without the consent of the Required DIP Lenders;

(h)    the Debtors fail to obtain a bid procedures order in form and substance reasonably satisfactory to the Required DIP Lenders on or before three weeks from the Petition Date, or fail to comply with the timeline for sale set forth in such bid procedures order; or

(i)    the occurrence of the Maturity Date.

11.    <u>Authorization and Direction for Payment of DIP Financing Fees and Expenses</u>. Subject to the provisions of this paragraph 11, all fees paid or payable, and all reasonable costs and expenses reimbursed or reimbursable (including, without limitation, all fees, costs and

expenses referred to in the DIP Documents and the DIP Agent's and the DIP Lenders' reasonable attorneys' fees and expenses and the invoices of FTI Consulting, Inc. in its capacity as the financial advisor to the Prepetition Agent and the DIP Agent ("FTI")), by the Debtors to the DIP Secured Parties are hereby approved, to the extent provided in the DIP Agreement.  The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Documents and this Interim Order, without any requirement that the Debtors, the DIP Agent, the DIP Lenders or their respective attorneys file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs or expenses.  To the extent provided in the DIP Agreement, the Debtors shall pay all reasonable prepetition and postpetition out of pocket costs and expenses of the DIP Secured Parties (including all reasonable fees, expenses and disbursements of outside counsel, including local counsel, and FTI) in connection with the Chapter 11 Cases and any Successor Case(s) (as defined below), including, without limitation, in connection with (a) the preparation, negotiation, execution and delivery of the DIP Documents, this Interim Order, and any Final Order, and the funding of all DIP Loans under the DIP Facility, (b) the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Documents, this Interim Order, and any Final Order, (c) the administration of the Chapter 11 Cases and any Successor Case(s), and (d) the enforcement or protection of the DIP Secured Parties' rights and remedies under the DIP Documents, this Interim Order, and any Final Order.  Notwithstanding anything to the contrary herein, the payment of all such fees, costs and expenses of the DIP Secured Parties, whether incurred before or after the Petition Date, including, without limitation, all fees referred to in the DIP Documents and all reasonable attorneys' fees and expenses, shall, (i) subject to paragraph 19, be deemed non-refundable and irrevocable, and (ii) not be subject to the Approved Budget.  None of the DIP

-21-

Secured Parties' attorneys' fees or disbursements shall be subject to the prior approval of this Court or the guidelines of the Office of the U.S. Trustee, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court.  Prior to any conversion of the Chapter 11 Cases to chapter 7, any such fees, costs and expenses shall be paid by the Debtors within ten (10) days after delivery of a summary invoice (redacted for privilege) to the Debtors and without the need for application to or order of the Court.  A copy of such summary invoice shall be provided by the DIP Agent to the U.S. Trustee, counsel for the Prepetition Agent and counsel for any Creditors' Committee on the same business day as the Debtors' receipt of such summary invoice.  Notwithstanding the foregoing, if (x) the Debtors, U.S. Trustee or any Creditors' Committee object to the reasonableness of a summary invoice submitted by the DIP Secured Parties and (y) the parties cannot resolve such objection, in each case within the ten (10) day period following receipt of such summary invoice, the Debtors, the U.S. Trustee or such Creditors' Committee, as the case may be, shall file with the Court and serve on the DIP Agent and the DIP Secured Party submitting the fee request a fee objection (a "DIP Secured Party Fee Objection"), which objection shall be limited to the issue of the reasonableness of such fees and expenses.  The Debtors shall promptly pay and/or the DIP Lenders are hereby authorized to make an advance under the DIP Agreement to timely pay, any submitted invoice after the expiration of the ten (10) day period if no DIP Secured Party Fee Objection is filed with the Court and served on the DIP Agent and DIP Lenders in such ten (10) day period.  If a DIP Secured Party Fee Objection is timely filed and served, the Debtors shall promptly pay and/or the DIP Secured Parties are hereby authorized to make an advance under the DIP Agreement to timely pay, the undisputed amount of the summary invoices, and the Court shall have jurisdiction to determine

-22-

the disputed portion of such invoice if the parties are unable to resolve the DIP Secured Party Fee Objection.

12.    <u>Amendments, Consents, Waivers, and Modifications</u>.    The Debtors, with the express written consent of the Required DIP Lenders in accordance with the terms and conditions of the DIP Documents, may enter into any amendments, consents, waivers, or modifications to the DIP Documents without the need for further notice and hearing or any order of this Court, so long as such amendments, consents, waivers, or modifications are non-material or not adverse to the Debtors' estates or their creditors (other than the Required DIP Lenders).    A copy of any such amendment, consent, waiver or modification shall be provided by the Debtors to the DIP Lenders, U.S. Trustee and counsel for any Creditors' Committee.    Any material, adverse changes to the DIP Documents, including without limitation changes to the Approved Budget adverse to the Debtors' estates, as well as any increases in the amount of the DIP Loans (except as provided in paragraph 4(c) of this Interim Order), will require the consents of the Required DIP Lenders in addition to any express written consents required by the DIP Documents and Court approval after notice and a hearing, and increases in the amount of the DIP Loans shall require the consent of all DIP Lenders whose commitments are being increased.

13.    <u>DIP Secured Parties' Lien Priority</u>.

(a)    To secure the DIP Obligations, the DIP Secured Parties are hereby granted pursuant to and in accordance with Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, valid, enforceable and fully perfected liens (the "<u>DIP Liens</u>") in and on all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including,

without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to all cash, accounts, accounts receivable, goods, inventory, property, plant and equipment, commercial tort claims, intellectual property, contract rights, tax refunds, prepaid expenses, deposits, general intangibles, real estate, leaseholds, all proceeds or property recovered in connection with actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") (provided that the lien on Avoidance Actions and proceeds of Avoidance Actions shall be limited to the proceeds and property recovered in connection therewith and shall only attach hereunder to the extent approved in the Final Order), all intercompany claims, all claims, and causes of action of each Debtor or its respective estate (including, without limitation, all commercial tort claims of every kind and description, whether described in specificity in the DIP Documents or not) and any and all proceeds and property recovered therefrom, any and all proceeds arising from insurance policies, all intellectual property, and the equity interests of each direct subsidiary of each Debtor, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of each Debtor that constitute Prepetition Collateral, and all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively, the "DIP Collateral"), subject only to prior payment of the Carve-Out.

(b)     The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date or created thereafter, including under Sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than prior payment of the Carve-Out.

(c)       The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreements or any other agreements, filings or instruments, such that no additional actions need be taken by the DIP Agent, the DIP Lenders or any other party (including, without limitation, any depository bank or securities intermediary) to perfect such interests.

(d)       At all times prior to indefeasible payment in cash in full of the DIP Obligations, the priority of the DIP Liens will:

(i)       Pursuant to Section 364(c)(2) of the Bankruptcy Code, be perfected first priority liens on all DIP Collateral which, as of the Petition Date, was unencumbered or subject to invalid, unperfected or avoidable liens;

(ii)       Pursuant to Section 364(c)(3) of the Bankruptcy Code, be perfected junior liens on all DIP Collateral that was, as of the Petition Date, subject to valid, perfected, unavoidable liens in existence at the time of the commencement of the Chapter 11 Cases (other than the liens in favor of the Prepetition Lenders, which liens are "primed" pursuant to the liens described in subsection (iii) below) with a priority immediately junior to any such liens ("Senior Third-Party Liens");

(iii)       Pursuant to Section 364(d)(1) of the Bankruptcy Code, be perfected first priority, senior priming liens on all DIP Collateral that is subject to (a) the existing liens that secure the obligations of the applicable Debtors under or in connection with the Prepetition Credit Agreement and, (b) subject to entry of a Final Order, existing liens junior in priority to the liens granted in favor of the Prepetition Lenders (collectively, the "Junior Lienholders" and collectively

with the Prepetition Lenders, the "Primed Parties"), all of which existing liens (the "Primed Liens")

shall be primed by and made subject and subordinate to the perfected first priority senior liens

granted to the DIP Secured Parties hereunder, which senior priming liens in favor of the DIP

Secured Parties shall also prime any liens granted after the commencement of the Chapter 11 Cases

to provide adequate protection in respect of any of the Primed Liens; and

        (iv)     Pursuant to the terms of this Interim Order, be subject to the Carve-

Out (defined below).

    14.    DIP Secured Parties' Superpriority Claim.  The DIP Secured Parties are hereby

granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim")

pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases and in any

successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the

Bankruptcy Code, the "Successor Case(s)") for all DIP Obligations, having priority over any and

all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever,

including, without limitation, all administrative expenses of the kinds specified in or arising or

ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a

Final Order), 507(a), 507(b), 546(c) (subject to entry of a Final Order), 546(d), 726, 1113, and

1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses

or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment,

which allowed DIP Superpriority Claim shall be payable from and have recourse to all pre- and

postpetition property of the Debtors and all proceeds thereof including, without limitation, any

proceeds or property recovered in connection with the pursuit of Avoidance Actions.  The DIP

Superpriority Claim shall be subject and subordinate in priority of payment only to prior payment

of the Carve-Out.  The DIP Superpriority Claim shall be senior in all respects to any superpriority

claims granted in these Chapter 11 Cases including, without limitation, on account of any break-up fee or expense reimbursement that may be granted by the Court in connection with any sale of the Debtors' assets, and the Adequate Protection Superpriority Claim (as defined below).

15.     Survival of DIP Liens, DIP Superpriority Claim, Adequate Protection Liens, and Adequate Protection Superpriority Claim.    The DIP Liens, DIP Superpriority Claim, Adequate Protection Liens, and Adequate Protection Superpriority Claim and other rights and remedies granted under this Interim Order to the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders shall continue in these Chapter 11 Cases and any Successor Case(s), and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and upon the dismissal of any or all of the Debtors' Chapter 11 Cases, or in any Successor Case(s), and such liens and security interests shall maintain their first priority as provided in this Interim Order until all the DIP Obligations and the Prepetition Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Documents and this Interim Order.

16.     Adequate Protection for Prepetition Lenders.    As adequate protection in respect of, and as consideration for any Diminution resulting from any of the incurrence and payment of the DIP Obligations, the use of Cash Collateral, the use of other Prepetition Collateral, the granting of the DIP Liens and the DIP Superpriority Claim, the subordination of the Prepetition Obligations to the DIP Obligations and the Carve-Out and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Prepetition Lenders are hereby granted (in each case subject only to the DIP Liens, the DIP Superpriority Claim, and prior payment of the Carve-Out) the following adequate protection:

(a) <u>Adequate Protection Liens</u>.    To secure the Adequate Protection Superpriority Claim (as defined below), the Prepetition Agent, for itself and for the benefit of the other Prepetition Lenders, is hereby granted (effective and perfected by operation of law immediately upon entry of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, account control agreements and other agreements, filings or instruments) valid, perfected, postpetition security interests and liens (the "<u>Adequate Protection Liens</u>") in and on all of the DIP Collateral, with a priority subject and subordinate only to (i) the DIP Liens and (ii) prior payment of the Carve-Out.

(b) <u>Adequate Protection Superpriority Claim</u>.  As further adequate protection, the Prepetition Agent, for itself and for the benefit of the other Prepetition Lenders, is hereby granted a superpriority claim to the extent of any Diminution, which claim shall have priority over all other administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c) (subject to entry of a Final Order), 546(d), 552, 726, 1113, and 1114 and any other provision of the Bankruptcy Code (the "<u>Adequate Protection Superpriority Claim</u>"), provided however, such Adequate Protection Superpriority Claim shall (i) be subordinate and subject only to the DIP Superpriority Claim and prior payment of the Carve-Out, and (ii) shall be entitled to all protections and benefits of Section 507(b) of the Bankruptcy Code.

(c) <u>Prepetition Lenders' Fees and Expenses</u>.  Subject to paragraph 19, the Debtors shall pay the reasonable fees, charges, expenses (including attorneys' fees and other professional expenses) of the Prepetition Lenders who are also DIP Lenders in connection with the Chapter 11

Cases and any Successor Case(s), including, without limitation, in connection with (i) the preparation, negotiation, execution and delivery of the DIP Documents, this Interim Order and any Final Order, and the funding of all DIP Loans under the DIP Facility, (ii) the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Documents, this Interim Order and any Final Order, (iii) the administration of the Chapter 11 Cases and any Successor Case(s), and (iv) the enforcement or protection of the DIP Secured Parties' or the Prepetition Lenders' rights and remedies under DIP Documents, the Prepetition Credit Agreement, this Interim Order, any Final Order.  The Debtors' obligations to make such payments shall include, in each instance, any of such fees, charges, expenses and other amounts which were incurred or accrued but unpaid as of the date hereof, including amounts incurred prior to the Petition Date.  Prior to any conversion of the Chapter 11 Cases to chapter 7, all such fees, costs and expenses shall be paid by the Debtors within ten (10) days after delivery of a summary invoice (redacted for privilege) to the Debtors and without the need for further application to or order of the Court.  A copy of such summary invoice shall be provided by the Prepetition Lender to the U.S. Trustee, counsel for the DIP Agent and counsel for any Creditors' Committee at the same time as delivery to the Debtors'. Notwithstanding the foregoing, if (x) the Debtors, the U.S. Trustee or any Creditors' Committee object to the reasonableness of a summary invoice submitted by the Prepetition Lenders and (y) the parties cannot resolve such objection, in each case within the ten (10) day period following the Debtors' receipt of such summary invoice, the Debtors, the U.S. Trustee or such Creditors' Committee, as the case may be, shall file with the Court and serve on the Prepetition Lenders a fee objection (a "Prepetition Lenders Fee Objection"), which objection shall be limited to the issue of the reasonableness of such fees and expenses.  The Debtors shall promptly pay and/or the DIP Lenders are hereby authorized to make an advance under the DIP Agreement to timely pay, any

submitted invoice after the expiration of the ten (10) day period if no Prepetition Agent Fee

Objection has been filed with the Court and served on the DIP Agent in such ten (10) day period.

If a Prepetition Lenders Fee Objection is timely filed and served, the Debtors shall promptly pay

and/or the DIP Secured Parties are hereby authorized to make an advance under the DIP

Agreement to timely pay, the undisputed amount of the summary invoice, and the Court shall have

jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve

the Prepetition Lenders Fee Objection.  In all events, the payments pursuant to this subsection (c)

shall be subject to the rights reserved to third parties under paragraph 19.

        (d)      <u>Reserved.</u>

        (e)      <u>506(c) and 552(b) Waivers</u>.  Subject to the entry of the Final Order, the

Prepetition Lenders' consent to use of Cash Collateral and Prepetition Collateral under this Interim

Order and the Debtors' right to use Cash Collateral and Prepetition Collateral: (i) is in lieu of any

section 506(c) claim, payment or priority for the costs or expenses of the administration of any of

these Chapter 11 Cases; and (ii) is granted as consideration for (among other things) the waiver of

the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code, which exceptions

are hereby waived.

        (f)      <u>Access to Debtor's Chief Restructuring Officer and Investment Banker</u>.  The

Debtors shall cause their chief restructuring officer (the "<u>CRO</u>") and investment bankers (the

"<u>Investment Bankers</u>") to meet with the DIP Agent and the DIP Lenders as reasonably requested

and to cause the Investment Bankers and the CRO to be available to meet with the DIP Agent, the

DIP Lenders and the Prepetition Lenders by phone every two-weeks during the Chapter 11 Cases.

        (g)      <u>Reporting</u>.  As and when required under the terms of the DIP Agreement,

the Debtors shall provide to the DIP Agent and each DIP Lender all of the financial information,

-30-

operational information and related reports, documents and analysis required under the terms of the DIP Agreement.

(h)    Credit Bidding Rights.  The Debtors and the DIP Secured Parties agree that in any sale of the DIP Collateral or Prepetition Collateral other than a sale in the ordinary course of business, the DIP Lenders and the Prepetition Lenders shall have the right to credit bid the DIP Obligations and Prepetition Obligations (as applicable) in accordance with Section 363(k) of the Bankruptcy Code, provided that any such credit bid of the Prepetition Lenders that does not also contain a credit bid of the DIP Obligation must contain a cash component satisfactory to satisfy in full the DIP Obligations.  The Debtors agree that any motion filed by the Debtors seeking approval of bid procedures will contain a request for approval of the right of the DIP Lenders and the Prepetition Lenders to credit bid the DIP Obligations and Prepetition Obligations (as applicable) and the DIP Lenders consent to the Prepetition Lenders being granted the right to credit bid in accordance with this subsection (h).  From and after the entry of the Final Order, the foregoing agreement shall operate as a finding that the DIP Lenders and the Prepetition Lenders shall have the right to credit bid the DIP Obligations and Prepetition Obligations (as applicable) in accordance with Section 363(k) of the Bankruptcy Code (as set forth above) and the right of the DIP Lenders and Prepetition Lenders to credit bid in accordance with this subsection (h) shall not be modified or altered by any event, including entry of a subsequent order of the Court, without the prior written consent of each of the DIP Lenders and Prepetition Lenders.

(i)    Further Adequate Protection.  Nothing in this Interim Order shall, or shall be deemed to, limit, abridge or otherwise affect the rights of the Prepetition Lenders to request at any time that the Court provide additional or further protection of their interests in the Prepetition Collateral (including the Cash Collateral) or to seek further or additional adequate protection in

-31-

the event the adequate protection provided herein proves to be inadequate, subject to the Debtors' rights to contest any such request.

17. <u>Carve-Out</u>.

(a)    The DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens, the Adequate Protection Superpriority Claim and the Prepetition Liens shall be subject and subordinate to the prior payment of:  (i) all fees required to be paid to (A) the clerk of the Bankruptcy Court and (B) the Office of the United States Trustee under section 1930(a) of Title 28 of the United States Code, plus interest required to be paid on any past due amount at the statutory rate (collectively, the "<u>UST Carve-Out</u>"); (ii) all reasonable fees and expenses, up to $50,000, incurred by a trustee under section 726(b) of the Bankruptcy Code (the "<u>Chapter 7 Trustee Carve-Out</u>"); (iii) to the extent allowed at any time, all unpaid fees and expenses (the "<u>Allowed Professional Fees</u>") of persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") or by the Creditors' Committee pursuant to sections 328 or 1103 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professional Persons</u>") that are incurred or earned at any time before or on the first Business Day following delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed prior to or after delivery of a Carve-Out Trigger Notice (the "<u>Professional Fee Carve-Out</u>"); and (iv) Allowed Professional Fees of Professional Persons other than Investment Bankers in an aggregate amount not to exceed $300,000.00, plus Allowed Professional Fees of Investment Bankers, in each case incurred after the first Business Day following delivery by the DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time (the "<u>Post-Trigger Carve-Out</u>" and with the UST Carve-Out, the Chapter 7 Carve-Out and the Professional Fee Carve-Out, the "<u>Carve-Out</u>")).  "<u>Carve-Out Trigger Notice</u>" shall mean a written

notice delivered by the DIP Agent to lead restructuring counsel to the Debtors, the U.S. Trustee, and counsel to the Creditors' Committee, stating that (a) the Post-Trigger Carve-Out has been invoked, which notice may be delivered following the occurrence and during the continuation of an Event of Default under the DIP Agreement; (b) the DIP Loans have been accelerated and (c) the DIP Lenders do not intend to fund further advances under the DIP Loans, or consent to further use of Cash Collateral.  Thereafter, if the DIP Lenders fund further advances under the DIP Loans (other than amounts required to be funded in accordance with this Interim Order), or the DIP Lenders or the Prepetition Lenders consent to the use of Cash Collateral for the Debtors to operate in the ordinary course of business as going concerns, the Carve-Out Trigger Notice shall be deemed automatically revoked.  If a Carve-Out Trigger Notice is revoked, the Carve-Out will operate as if the Carve-Out Trigger Notice was never delivered.  While the Carve-Out shall include the fees of any Investment Bankers earned in conjunction with the consummation of a transaction or transactions as set forth in their respective engagement letters with the applicable Debtors, such amounts may be paid out of the collateral of the Prepetition Lenders and the DIP Lenders only to the extent such fees were (a) actually earned pursuant to the terms of the respective engagement letters with the Debtors in effect as of the date of the DIP Loan Documents (or as amended with the consent of the Required DIP Lenders), (b) approved by the Bankruptcy Court, and (c) earned in connection with transactions consented to by the Required DIP Lenders, or, to the extent such transaction occurs in connection with a Plan, the class of creditors consisting exclusively of the Prepetition Lenders has voted to accept the treatment provided in such Plan (collectively, all such fees are referred to as the "Transaction Payments").

(b)     Carve-Out Reserve Accounts.

(i)        On the day on which a Carve-Out Trigger Notice is given by the DIP Agent (the "Termination Declaration Date"), an amount equal to the sum ("Pre-Trigger Carve-Out Amount") of (A) the UST Carve-Out, plus (B) the Chapter 7 Trustee Carve-Out, plus (C) the then unpaid amount of the Allowed Professional Fees, will be funded into one or more segregated accounts at the DIP Agent, in trust, exclusively to pay such unpaid Allowed Professional Fees (each such account, a "Pre-Trigger Notice Reserve Account").  The Debtors are hereby authorized and directed to utilize Cash Collateral on hand as of such date, and any Cash Collateral thereafter held by any Debtor, to fund a Pre-Trigger Notice Reserve Account equal to the amount required to be funded.

(ii)       On the Termination Declaration Date, the Debtors are hereby authorized and directed to utilize all Cash Collateral on hand as of such date, and any available Cash Collateral thereafter held by any Debtor, to fund the Post-Trigger Notice Reserve Account (as defined below) in an amount equal to the amount required to be funded.  The Debtors shall deposit and hold such amounts in one or more segregated accounts at the DIP Agent, in trust, exclusively to pay such Allowed Professional Fees benefiting from the Post-Trigger Carve-Out (each, a "Post-Trigger Notice Reserve Account" and, together with the Pre-Trigger Notice Reserve Account, the "Carve-Out Reserve Accounts").

(iii)      Following the end of the second Business Day after delivery of a Carve-Out Trigger Notice, the DIP Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserve Accounts have been fully funded.

(iv)      All funds in the Pre-Trigger Notice Reserve Accounts shall be used only to pay the Pre Trigger Carve-Out Amount until paid in full.  All funds in the Post-Trigger

Notice Reserve Accounts shall be used only to pay the obligations constituting the Post-Trigger Carve-Out.

(v)  The Carve-Out shall be effective upon entry of this Interim Order and shall not be rendered ineffective as a result of the occurrence, or non-occurrence, of any event or circumstance thereafter.  In no event shall any Approved Budget, the Carve-Out, or any Carve-Out Reserve Account be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

(vi)  Upon the consummation of a sale of all or substantially all of any Debtors' assets, the Debtors shall be authorized and directed (without the requirement to have received a Carve-Out Trigger Notice) to transfer from the proceeds of such sale(s) funds equal to the Pre-Trigger Carve-Out Amount into the Pre-Trigger Notice Reserve Account.  The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders agree to negotiate in good faith to determine what amounts may reasonably be required to wind-down the Debtors' estates in connection with a sale approved by the DIP Lenders and the Prepetition Lenders (the "Wind-Down Funds") and to provide in the Final DIP Order for the minimum amount of such funding upon consummation of such sale.  The Wind-Down Funds are not intended to be part of the Carve-Out.

18.  Release.  The release, discharge, waivers, settlements, compromises, and agreements set forth in this Paragraph 18 and the stipulations set forth in Paragraph D of this Interim Order shall be deemed effective upon entry of the Interim Order, subject only to the rights set forth in paragraph 19 below.  The Debtors forever and irrevocably release, discharge, and acquit each of the DIP Secured Parties, their affiliates and predecessors in interest, and their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal advisors, shareholders, managers, consultants, accountants, and attorneys

-35-

(collectively, the "DIP Lender Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type at any time arising prior to the Petition Date, and all claims and causes of action under chapter 5 of the Bankruptcy Code.

(a)    The Debtors forever and irrevocably release, discharge, and acquit each of the Prepetition Lenders and their respective affiliates and predecessors in interest, and their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal advisors, shareholders, managers, consultants, accountants, and attorneys (collectively, the "Prepetition Lender Releasees" and collectively with the DIP Lender Releasees, the "Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type at any time arising prior to the Petition Date, and all claims and causes of action under chapter 5 of the Bankruptcy Code.

19.    Reservation of Certain Third Party Rights and Bar of Challenges and Claims.  The releases set forth in Paragraph 18 above and the stipulations set forth in Paragraph D of this Interim Order shall be binding upon the Debtors upon entry of this Interim Order.  In addition, such releases and stipulations shall be binding upon each other party in interest, including the Creditors' Committee, if any, unless a party in interest having standing, *first*, commences, (x) within sixty (60) calendar days from date of the formation of a Creditors' Committee for actions brought by a Creditor's Committee, or (y) seventy-five (75) calendar days following the date of entry of this Interim Order for any party other than a Creditor's Committee (such time period established by clauses (x) and (y), shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge

(as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly and timely file a Challenge and only for the matters specifically set forth in such Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) challenging or otherwise objecting to the releases set forth in Paragraph 18 above or the stipulations set forth in Paragraph D of this Interim Order or (B) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) against any Releasee relating to any pre-Petition Date act, omission or aspect of the relationship between such Releasee and the Debtors ((A) and (B) being, collectively, the "Challenges" and, each individually, a "Challenge"), and, *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.  Upon the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Case(s), (i) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred and (ii) the releases in Paragraph 18 above and the stipulations contained in Paragraph D of this Interim Order shall be binding on all parties in interest, including any Creditors' Committee.

20.    Restrictions on Use of Funds.  Notwithstanding anything in this Interim Order or the DIP Documents to the contrary, without the express written consent of the DIP Agent and the Prepetition Agent, no proceeds of the DIP Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor or party in interest, any Creditors' Committee, any trustee appointed under these Chapter 11 Cases or any Successor Case(s), or any other party to (a) request authorization to obtain

-37-

postpetition loans or other financial accommodations pursuant to section 364 of the Bankruptcy

Code or otherwise, other than from the DIP Secured Parties, unless the proceeds of such loans or

accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all

DIP Obligations, or (b) investigate (except as set forth in this paragraph below), assert, join,

commence, support or prosecute any Challenge or other action or claim, counter-claim,

proceeding, application, motion, objection, defense, or other adversary proceeding or contested

matter seeking any order, judgment, determination or similar relief against, or adverse to the

interests of the DIP Secured Parties or any other Releasee with respect to any transaction,

occurrence, omission, or action including, without limitation, (i) any actions under chapter 5 of

the Bankruptcy Code, (ii) any action relating to any act, omission or aspect of the relationship

between or among any of the Releasees, on the one hand, and any of the Debtors, on the other,

(iii) any action with respect to the validity and extent of the DIP Obligations, the Prepetition

Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens or the

Adequate Protection Liens, (iv) any action seeking to invalidate, set aside, avoid or subordinate,

in whole or in part, the DIP Obligations, the DIP Liens, the Prepetition Obligations, the

Prepetition Liens, the Adequate Protection Superpriority Claim or the Adequate Protection

Liens, or (v) any action that has the effect of preventing, hindering or delaying (whether directly

or indirectly) any DIP Secured Party in respect of the enforcement of the DIP Liens, (c) subject

to authority provided to the Debtors pursuant to the DIP Documents, pay any claim (as defined

in the Bankruptcy Code) of a prepetition creditor (as defined in the Bankruptcy Code) if the

Debtors have received a written objection to such payment from the DIP Agent, and/or (d) use or

seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise

permitted hereby or by the DIP Documents, without the express written consent of the applicable

-38-

DIP Secured Parties.  Notwithstanding the foregoing, up to $25,000 in the aggregate of the DIP Facility, DIP Collateral, Cash Collateral and Carve-Out may be used by a Creditors' Committee during the Challenge Period to investigate claims against the Releasees.

21.    <u>Remedies and Stay Modification.</u>  The provisions of this paragraph 21 are each subject to the Carve-Out.

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies regardless of any change in circumstances (whether or not foreseeable), whether or not an Event of Default (as defined in the DIP Agreement) under the DIP Documents or a default by any of the Debtors of any of their obligations under this Interim Order has occurred: (i) the right to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Documents or written instructions of the DIP Agent, and to apply any amounts so deposited and other amounts paid to or received by the DIP Secured Parties under the DIP Documents in accordance with any requirements of the DIP Documents; (ii) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral; (iii) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Documents as provided therein; and (iv) the right to give the Debtors any notice provided for in any of the DIP Documents or this Interim Order.

(b)       Subject to Paragraph 21(d) below, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the DIP Secured Parties, upon the occurrence and during the continuance of an Event of Default under the DIP Agreement or the Debtors' violation of any provision of this Interim Order, and without any interference from the Debtors or any other party interest, to (i) (A) cease making DIP Loans and/or suspend or terminate the commitments under the DIP Documents, and (B) declare all DIP Obligations immediately due and payable, and (ii) subject to five (5) calendar days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to any Creditors' Committee and the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (B) foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (C) set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Secured Parties); and/or (D) exercise any other default-related rights and remedies under the DIP Documents or this Interim Order or applicable law.  The Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Documents.

(c)       Notwithstanding anything herein to the contrary, immediately upon the occurrence of a Termination Event or a default by any of the Debtors of any of their obligations under this Interim Order, the DIP Lender may charge interest at the default rate set forth in the DIP Documents, regardless of any notice thereof and without being subject to the Remedies Notice Period.

(d)    The automatic stay of section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order providing otherwise from this Court prior to the expiration of the Remedies Notice Period.

(e)    If the DIP Secured Parties are entitled, and have elected in accordance with the provisions hereof, to enforce their liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Secured Parties in connection with such enforcement by, among other things, in accordance with applicable non-bankruptcy law, (A) providing at all reasonable times access to the DIP Collateral and the Debtors' premises to representatives or agents of the DIP Secured Parties (including any collateral liquidator or consultant), (B) providing the DIP Secured Parties and their representatives or agents, at all reasonable times, access to the Debtors' books and records and any information or documents requested by the DIP Secured Parties or their representatives or agents, (C) performing all other obligations set forth in the DIP Documents, and (D) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Secured Parties' enforcement of rights.

(f)    Upon the occurrence and during the continuance of an Event of Default under the DIP Documents, a violation of the terms of this Interim Order, or any other Termination Event, and including during the pendency of any applicable Remedies Notice Period, the DIP Secured Parties shall have no further obligation to provide financing under the DIP Documents, except to the extent necessary to allow the Debtors to fund any payroll obligations scheduled to be paid in the five business days after the initiation of a Remedies Notice Period.  Upon (i) initiation

-41-

of a Remedies Notice Period or (ii) the occurrence of a Maturity Date, the DIP Secured Parties and the Prepetition Lenders shall have no further obligation to permit the continued use of Cash Collateral, except to the extent necessary to allow the Debtors to fund any payroll obligations scheduled to be paid in the five business days after the initiation of a Remedies Notice Period. Once the Debtors' right to use Cash Collateral is no longer permitted by this Interim Order, the Debtors shall be prohibited from using any Cash Collateral under this Interim Order until such time (if any) as the Prepetition Lenders and the DIP Secured Parties have consented to further use of Cash Collateral except to the extent necessary to allow the Debtors to fund any payroll obligations scheduled to be paid in the five business days after the Debtors are no longer permitted to use Cash Collateral pursuant to this Interim Order.

(g)    Upon the occurrence and during the continuance of an Event of Default under the DIP Documents, a violation of the terms of this Interim Order, or any other Termination Event, the DIP Secured Parties may at all times continue to collect and sweep cash as provided herein or as provided in the DIP Documents, provided that sufficient funds are (or have been) set aside to fund the Carve-Out and payment of all accrued but unpaid expenses set forth in the Approved Budget through the date of the commencement of the Remedies Notice Period.

(h)    This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders pursuant to the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of section 362(a) of the Bankruptcy Code or other injunctive relief requested.

22.    <u>Limitation on Surcharge</u>.  Without limiting the terms of the Carve-Out and subject to the entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case(s) at any time shall be surcharged against,

-42-

and no person may seek to surcharge any costs or expenses of administration against the DIP

Secured Parties, the Carve-Out (other than parties entitled to assert a right to be paid under the

Carve-Out), the DIP Collateral or the Prepetition Collateral, pursuant to sections 105 or 506(c) of

the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agent and the

Prepetition Agent (and the beneficiaries of the Carve-Out in the case of a surcharge against the

Carve-Out).  No action, inaction or acquiescence by the DIP Secured Parties or the Prepetition

Lenders shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge

against the DIP Secured Parties, the DIP Collateral, the Prepetition Lenders or the Prepetition

Collateral.

23.    No Marshaling.  From and after the entry of the Final Order, the DIP Secured

Parties (and after payment in full of the DIP Obligations, the Prepetition Lenders) shall not be

subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any

of the DIP Collateral or the Prepetition Collateral.  Without limiting the generality of the

immediately preceding sentence, from and after the entry of the Final Order, no party (other than

the DIP Secured Parties and after payment in full of the DIP Obligations, the Prepetition Lenders)

shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order

of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral or

the Prepetition Collateral (as applicable) after an Event of Default under the DIP Documents.

24.    Additional Perfection Measures.

(a)    If the DIP Agent, in its sole discretion, requests that the Debtors execute

additional DIP Loan documentation or chooses to take any action to obtain consents from any

landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien

or similar instruments, or to otherwise record or perfect such security interests and liens, the DIP

Agent is hereby authorized, but not directed to, take such action or to request that Debtors take such action on its behalf (and Debtors are hereby authorized to take such action) and:

(i)    any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)    no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)    In lieu of obtaining such consents or filing any mortgages, financing statements, notices of lien or similar instruments, each of the DIP Agent and the Prepetition Agent may, in its respective sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the DIP Collateral, and such filing by the DIP Agent or Prepetition Agent shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

25.    <u>Application of Collateral Proceeds</u>.  To the extent required by this Interim Order and the DIP Documents, after (a) an Event of Default and (b) the receipt by the Debtors of written notice that the DIP Lenders will no longer fund the Debtors through the proceeds of the DIP Loans or by consenting to the Debtors' use of Cash Collateral, the Debtors are hereby authorized to remit to the DIP Agent, subject to the payment of the Carve-Out, one hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral until the DIP Obligations are paid in full, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Lender to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Documents.  In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial

-44-

institution shall be subject to a perfected, first priority security interest in favor of the DIP Secured Parties, (b) upon the occurrence and during the continuance of a Termination Event and the expiration of the Remedies Notice Period, each bank or other financial institution with an account of any Debtor is hereby authorized to (i) comply at all times with any instructions originated by the DIP Agent (or its nominee) to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Agent (or its nominee) by wire transfer (to such account as the DIP Agent (or its nominee) shall specify, or in such other manner as the DIP Agent (or its nominee) shall direct) all such cash, securities, investment property and other items held by it, and, (ii) subject to entry of a Final Order, waive any right of set off, banker's lien or other similar lien, security interest or encumbrance that is or may be invoked against the DIP Agent (or its nominee) and (c) any deposit account or securities account control agreement executed and delivered by any bank or other financial institution or any Debtor and the Prepetition Agent prior to the Petition Date in connection with the Prepetition Loan Documents shall establish co-control in favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities, investment property and other items of any Debtor deposited therein to secure the DIP Obligations (provided that primary control rights shall vest in the DIP Agent), and all rights thereunder in favor of the Prepetition Agent shall inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been paid in full in cash, at which time all rights shall automatically revert to the Prepetition Agent, solely to the extent such deposit account or securities account control agreement relates to Cash Collateral.

26.    [Reserved].

-45-

27.     [Reserved].

28.     <u>Lenders Not Responsible Persons</u>.  In (a) making the decision to make the DIP Loans and consent to the use of Cash Collateral, (b) extending other financial accommodations to the Debtors under the DIP Documents, and (c) making the decision to collect the indebtedness and obligations of the Debtors, neither the DIP Agent nor any other DIP Secured Party nor any Prepetition Lender shall be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Documents or this Interim Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, and the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

29.     <u>Successors and Assigns</u>.  The DIP Documents and the provisions of this Interim Order shall be binding upon the Debtors and the DIP Agent, the other DIP Secured Parties, the Prepetition Lenders and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Agent, the other DIP Secured Parties, the Prepetition Agent, and the other Prepetition Lenders and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed or elected in a case for any Debtor under any chapter of the Bankruptcy Code, including any Successor Case.  The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in

interest, including, but not limited to a trustee appointed or elected under chapter 7 or chapter 11 of the Bankruptcy Code.

30.    <u>Binding Nature of Agreement</u>.    Each of the DIP Documents to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  Unless otherwise consented to in writing by the Required DIP Lenders and the Required Prepetition Lenders (as applicable), the rights, remedies, powers, privileges, liens, and priorities of the DIP Agent, the other DIP Secured Parties, the Prepetition Agent, and the other Prepetition Lenders provided for in this Interim Order, the DIP Documents, or otherwise, shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any Successor Case under the Bankruptcy Code unless and until the DIP Obligations have first been indefeasibly paid in full in cash and completely satisfied, the commitments thereunder are terminated in accordance with the DIP Documents and the Prepetition Obligations are indefeasibly paid in full in cash and completely satisfied.  For the avoidance of doubt, any provision of the DIP Agreement or the Prepetition Credit Agreement that requires unanimity among the DIP Lenders or the Prepetition Lenders, as applicable, with respect to any contemplated action or inaction shall not be overridden by this paragraph.

31.    <u>Subsequent Reversal or Modification</u>.    This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Secured Parties all protections and benefits afforded by section 364(e) of the Bankruptcy Code.

32.    <u>Collateral Rights</u>.    Subject to any order of the Bankruptcy Court entered without the objection of the DIP Agent authorizing the Debtors to make payments to prepetition creditors,

-47-

and subject to entry of a Final Order, if any party who holds a lien or security interest in DIP

Collateral or Prepetition Collateral that is junior or otherwise subordinate to the DIP Liens, the

Adequate Protection Liens or the Prepetition Liens in such DIP Collateral receives or is paid the

proceeds of such DIP Collateral or Prepetition Collateral, or receives any other payment with

respect thereto from any other source prior to the indefeasible payment in full in cash and the

complete satisfaction of (a) all DIP Obligations under the DIP Documents and termination of the

commitments thereunder in accordance with the DIP Documents and, as applicable (b) the

Prepetition Obligations under the Prepetition Loan Documents, such junior or subordinate

lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP

Collateral or Prepetition Collateral, as applicable, in trust for the DIP Secured Parties or Prepetition

Lenders, as applicable, and shall immediately turn over such proceeds to the DIP Agent or

Prepetition Agent, as applicable, for application to repay the DIP Obligations and, as applicable,

the Prepetition Obligations, in accordance with the DIP Documents, the Prepetition Loan

Documents and this Interim Order until the DIP Obligations and the Prepetition Obligations, as

applicable, are indefeasibly paid in full in cash.

33.    No Waiver.  This Interim Order shall not be construed in any way as a waiver or

relinquishment of any rights that the DIP Secured Parties may have to bring or be heard on any

matter brought before this Court.

34.    Injunction.  Except as provided in the DIP Documents and this Interim Order, the

Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, seeking

or granting liens on DIP Collateral or any portion thereof to any other party, pursuant to section

364(d) of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the liens

-48-

granted to the DIP Secured Parties and the Prepetition Lenders, except in accordance with the DIP Documents and this Interim Order.

35.   <u>Sales</u>.  The Debtors agree not to seek or support entry of any order that provides for either the sale of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code to any party unless (a) the Required DIP Lenders and the Required Prepetition Lenders consent and (b) the order approving such sale provides that the sale proceeds shall be distributed in accordance with the DIP Documents, the Prepetition Loan Documents and this Interim Order at the closing of such sale.  The Debtors agree to adhere to the following milestones with respect to the sale of all or substantially all of their assets (collectively, the "<u>Sale Milestones</u>"):

| Timeline | Action/Deadline |
|---|---|
| Three business days following Petition Date | File sale motion and bidding procedures for sale of all of the assets of the Debtors |
| June 26, 2019 | Deadline to obtain entry of order approving bidding procedures. |
| Six weeks following Petition Date | Deadline for interested parties to submit bids for purchase of assets of the Debtors. |
| Earlier of eight weeks following Petition Date or four (4) business days after Auction | Deadline for hearing to approve sale. |
| Seven days after Sale Hearing | Deadline to consummate sale(s) of substantially all of the Debtors' assets |

For the avoidance of doubt, failure to comply with the Sale Milestones or the other provisions of this paragraph 35 shall be a Termination Event for purposes of this Interim Order.

36.    <u>Dismissal and Conversion</u>.  If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, such order shall provide that (a) the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Superpriority Claim granted hereunder and in the DIP Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Documents and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Liens and the Adequate Protection Obligations.  Any motion by the Debtors to dismiss any of these Chapter 11 Cases shall be filed on no less than 21 days' notice absent the consent of the DIP Agent.

37.    <u>Limits on Lenders' Liability</u>.  Nothing in this Interim Order or in any of the DIP Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any other DIP Secured Party, the Prepetition Agent or any other Prepetition Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

38.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Documents, the Motion, the Requested Relief, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in"

or "as more fully described in" the DIP Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

39.     <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

40.     <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases to a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claim shall continue in these Chapter 11 Cases, any such Successor Case(s) or after any such dismissal.  Except as otherwise provided herein, the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim and the Adequate Protection Superpriority Claim shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Secured Parties in accordance with the DIP Agreement and any Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until:  (i) all DIP Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Documents are terminated in accordance therewith, and (ii) the Prepetition Obligations have been or are deemed to have been satisfied in accordance with the Bankruptcy Code.

RLF1 21346592v.4

41. <u>Adequate Notice/Scheduling of Final Hearing</u>.  The notice given by the Debtors

of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001 and the

Local Rules of this Court.  Such notice was good and sufficient under the particular

circumstances and no other or further notice of the request for the relief granted at the Interim

Hearing is required.  The Debtors shall promptly mail copies of this Interim Order and notice of

the Final Hearing to any known party affected by the terms of this Interim Order and/or Final

Order and any other party requesting notice after the entry of this Interim Order.  Any objection

to the relief sought at the Final Hearing shall be made in writing setting forth with particularity

the grounds thereof, and filed with the Court and served on or prior to June 25, 2019 at 4:00 p.m.

(prevailing Eastern Time) on the following: (a) Jones Day, 901 Lakeside Avenue, Cleveland,

Ohio 44114-1190, Attn:  Heather Lennox, Thomas A. Wilson and T. Daniel Reynolds or by

email at hlennox@jonesday.com; tawilson@jonesday.com; tdreynolds@jonesday.com (b) Jones

Day, 77 West Wacker, Chicago, Illinois 60601-1692, Attn:  Brad B. Erens and Caitlin K. Cahow,

or by email at bberens@jonesday.com; ccahow@jonesday.com; (c) Richards Layton & Finger,

P.A., 920 North King Street, Wilmington, DE 19801, Attn:  Daniel J. DeFranceschi and Paul N.

Heath, or by email at defranceschi@rlf.com; heath@rlf.com; (d) counsel to the DIP Agent and

the Prepetition Agent, Moore & Van Allen PLLC, 100 N. Tryon St., Suite 4700, Charlotte, NC

28202 (Attn: James R. Langdon (jimlangdon@mvalaw.com) and Mary F. Caloway, Buchanan

Ingersoll & Rooney PC, 919 North Market Street, Suite 990, Wilmington, DE 19801-1054 (Attn:

mary.caloway@bipc.com); and (e) the Office of the U.S. Trustee for the District of Delaware,

844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn:  Timothy J. Fox

(timothy.fox@usdoj.gov)).  The Court shall conduct a Final Hearing on the Requested Relief

commencing on July 2, 2019, 2019 at 2:00 p.m. (prevailing Eastern Time).

42.    <u>Immediate Binding Effect; Entry of Interim Order</u>.  This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

43.    <u>Proofs of Claim</u>.  Neither the DIP Secured Parties nor the Prepetition Lenders shall be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Lenders upon approval of this Interim Order, and the Prepetition Agent shall be treated under section 502(a) of the Bankruptcy Code as if it had filed a proof of claim on behalf of the Prepetition Lenders.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Prepetition Agent is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement as it sees fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim allowed herein.

44.    <u>Headings</u>.  The headings of the various paragraphs in this Interim Order are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

45.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

46.    Nothing in this Interim Order shall affect the rights of any party pursuant to the Perishable Agricultural Commodities Act.

**Dated: June 5th, 2019**
**Wilmington, Delaware**

-53-

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**