## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>FTD Companies, Inc., <u>et al.</u>,[1]<br><br>Debtors. | :<br>:  Chapter 11<br>:<br>:  Case No. 19-11240 (LSS)<br>:<br>:  (Jointly Administered)<br>:<br>:  **Hr'g Date:  July 2, 2019 at 2:00 p.m. (ET)**<br>:  **Obj. Deadline:  June 25, 2019 at 4:00 p.m. (ET)** |

### MOTION OF THE DEBTORS FOR AN ORDER ESTABLISHING PROCEDURES FOR THE SALE, TRANSFER OR ABANDONMENT OF MISCELLANEOUS AND *DE MINIMIS* ASSETS AND GRANTING CERTAIN RELATED RELIEF

FTD Companies, Inc. and certain of its direct and indirect domestic subsidiaries, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully represent as follows:

### Background

1.      On June 3, 2019, (the "<u>Petition Date</u>"), each of the Debtors commenced a case under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtors' chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") have been consolidated for procedural purposes only and are being administered jointly pursuant to an order (D.I. 41) entered on June 4, 2019.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1]     The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses):  FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce LLC (0019); and Provide Creations, Inc. (8964).  The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

2.      A comprehensive description of the Debtors' businesses and operations, capital structure, and the events leading to the commencement of these Chapter 11 Cases can be found in the Declaration of Scott D. Levin in Support of First-Day Pleadings (D.I. 3) (the "First Day Declaration"), which was filed on the Petition Date and is incorporated by reference.

### Jurisdiction and Venue

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4.      Pursuant to sections 105, 363, 365 and 554 of the Bankruptcy Code, the Debtors hereby seek the entry of an order authorizing them to implement procedures by which the Debtors may, from time to time, sell or abandon miscellaneous assets that are no longer needed in their ongoing business activities (collectively, the "Miscellaneous Assets") by private sale or public auction (and pay applicable broker commissions and/or auctioneer fees) without need for further Court approval (but subject to the notice procedures set forth below).

### Facts Relevant to This Motion

*The Debtors' Miscellaneous Assets*

5.      The Debtors anticipate that, during the pendency of these Chapter 11 Cases and in the ordinary course of their operations, they will wish to sell, transfer or otherwise dispose of surplus, non-core Miscellaneous Assets that (a) are no longer necessary to their businesses and (b) in most cases, will be of relatively *de minimis* value compared to the Debtors'

total assets.[2]  In addition, the Debtors may wish to sell Miscellaneous Assets pursuant to transactions that arguably may be outside of the ordinary course of their business (and, thus, will require Court approval pursuant to section 363(b)(1) of the Bankruptcy Code).[3]  Although the Debtors intend to monetize Miscellaneous Assets if at all possible, circumstances may arise where (a) the cost of continuing to maintain, relocate and/or store a given Miscellaneous Asset outweighs any potential recovery from a future sale or transfer thereof or (b) the Debtors are simply unable to find purchasers for, or reach acceptable terms for the sale of, a Miscellaneous Asset.  In such circumstances, the Debtors may seek to abandon such property pursuant to section 554 of the Bankruptcy Code.[4]  Finally, the disposition of certain Miscellaneous Assets may include the related assumption, assumption and assignment, or rejection of executory contracts under section 365 of the Bankruptcy Code.

6.      Requiring Court approval of every such transaction identified above would be administratively burdensome for the Court and costly for the Debtors' estates, especially in light of the relatively small size of the Miscellaneous Assets involved.  Moreover, although the Debtors believe that, in many cases, small dispositions of assets such as those contemplated by this Motion may fall within the scope of the ordinary course of business (and thus may proceed without the need for Court approval under section 363(c) of the Bankruptcy Code), they believe that many purchasers will be uncomfortable consummating sales without

---

[2]      Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors may sell assets "in the ordinary course of business, without notice or a hearing."  11 U.S.C. § 363(c)(1).

[3]      Section 363(b)(1) of the Bankruptcy Code provides in relevant part that a "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]"  11 U.S.C. § 363(b)(1).

On June 6, 2019, the Debtors filed a motion (D.I. 82) seeking authority to sell substantially all of their assets pursuant to one or more transactions.

[4]      Section 554 of the Bankruptcy Code provides in relevant part that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).

confirmation that such sales are authorized.  In other cases, the Debtors anticipate that purchasers

will want confirmation that the sales will be free and clear of liens under section 363(f) of the

Bankruptcy Code, or may require the assumption or assumption and assignment of related

contracts under section 365 of the Bankruptcy Code.  Similarly, the Debtors may seek to reject

other contracts as unnecessary in light of the sale, transfer or abandonment of Miscellaneous

Assets.  The Debtors also believe that they would benefit from the ability to sell Miscellaneous

Assets as promptly as possible where market opportunities arise, while minimizing the

administrative and professional expenses required to consummate such sales.

7.    Accordingly, the Debtors believe that it would be most efficient, and the

proceeds realized with respect to such transactions will be maximized, if the Debtors are

authorized to implement procedures that allow them to sell, transfer or abandon Miscellaneous

Assets, or groups of such assets, and address related contracts, on an expedited basis without

incurring the delay and costs of preparing, filing, serving and having hearings on motions for

approval of each such disposition.

8.    The Debtors further believe that the use of brokers and auctions in certain

circumstances will significantly aid in the timely disposition and realization of the maximum

possible value for the Miscellaneous Assets.  Accordingly, the Debtors also seek approval to pay

applicable market rate broker commissions (collectively, the "Broker Commissions") and/or

auction fees (collectively, the "Auction Fees" and, together with the Broker Commissions,

the "Commissions") for brokers and auctioneers utilized in connection with dispositions of

Miscellaneous Assets.

9.    The Miscellaneous Assets are subject to various liens, claims and

encumbrances (collectively, the "Interests").  The Interests include the liens of the Debtors'

debtor-in-possession lenders (collectively, the "<u>DIP Lenders</u>") pursuant to the terms of the

Superpriority Secured Debtor-in-Possession Credit Agreement (the "<u>DIP Financing</u>

<u>Agreement</u>"), which was approved by the Court on an interim basis by an order entered on

June 5, 2019 (D.I. 63) (the "<u>Interim DIP Order</u>").  Additionally, prior to the Petition Date, the

Debtors entered into that certain:  (a) Credit Agreement, dated July 17, 2013 (as amended,

supplemented, or otherwise modified in accordance with the terms thereof, the "<u>Prepetition</u>

<u>Credit Agreement</u>"); and (b) Security and Pledge Agreement, dated July 17, 2013 (as amended,

supplemented or otherwise modified in accordance with the terms thereof, the "<u>Prepetition</u>

<u>Security Agreement</u>").  Pursuant to the Prepetition Security Agreement, all obligations under the

Prepetition Credit Agreement are guaranteed by the Debtors and are secured by substantially all

of the Debtors' assets.  Accordingly, the Miscellaneous Assets also are subject to the liens of the

lenders, agents and trustees party to the Prepetition Credit Agreement (collectively,

the "<u>Prepetition Lenders</u>").  In addition, other creditors conceivably may have or assert liens

against certain of the Miscellaneous Assets (collectively, to the extent such liens are valid and

properly perfected, the "<u>Other Liens</u>").

        10.     All Interests, including without limitation the DIP Lenders' liens, the

Prepetition Lenders' liens and any Other Liens, will attach to the net proceeds from the sales of

Miscellaneous Assets, and such net proceeds will be utilized consistent with the provisions of the

DIP Financing Agreement, the Interim DIP Order and any final order approving the DIP

Financing Agreement (the "<u>Final DIP Order</u>") or other applicable Court orders or agreements

with secured parties.

***The Sale Notice Procedures***

11.     De Minimis Dispositions.  If (a) the aggregate consideration for a Miscellaneous Asset proposed to be sold or (b) the book value of a Miscellaneous Asset proposed to be abandoned is no more than $150,000 (a "De Minimis Disposition"), and the Debtors have obtained any necessary consents required pursuant to the DIP Financing Agreement in connection with such disposition, the Debtors request that no notice or hearing be required for the Debtors to consummate such a sale, transfer or abandonment (other than as may be required under the DIP Financing Agreement).[5]  The Debtors will maintain records for all such sales, transfers or abandonments.

12.     Proposed Sales.  The Debtors further propose that if the aggregate consideration to be provided for any sale of Miscellaneous Assets is greater than $150,000 but less than $750,000 (the "Sale Cap"), and the sale of such Miscellaneous Assets would require Court approval pursuant to section 363(b) of the Bankruptcy Code, the following procedures (the "Sale Notice Procedures") be approved and implemented in lieu of a separate motion and hearing being conducted for each such sale or transfer (each, a "Proposed Sale"):

      (a)     The Debtors will give notice of each Proposed Sale (the "Sale Notice") to the following parties (collectively, the "Sale Notice Parties"):  (i) the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) counsel to Bank of America, N.A., as administrative agent under the Prepetition Credit Agreement and the DIP Financing Agreement; (iii) counsel to the official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors' Committee"); (iv) if applicable, the non-debtor counterparties to all executory contracts or unexpired leases that the Debtors propose to assume, assume and assign, or reject in connection with such sale; (v) any other party known to hold or assert an Interest against the specific property to be sold; (vi) the

---

[5]     Although notice will not be required for the Debtors to consummate a sale or transfer of no more than $150,000 (as described above), the Debtors may use the Sale Notice Procedures (as such term is defined below) for such a sale or transfer in their discretion or if the buyer or transferee requires the protections afforded by such procedures.

proposed purchaser or transferee (the "Proposed Purchaser"); and (vii) any party that has expressed an interest in purchasing the relevant assets.

(b)     The Sale Notice will be served on the Sale Notice Parties by e-mail, if possible, and by overnight mail.  The Sale Notice will specify:  (i) the assets to be sold; (ii) the identity of the Proposed Purchaser (including a statement that the Proposed Purchaser is not an "insider" as defined in section 101(31) of the Bankruptcy Code); (iii) the major economic terms and conditions of the Proposed Sale, including the amount of cash consideration and the nature, value and, if applicable, method of valuation of any non-cash consideration, as well as any material terms specific to the Proposed Sale; [6] (iv) a copy of any documentation executed in contemplation of the transaction; and (v) an affidavit of the broker, if any, pursuant to Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that identifies the broker, the amount of any Commission, and that contains the disclosures required by Bankruptcy Rule 2014.

(c)     In addition, any Sale Notice will specify:  (i) the identity of any party or parties holding or asserting Interests or potential Interests in the property; (ii) the executory contracts and unexpired leases, if any, that the applicable Debtor or Debtors propose to assume, assume and assign, or reject as part of the Proposed Sale; (iii) for any assumption or assumption and assignment of an executory contract or unexpired lease, the amounts required to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (collectively, the "Cure Claims"); [7] (iv) if applicable, a statement regarding the adequate assurance of future performance by the Proposed Purchaser, consistent with section 365 of the Bankruptcy Code; and (v) the Objection Deadline (as defined below).  The Debtors will file a copy of the Sale Notice with the Court.

(d)     To the extent that a competing bid is received for the purchase of Miscellaneous Assets in a particular Proposed Sale after service of the Sale Notice that, in the Debtors' sole discretion in the exercise of their business judgment, materially exceeds the value of the consideration described in the Sale Notice, then the Debtors may file and serve an amended Sale Notice for the Proposed Sale to the subsequent bidder

---

[6]     If any significant economic terms of a Proposed Sale are amended after transmittal of the Sale Notice, but prior to the expiration of the Objection Deadline (as defined below), including as part of the resolution of any objections, the applicable Debtor or Debtors will send a revised Sale Notice to all Sale Notice Parties describing the Proposed Sale, as amended.  If a revised Sale Notice is required, the Objection Deadline will be extended for an additional seven business days from the date of service of such revised Sale Notice.

[7]     To the extent that any Cure Claims – the payment of which is made to, and redounds to the benefit of, the applicable contract or lease counterparty rather than the Debtors – are payable in connection with a transaction under the Sale Notice Procedures, such Cure Amounts will (a) not count against the Sale Cap to the extent paid by the purchaser of assets and (b) to the extent paid by the Debtors, be deducted from the total consideration received by the Debtors to be applied against the Sale Cap.

pursuant to the Sale Notice Procedures, even if the proposed purchase price exceeds the Sale Cap.

13.     Abandonment.  The Debtors likewise request authority to abandon any Miscellaneous Asset with a book value of more than $150,000 but no more than $300,000.  After determining to abandon any such Miscellaneous Assets (a "Proposed Abandonment"), the Debtors will file and serve a notice (an "Abandonment Notice") by overnight mail or email on the Sale Notice Parties.  The Abandonment Notice will specify:  (a) the Miscellaneous Assets being abandoned; (b) a summary of the justifications for the abandonment; (c) the identities of any known parties holding or asserting liens or other Interests in the relevant Miscellaneous Assets; (d) if applicable, the identity of the entity to which the Miscellaneous Assets will be abandoned; (e) in connection with the abandonment of any interest in real property, a statement that neither any environmental condition related to such property nor the abandonment thereof presents any threat of an imminent and identifiable harm to public health and safety; and (f) the Objection Deadline (as defined below).

14.     Objection Procedures.  The Sale Notice Parties will have until 5:00 p.m., prevailing Eastern Time, on the seventh business day following the service of the Sale Notice or Abandonment Notice (the "Objection Deadline") to object to (a) the Proposed Sale and the payment of any Commissions, (b) the Proposed Abandonment or (c) any related assumptions, assumptions and assignments, or rejections of executory contracts or unexpired leases.  Any such objection (an "Objection") must be:  (a) made in writing, stating with specificity the basis for objecting; and (b) filed with the Court and served on counsel to the Debtors and the other Sale Notice Parties by the Objection Deadline.  The Objection Deadline and required service addresses will be identified in the Sale Notice.

15.     If (a) no Objections are properly filed and served by a Sale Notice Party by the Objection Deadline and (b) the Debtors have obtained any requisite consent required pursuant to the DIP Financing Agreement in connection with the Proposed Sale or Proposed Abandonment, the Debtors will be authorized, without further notice and without further Court approval, to:  (a) consummate the Proposed Sale in accordance with the terms and conditions of the underlying contract or contracts and take such other actions as are necessary to close the transaction and collect the proceeds of such sale (including, without limitation, the payment of any Commissions, and the assumption, assumption and assignment, or rejection of any executory contracts and unexpired leases) or (b) proceed with the Proposed Abandonment, including the rejection of any related executory contracts and unexpired leases.  In addition, the applicable Debtor or Debtors may consummate a Proposed Sale or Proposed Abandonment prior to expiration of the applicable Objection Deadline if each Sale Notice Party consents in writing to the Proposed Sale or Proposed Abandonment.

16.     If a Sale Notice Party files and serves an Objection to a Proposed Sale or Proposed Abandonment by the Objection Deadline, the Debtors and such objecting Sale Notice Party will use good faith efforts to resolve the objection consensually.  If the Debtors and the objecting Sale Notice Party are unable to resolve the Objection, the Debtors will not consummate the proposed transaction without first obtaining Court approval of such Proposed Sale or Proposed Abandonment, including the payment of any Commissions, upon notice and a hearing; provided, however, that the Debtors may consummate any portion of the Proposed Sale (with the consent of the Proposed Purchaser) or Proposed Abandonment that is not a subject of the Objection.

17.    Any Objections may be resolved without a hearing by an order of the Court submitted on a consensual basis by the applicable Debtor or Debtors, any Proposed Purchaser and the objecting party (a "Consent Order"); provided, however, that if any significant economic terms of a Proposed Sale are modified by the Consent Order, the applicable Debtor or Debtors will:  (a) prior to submission to the Court of the Consent Order, provide the Sale Notice Parties with seven business days' notice of the Consent Order and an opportunity to object to the terms thereof by transmitting a written statement of objection to the Debtors' counsel; and (b) with the Consent Order, provide the Court with a written certification that (i) such prior notice was given and (ii) no Interested Party timely asserted an objection to the Consent Order.

18.    The applicable Proposed Sale (including the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases proposed in connection with such sale) or Proposed Abandonment will be deemed final and fully authorized by the Court upon either (a) the expiration of the Objection Deadline without the assertion of any Objections by any Sale Notice Party or (b) the written consent of all Sale Notice Parties.

19.    Attachment of Interests.  Any valid and enforceable Interests on any Miscellaneous Asset to be sold will attach to the net proceeds of a Proposed Sale in the same priority as existed prior to such sale, subject to any claims and defenses that the Debtors may possess with respect thereto.  Net sale proceeds will be utilized by the Debtors in accordance with the terms of the DIP Financing Agreement, the Interim DIP Order and any Final DIP Order or such other financing arrangements as are in effect at the time.

20.    Effect of Sale.  Buyers of any assets sold pursuant to the Sale Notice Procedures will take title to the assets free and clear of liens, claims, encumbrances and other Interests, pursuant to section 363(f) of the Bankruptcy Code.  In addition, the Debtors propose

that all buyers of any assets sold pursuant to the Sale Notice Procedures be entitled to the

protections of section 363(m) of the Bankruptcy Code.[8]  Whether Miscellaneous Assets are sold

or transferred by De Minimis Disposition or pursuant to the Sale Notice Procedures, all

purchasers or transferees will take such assets "as is" and "where is" without any representations

or warranties from the Debtors as to quality or fitness for either their intended purposes or any

particular purposes.

21.     Reporting Requirements.  The Debtors will provide, to the extent

practicable, a written report or reports, within 20 days after the end of each calendar month

concerning any such sales, transfers or abandonments made pursuant to the Sale Notice

Procedures (including the names of the purchasing parties and the types and amounts of the sales

or abandonments) to the U.S. Trustee and counsel to the Creditors' Committee.  No such reports

will be provided, however, for any month where there are no such sales, transfers or

abandonments.

22.     Reservation of Rights.  Nothing in the foregoing Sale Notice Procedures

will prevent the Debtors, in their sole discretion, from seeking separate Court approval of any

proposed sale transaction upon notice and a hearing or, if necessary to comply with a condition

on a sale imposed by a purchaser, to submit a separate order to the Court upon certification of

counsel to be entered without the need for a hearing on the matter.

---

[8]     Section 363(m) of the Bankruptcy Code provides as follows:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does not affect
> the validity of a sale or lease under such authorization to an entity that purchased
> or leased such property in good faith, whether or not such entity knew of the
> pendency of the appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).

**Argument**

***Approval of Sales Under Section 363(b) of the Bankruptcy Code***

23.     Section 363(b)(l) of the Bankruptcy Code provides, in relevant part, that

"the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate."  The notice and hearing requirements for such sales of estate

property are satisfied if "appropriate" notice and an opportunity for hearing are given in light of

"the particular circumstances."  <u>See</u> 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing"

to mean such notice and an opportunity for hearing "as [are] appropriate in the particular

circumstances").

24.     Although section 363 of the Bankruptcy Code does not specify a standard

for determining when it is appropriate for a court to authorize the use, sale or lease of property of

the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based

upon the sound business judgment of the debtor.  <u>See</u>, <u>e.g.</u>, <u>Meyers v. Martin (In re Martin)</u>,

91 F.3d 389 (3d Cir. 1996); <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991);

<u>In re Trans World Airlines, Inc.</u>, No. 01-00056, 2001 Bankr. LEXIS 980 at *29 (Bankr. D. Del.

Apr. 2, 2001); <u>see also</u> <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>,

722 F.2d 1063, 1069 (2d Cir. 1983) (approval of an asset sale under section 363(b) of the

Bankruptcy Code is appropriate if a "good business reason" exists to justify the sale; further

noting that "[s]ection 363(b) of the Code seems on its face to confer upon the bankruptcy judge

virtually unfettered discretion to authorize the use, sale or lease, other than in the ordinary course

of business, of property of the estate").

25.     Courts generally will accord significant deference to a debtor's business

judgment to sell assets outside the ordinary course of business.  <u>See</u>, <u>e.g.</u>, <u>Martin</u>, 91 F.3d at 395;

<u>In re Montgomery Ward Holding Corp.</u>, 242 B.R. 147, 153 (D. Del. 1999); <u>In re Delaware &</u>

Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Trans World Airlines, 2001 Bankr.

LEXIS 980, at *29.

**_Approval of Abandonment Under Section 554(a) of the Bankruptcy Code_**

26.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a

hearing, the trustee may abandon any property of the estate that is burdensome to the estate or

that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Section 554(a) of

the Bankruptcy Code thus requires two showings:  first, the property to be abandoned must be

property of the estate; second, the property to be abandoned must be burdensome or of

inconsequential value or benefit to the debtor's estate.

27.     The debtor-in-possession is afforded significant discretion in determining

the value and benefits of particular property for purposes of the decision to abandon it.  See In re

Contract Research Sols., Inc., No. 12-11004, 2013 WL 1910286, at *4 (Bankr. D. Del.

May 1, 2013) ("[A debtor] need only demonstrate that [it] has exercised sound business

judgment in making the determination to abandon."); In re Interpictures, Inc., 168 B.R. 526, 535

(Bankr. E.D.N.Y. 1994) (stating that "abandonment is in the discretion of the [debtor], bounded

only by that of the court").

28.     This right to abandon exists so that "burdensome property" can be

removed and the "best interests of the estate" will be furthered.  South Chicago Disposal, Inc. v.

LTV Steel Co., Inc. (In re Chateaugay Corp.), 130 B.R. 162, 166 (S.D.N.Y. 1991) (citation and

quotation marks omitted); see also Gabayzadeh v. Shubert (In re Am. Tissue, Inc.), No. 12-322,

2015 WL 1516973, at *4  (D. Del. Mar. 31, 2015) ("The purpose of abandonment under § 554 is

to rid the bankruptcy estate of burdensome property, not to increase the estate's burden.").

29.     The Debtors expect to take all reasonable steps to monetize or otherwise

maximize the value of their Miscellaneous Assets for the benefit of their chapter 11 estates.

The costs associated with sales of certain Miscellaneous Assets, however, may exceed any possible proceeds thereof.  The inability to consummate a commercially reasonable sale of Miscellaneous Assets would indicate that such assets have no meaningful monetary value. Further, the costs of removing, maintaining and/or storing such assets may burden the Debtors' estates. Accordingly, the abandonment of Miscellaneous Assets pursuant to the procedures set forth herein is in the best interests of the Debtors' estates and should be approved.

***Approval of Proposed Sales or Proposed Abandonments on Shortened and Limited Notice***

30.    Generally, Bankruptcy Rules 2002(a)(2) and 2002(i) require that a minimum of 21 days' notice of proposed sales of property outside the ordinary course of business be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code.  Fed. R. Bankr. P. 2002(a), (i). Pursuant to Bankruptcy Rule 2002(i), however, courts may limit notice of asset sales outside of the ordinary course of a debtor's business, even without a prior showing of cause, to the United States Trustee, any official committee appointed under section 1102 of the Bankruptcy Code and parties who have requested notice pursuant to Bankruptcy Rule 2002.

31.    As noted above, the "notice" required by section 363(b)(1) of the Bankruptcy Code is "such notice as is appropriate in the particular circumstances."  11 U.S.C. § 102(1)(A).  Bankruptcy courts have recognized that, when determining whether notice is appropriate under the circumstances for purposes of section 102(1)(A) of the Bankruptcy Code, they are "guided by fundamental notions of procedural due process."  In re Lomas Fin. Corp., 212 B.R. 46, 54 (Bankr. D. Del. 1997).  Due process "requires that any notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  Id. (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); In re Grand Union Co.,

204 B.R. 864, 871 (Bankr. D. Del. 1997).  In sum, if basic due process is afforded to interested

parties and appropriate cause is established, a court may determine that limited notice of an asset

sale is appropriate.

32.     The Debtors seek the approval of the Sale Notice Procedures to maximize

the net value realized from sales of relatively immaterial or *de minimis* assets.  These procedures

will accommodate the smooth and timely consummation of such smaller asset sales.  Under the

circumstances, the usual process of obtaining Court approval of each Proposed Sale or Proposed

Abandonment subject to the Sale Notice Procedures (a) would impose unnecessary

administrative burdens on the Court and use valuable Court time at omnibus hearings, (b) would

create costs to the Debtors' estates that may undermine or eliminate the economic benefits of the

underlying transactions and (c) in some instances may hinder the Debtors' ability to take

advantage of sale opportunities that are available only for a limited time.  As such, the Debtors

propose to streamline the process as described herein.

33.     For the foregoing reasons, the Debtors submit that:  (a) sufficient cause

exists to implement the modified notice provisions proposed herein; and (b) these modified

notice procedures will make the sale process for relatively immaterial or *de minimis* assets as

efficient as possible, while preserving fully the rights of the Sale Notice Parties.

34.     The Debtors also believe that limiting service of the Sale Notices and

Abandonment Notices to the Sale Notice Parties is justified under the circumstances.  The Sale

Notice Parties represent the key parties in interest who should receive notice of any Proposed

Sale or Proposed Abandonment.  In particular, Sale Notices and Abandonment Notices would be

served on the primary parties representing the interests of unsecured creditors of the Debtors'

estates, i.e., the U.S. Trustee and counsel to the Creditors' Committee.  Under the circumstances,

the Debtors believe that this manner of notice is appropriate and fully preserves necessary due process rights.

***Approval of Transactions Without a Hearing***

35.     The sale of property outside of the ordinary course of business or the abandonment of property may occur only "after notice and a hearing."  11 U.S.C. §§ 363(b)(1) and 554(a).  Such sales or abandonments are authorized without an actual hearing, however, if no party in interest timely requests such a hearing.  11 U.S.C. § 102(1)(B)(i) (notwithstanding any statutory requirement for "notice and a hearing," the Bankruptcy Code "authorizes an act without an actual hearing if such notice is given properly and if … such a hearing is not requested timely by a party in interest").  Moreover, as described above, due process is satisfied if parties in interest are given "an *opportunity* to present their objections."  Mullane, 339 U.S. at 314 (emphasis added).

36.     The Debtors believe that the Sale Notice Procedures comport with the hearing requirements of the Bankruptcy Code and due process by providing an opportunity for Sale Notice Parties to present Objections and request a hearing on each Proposed Sale and Proposed Abandonment.  Under these circumstances, a Proposed Sale or a Proposed Abandonment may be approved without a hearing if, after being presented with the opportunity to object and seek a determination of the Court, no Interested Party requests a hearing.

37.     With respect to De Minimis Dispositions, the Debtors believe that the opportunity to object to this Motion and the hearing on this Motion are sufficient to satisfy the hearing requirements of the Bankruptcy Code and due process under the circumstances. The primary parties representing the interests of unsecured creditors of the Debtors' estates – i.e., the U.S. Trustee; counsel to the Creditors' Committee; counsel to Bank of America, N.A.,

as administrative agent under the Prepetition Credit Agreement and the DIP Financing

Agreement; and all parties entitled to notice pursuant to Bankruptcy Rule 2002 – are being given

the opportunity to object to this Motion.

***Approval of Sales Free and Clear***
***of Liens, Claims and Encumbrances***

38.     Pursuant to section 363(f) of the Bankruptcy Code, the Court may

authorize the sale of assets free and clear of existing liens, claims and encumbrances if:

(a) applicable non-bankruptcy law permits the sale of such property free and clear of such

interest; (b) the entity holding the lien, claim or encumbrance consents to the proposed sale;

(c) such interest is a lien and the price at which such property is to be sold is greater than the

aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such

entity could be compelled in a legal or equitable proceeding to accept a money satisfaction of

such interest.

39.     Assets encumbered by Interests held by other parties may be sold pursuant

to the Sale Notice Procedures only to the extent permitted by section 363(f) of the Bankruptcy

Code.  As such, the relief requested in this Motion leaves the requirements of section 363(f) of

the Bankruptcy Code unaltered.  Moreover, as noted above, the Debtors propose that such

interests attach to the proceeds of the sales to the extent provided by applicable state law, any

relevant security agreement or both.  If a holder of an Interest receives the requisite notice and

does not object within the prescribed time period, the Debtors request that such holder be

deemed to have consented to the proposed sale and that the property then may be sold free and

clear of such holder's Interest.

*Good Faith Status of Purchasers*

40.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Third

Circuit Court of Appeals has stated that good faith:

> speaks to the integrity of [the purchaser's] conduct in the course of
> the sale proceedings.  Typically, the misconduct that would destroy
> a purchaser's good faith status at a judicial sale involves fraud,
> collusion between the purchaser and other bidders or the trustee, or
> an attempt to take grossly unfair advantage of other bidders.

Schepis v. Burtch (In re Pursuit Capital Mgmt., LLC), 874 F.3d 124, 135 (3d Cir. 2017) (quoting

In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986); see also Esposito v. Title

Ins. Co. of Pa. (In re Fernwood Market), 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith

purchasers are protected under section 363(m) of the Bankruptcy Code where notice is provided

to lienholders).

41.    Here, the Debtors intend only to sell or transfer Miscellaneous Assets

pursuant to arms' length transactions and in any Sale Notice will disclose any insider

relationships of Potential Purchasers with the Debtors.  Moreover, Sale Notice Parties will have

notice of the Proposed Sale and an opportunity to object as set forth above.  The Debtors,

therefore, request that any buyer of Miscellaneous Assets pursuant to the Sale Notice Procedures

be entitled to the protection afforded by section 363(m) of the Bankruptcy Code.

***Approval of Assumption, Assumption and Assignment, or***
***Rejection, as Applicable, of Executory Contracts and Unexpired Leases***

42.    Courts employ a business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease. See, e.g., In re HQ Global Holdings, Inc., 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that a debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if decision was product of bad faith, whim or caprice); In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of lease "will be a matter of business judgment by the Court….").  The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption] or rejection of the contract will benefit the estate." Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).

43.    The Debtors anticipate that certain Proposed Sales will require a Debtor to dispose of executory contracts or unexpired leases that are related to the Miscellaneous Assets to be sold.  As part of the negotiations with the purchaser or purchasers of the Miscellaneous Assets, the applicable Debtor may need to determine whether the purchaser will take assignment of such related contracts or leases that are assignable under applicable non-bankruptcy law or whether the Debtor instead should reject any such contracts or leases.  The Debtors believe that any such determination will fall squarely within their business judgment and will be made in the best interests of such Debtor's estate and creditors.  Moreover, under the Sale Notice Procedures, the assumption, assumption and assignment, or rejection of any contracts or leases will be accomplished only after providing notice (including the amount of any Cure Claim) to the non-debtor parties to such contracts and leases and all other interested parties, with an

opportunity for such parties to object.  Accordingly, the requirements of section 365 of the

Bankruptcy Code will be satisfied under the Sale Notice Procedures.

***Approval of Payment of Broker Commissions and Auction Fees***

44.    The payment of the Commissions to brokers and auctioneers engaged by

the Debtors in connection with the sale of Miscellaneous Assets is in the best interest of the

Debtors' estates and their creditors.  The Debtors believe that the use of brokers and auctions in

certain circumstances will significantly aid in the timely disposition and realization of the

maximum possible value for the Miscellaneous Assets.  Payment of the Commissions pursuant to

the Sale Notice Procedures will save the Debtors' estates the expenses associated with the

brokers and auctioneers filing retention applications and will avoid the incurrence of additional

fees for preparing and prosecuting interim fee applications.  The Commissions will represent

only a fraction of the value of any Miscellaneous Asset sold pursuant to the Sale Notice

Procedures and are not significant relative to the aggregate size of the Debtors' estates.

The Debtors believe that payment of the Commissions pursuant to the Sale Notice Procedures

will provide an efficient means of compensating brokers and auctioneers and avoid the

incurrence of these unnecessary administrative and professional expenses.  Accordingly,

approval of the payment of the Commissions pursuant to the Sale Notice Procedures is in the

best interest of the Debtors' estates and their creditors.

***Approval of Similar Procedures in Other Cases***

45.    In light of the demonstrable benefits of streamlined procedures to sell

small assets and the legal justifications described above, procedures similar to the Sale Notice

Procedures for Miscellaneous Assets have been approved in other chapter 11 cases in this

District.  See, e.g., In re Quicksilver Resources, Inc., No. 15-10585 (LSS) (Bankr. D. Del.

Apr. 14, 2015) (approving procedures for the sale (a) without further notice, of assets with a sale

price of up to $175,000 and (b) with limited notice, of assets with a sale price of up to

$2.5 million);  In re Energy Future Holdings Corp., No. 14-10979 (CSS) (Bankr. D. Del.

June 3, 2014) (approving procedures for the sale of assets with a sale price of up to $5 million

and the abandonment of assets with a book value of up to $15 million); In re Visteon Corp.,

No. 09-11786 (CSS) (Bankr. D. Del. July 17, 2009) (approving procedures for the sale

(a) without further notice, of assets with a sale price of up to $500,000 and (b) with limited

notice, of assets with a sale price of up to $10 million); In re The Fairchild Corp., Case

No. 09-10899 (CSS) (Bankr. D. Del. May 15, 2009) (approving procedures for the sale of assets

with a sale price of up to $1.25 million on limited notice); In re Flying J, Inc., No. 08-13384

(MFW) (Bankr. D. Del. Feb. 19, 2009) (approving procedures for the sale of assets with a sale

price of up to $5 million); In re Nortel Networks, Inc., Case No. 09-10138 (KG) (Bankr. D. Del.

Feb. 18, 2009) (approving procedures governing sales of up to $1.5 million in assets without

notice and $10 million in assets in a single transaction with limited notice up to an aggregate of

$50 million per purchaser); In re Dura Auto. Sys., Inc., No. 06-11202 (KJC) (Bankr. D. Del.

Apr. 27, 2007) (approving procedures for the sale of assets with a sale price of up to $250,000

without notice and up to $2.5 million on limited notice and authorizing abandonment

procedures).

### Request for Waiver of Stay

46.    The Debtors also seek a waiver of any stay of the effectiveness of the

order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the

use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days

after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Pursuant

to Bankruptcy Rule 6006(d), "[a]n order authorizing the trustee to assign an executory contract

or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the

order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d).  The Debtors submit that

the imposition of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) is

inconsistent with the streamlined procedures for notice and approval of each individual sale

contemplated by this Motion.  One of the primary benefits of the proposed Sale Notice

Procedures, in fact, is the ability to take advantage of market opportunities to consummate sales

of Miscellaneous Assets without delay.  Accordingly, the Debtors submit that ample cause exists

to justify a waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

## **Consent to Jurisdiction**

47.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a

final judgment or order with respect to this Motion if it is determined that the Court would lack

Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## **Notice**

48.     Notice of this Motion shall be provided to:  (a) the U.S. Trustee;

(b) Kelley Drye & Warren LLP and Benesch Friedlander Coplan & Aronoff LLP, as proposed

co-counsel to the Creditors' Committee; (c) Moore & Van Allen PLLC, as counsel to Bank of

America, N.A., as administrative agent under the Credit Facility and the DIP Facility; and (d) all

parties entitled to notice pursuant to Bankruptcy Rule 2002.  Due to the nature of the relief

requested herein, the Debtors respectfully submit that no further notice of this Motion is

required.

## **No Prior Request**

49.     No prior request for the relief sought herein has been made to this Court or

any other court in connection with these chapter 11 cases.

WHEREFORE, the Debtors respectfully requests that the Court:  (a) enter the Proposed Order, granting the relief requested herein; and (b) grant such other and further relief to the Debtors as the Court may deem proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: June 18, 2019
      Wilmington, Delaware

Respectfully submitted,

*/s/ Brett M. Haywood*
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Brett M. Haywood (No. 6166)
Megan E. Kenney (No. 6426)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701
Email: defranceschi@rlf.com
    heath@rlf.com
    haywood@rlf.com
    kenney@rlf.com

-and-

Heather Lennox (*pro hac vice*)
Thomas A. Wilson (*pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Email: hlennox@jonesday.com
    tawilson@jonesday.com

Brad B. Erens (*pro hac vice*)
Caitlin K. Cahow (*pro hac vice*)
JONES DAY
77 West Wacker
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585
Email: bberens@jonesday.com
    ccahow@jonesday.com

PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION