# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTD Companies, Inc., et al.,[1]<br><br>                 Debtors. | Chapter 11<br><br>Case No. 19-11240 (LSS)<br><br>(Jointly Administered)<br>**Re: D.I. 82** |

## DECLARATION OF ALAN D. HOLTZ
## IN SUPPORT OF THE BIDDING PROCEDURES MOTION

I, Alan D. Holtz, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am the appointed Chief Restructuring Officer of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors" and, together with their non-debtor affiliates, the "Company"). In addition, I am a Managing Director of AlixPartners, LLP ("AlixPartners") and a Managing Director of AP Services, LLC ("APS"), which is an affiliate of AlixPartners.[2] I am authorized to make this declaration (this "Declaration") on behalf of the Debtors.

---

[1] The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce LLC (0019); and Provide Creations, Inc. (8964). The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

[2] On June 6, 2019, the Debtors filed the *Debtor's Application for an Order Authorizing them to (I) Employ and Retain AP Services, LLC and (II) Designate Alan D. Holtz as Chief Restructuring Officer and Scott M. Tandberg as Associate Restructuring Officer, Nunc Pro Tunc to the Petition Date* [Docket No. 81] (the "APS Retention Application"). The APS Retention Application is scheduled to be considered at a hearing before the Court on July 2, 2019.

2. I submit this Declaration in support of the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice thereof and (F) Granting Related Relief; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 82] (the "<u>Bidding Procedures Motion</u>").[3]

3. Except as otherwise indicated, all statements set forth in this Declaration are based on (a) my personal knowledge, (b) my review of relevant documents, (c) information provided to me by AlixPartners and/or APS employees working under my supervision, (d) information provided to me by, or discussions with, the Debtors' management team, employees or the Debtors' other advisors or (e) my opinion based upon my experience. If called to testify, I could and would testify to the facts and the opinions set forth herein.

**<u>Qualifications</u>**

4. AlixPartners is an internationally recognized restructuring and turnaround firm with a wealth of experience in providing financial advisory services. Since their inception in 1981, AlixPartners and APS each have enjoyed an excellent reputation for financial advisory, crisis management and restructuring-related services. AlixPartners and APS have provided these

---

[3] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such term in the Bidding Procedures Motion.

services to debtors and other key constituents in numerous recent chapter 11 cases.  See, e.g., In re PG&E Corp., Case No. 19-30088 (DM) (Bankr. N.D. Cal. Jan. 29, 2019); In re Heritage Home Grp., LLC, et al., Case No. 18-11736 (KG) (Bankr. D. Del. Jul. 29, 2018); In re Video Equipment Rental, et al., Case No. 18-10834 (KG) (Bankr. D. Del. May 22, 2018); In re HCR Manorcare, Inc., et al., Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 16, 2018); In re Velocity Holding Co., et al., Case No. 17-12442 (KJC) (Bankr. D. Del. Dec. 12, 2017); In re Appvion, Inc., et al., Case No. 17-12082 (KJC) (Bankr. D. Del. Oct. 30, 2017); In re The Gymboree Corp., et al., Case No. 17-32986 (KLP) (Bank. E.D. Va. July 26, 2017); In re BCBG Max Azria Global Holdings, et al., Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); In re Eastern Outfitters, LLC, et al., Case No. 17-10243 (LSS) (Bankr. D. Del. Mar. 9, 2017).

5. I have over 31 years of experience advising clients on maximizing value, recoveries and financial returns in complex restructuring situations.  This experience includes working with management teams and boards of directors of dozens of large companies facing financial challenges like those facing the Debtors.

6. I have a Bachelor of Science in Economics from the University of Pennsylvania.  I am a Certified Insolvency and Restructuring Advisor; a member of the American Bankruptcy Institute; a member of the Turnaround Management Association; a member of the American Institute of Certified Public Accountants; and a past president of the Association of Insolvency and Restructuring Advisors.

7. The Debtors engaged AlixPartners in July 2018 to provide financial advisory and consulting services in connection with the Debtors' prepetition restructuring efforts. During the course of its engagement, AlixPartners worked closely with the Debtors' management team and has become well-acquainted with the Debtors' capital structure, liquidity needs, business

operations and workforce. Prior to the commencement of these chapter 11 cases, each Debtor appointed me to serve as its Chief Restructuring Officer.

### The Debtors' Sale Process

8. In July 2018, the Debtors commenced a comprehensive assessment of strategic alternatives in pursuit of a global resolution of the Company's challenges. These alternatives included, among others, a sale or merger of the entire Company, the sale or other disposition of certain business segments or assets, a corporate restructuring, a debt refinancing and the pursuit of certain other value-enhancing initiatives. Ultimately, the Debtors determined to conduct a wide-ranging marketing and sale process (the "Sale Process") with the goal of consummating one or more strategic sale transactions involving the entire Company or, in the alternative, individual businesses.

9. Following the release of the Company's 2019 Valentine's Day results, the momentum of the prepetition Sale Process slowed significantly. After Valentine's Day 2019, the Debtors' management team, investment bankers, Moelis & Company LLC and Piper Jaffray & Co., and I worked together to recalibrate the Sale Process to focus more on marketing and consummating strategic sales of individual businesses while remaining willing to entertain offers for the entire Company.

10. Following the commencement of these chapter 11 cases, the Debtors determined, in the exercise of their sound business judgment, that it would be in the best interests of their estates and creditors to seek the relief requested in the Bidding Procedures Motion. Importantly, the timeline set forth in the Bidding Procedures Motion reflects the significant prepetition marketing efforts undertaken by the Debtors and their advisors. The timeline in the Bidding Procedures Motion also reflects the Milestones contained in the Debtors' postpetition

financing facility (the "DIP Facility").  Given the Milestones and the Debtors' and their advisors' marketing efforts to date, proceeding on a sale timeline longer than as is proposed in the Bidding Procedures Motion would result in the Debtors' default under the DIP Facility and potentially would jeopardize the Debtors' ability to maximize the value of their Assets in these chapter 11 cases.

11. As such, in my opinion, the Debtors' requests for the relief in the Bidding Procedures Motion reflect an exercise of the Debtors' reasonable business judgment and the Debtors' motivation to maximize value for their estates and creditors.

Dated: June 24, 2019

/s/ Alan D. Holtz
Alan D. Holtz
Chief Restructuring Officer
FTD Companies, Inc.