**<u>EXHIBIT 2</u>**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|                                          |     |                              |
| ---------------------------------------- | --- | ---------------------------- |
| In re:                                   | :   | Chapter 11                   |
|                                          | :   |                              |
| FTD Companies, Inc., et al.,[1]          | :   | Case No. 19-11240 (LSS)      |
|                                          | :   |                              |
| Debtors.                                 | :   | (Jointly Administered)       |
|                                          | :   |                              |
|                                          | :   | **Re: Docket No. 82**        |

**ORDER (I) APPROVING BIDDING PROCEDURES
FOR THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS, (II) AUTHORIZING THE DEBTORS TO
ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS
AND TO PROVIDE BIDDING PROTECTIONS THEREUNDER, (III) SCHEDULING
AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, (IV) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES,
(V) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND
MANNER OF NOTICE THEREOF AND (VI) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion of the Debtors for Entry of*
*Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors'*
*Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to*
*Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and*
*Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures,*
*(E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and*
*(F) Granting Related Relief; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of*
*Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of*

---

[1]    The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification
numbers, if any, follow in parentheses):  FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists'
Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC
(7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD
Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce, Inc. (0019); and
Provide Creations, Inc. (8964).  The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek
Drive, Downers Grove, IL 60515.

*Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. ●82] (the "Motion")[2] filed by the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"); the Court having reviewed the Motion and the First Day Declaration [Docket No. 3], and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court on _____June 25, 2019 to consider certain of the relief requested in the Motion (the "Bidding Procedures Hearing"); and after due deliberation, this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice of the Motion and the Bidding Procedures Hearing was sufficient under the circumstances and no other or further notice need be provided.

D.      The bidding procedures attached hereto as Exhibit 1 (the "Bidding Procedures") are fair, reasonable and appropriate and are designed to maximize the value of the

---

[2]      Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or in the Bidding Procedures, as applicable.

RLF1 21383862v.121455463v.1
RLF1 21455463v.2

proceeds of one or more sales (each, a "Sale Transaction") of substantially all of the Debtors' assets (the "Assets").

E.       The Bidding Procedures comply with the requirements of Rule 6004-1(c) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

F.       The procedures set forth herein regarding the Debtors' assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with any Sale Transaction (the "Assumption and Assignment Procedures") are fair, reasonable and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

G.       The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures; (ii) the form and manner of notice of the Bidding Procedures, the auction of the Assets (the "Auction") and the final hearing to consider approval of any proposed Sale Transaction(s) (the "Sale Hearing"), substantially in the form attached hereto as Exhibit 2 (the "Sale Notice"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (a) the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale Transaction, substantially in the form attached hereto as Exhibit 3 (the "Assumption and Assignment Notice"); and (iv) the Assumption and Assignment Procedures.

H.       The Bidding Procedures are reasonably designed to promote participation and active bidding at and participation in the Auction to ensure that the highest or otherwise best value is generated for the Assets.

I.      Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.   A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

J.      The Sale Notice, the Publication Notice (as defined below) and the Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the Assumption and Assignment Procedures, the Debtors' proposed Cure Costs, any proposed assumption of a Contract in connection with a Sale Transaction and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Auction, the sale of the Assets or the assumption and assignment of Contracts in connection therewith shall be required.

K.      Good and sufficient business reasons exist for the Court to authorize the "stalking horse" procedures set forth in Section II.B of the Bidding Procedures (the "Stalking Horse Procedures"), which permit the Debtors to designate one or more Stalking Horse Bidders and seek authorization of certain bidding protections pursuant to the terms of an applicable Stalking Horse Agreement, including the payment of a "break-up" fee and an expense reimbursement (together, a "Termination Payment").

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief granted in this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

A.    **The Bidding Procedures**

3.    The Bidding Procedures attached hereto as <u>Exhibit 1</u> are hereby approved and are incorporated herein by reference.  The Bidding Procedures shall govern the bids and proceedings related to the Auction and the sale of the Assets.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.    Any party holding a perfected security interest in any of the Assets may seek to credit bid all, or a portion of, such party's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "<u>Credit Bid</u>")~~. Any~~; provided, that, (a) a Credit Bid may only be applied to reduce the cash consideration for the Assets in which the credit bidding party holds a perfected security interest; (b) a Credit Bid must also comply with~~,~~, and be subject to, the terms of the DIP Orders,[3] including, for the avoidance of doubt (i) any challenge provisions contained therein and (ii) the requirement in the Interim DIP Order that any Credit Bid of the Prepetition Lenders that does not also contain a Credit Bid of the DIP Obligations (as defined in the Interim DIP Order) must contain a cash component satisfactory to satisfy in full the DIP Obligations; and (c) any bid that includes a Credit Bid shall also include a cash component sufficient to pay, and earmarked exclusively for the payment of, any applicable Termination Payment.

5.    Subject to this Order and the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, shall have the right to

---

[3]    On June 5, 2019, the Court entered the *Interim Order Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling Final Hearing, and (IV) Granting Related* Relief, entered by the Court [Docket No. 60] (the "<u>Interim DIP Order</u>" and, together with any order of the Court approving the DIP Facility on a final basis, the "<u>DIP Orders</u>").

RLF1 ~~21383862v.1~~21455463v.1
RLF1 21455463v.2

(a) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (b) make final determinations as to which Assets or combinations of Assets for which the Debtors will conduct an Auction (each such Asset or group of Assets, an "<u>Auction Package</u>"); (c) select the Baseline Bid for each Auction Package; (d) determine the amount of each Minimum Overbid; (e) determine the Leading Bid for each Auction Package; (f) determine which Qualified Bid is the highest or otherwise best bid for each Auction Package (each such Qualified Bid, a "<u>Successful Bid</u>") and which Qualified Bid is the next highest and next best bid after the Successful Bid for an Auction Package (each such Qualified Bid, a "<u>Backup Bid</u>"); (g) reject any bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of this Order or any other applicable order of the Court, the Bidding Procedures, the Bankruptcy Code or other applicable law; or (iii) contrary to the best interests of the Debtors and their estates; (h) adjourn or cancel the Auction with respect to any or all of the Assets in accordance with the Bidding Procedures; and (i) adjourn the Sale Hearing with respect to a Sale Transaction involving any or all of the Assets in accordance with the Bidding Procedures.

6.    In accordance with the Bidding Procedures, the Debtors, in the exercise of the their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law<u>, and after consulting with the Consultation Parties</u>, shall have the right to modify the Bidding Procedures, including to (a) extend or waive deadlines or other terms and conditions set forth herein; (b) adopt new rules and procedures for conducting the bidding and Auction process; (c) if applicable, provide reasonable accommodations to a Stalking Horse Bidder; and (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and

RLF1 21383862v.1 21455463v.1
RLF1 21455463v.2

maximizing the of value of the Assets; provided, that, the Bid Deadline shall not be extended absent consultation with the Consultation Parties and any applicable Stalking Horse Bidder.

**B.      Stalking Horse Agreements and Bidding Protections**

7.      The Debtors, in the exercise of their reasonable business judgment and in a manner consistent with the Bidding Procedures, their fiduciary duties and applicable law, may designate one or more Stalking Horse Bidders for the sale of the Assets and provide, subject to approval by the Court or in accordance with the Bidding Procedures, any such Stalking Horse Bidder a Termination Payment in connection therewith in accordance with the Stalking Horse Procedures set forth in Section II.B of the Bidding Procedures.

8.      Unless authorized by separate order of the Court, no person or entity shall be entitled to any expense reimbursement or "termination," "break-up," "topping" or other similar fee or payment by the Debtors for submitting a bid for any of the Assets or in any way participating in the Auction or the Sale Process.

**C.      Bid Deadline and Auction**

9.      Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties (as defined in Section X.A of the Bidding Procedures) a Qualified Bid on or before **July 15, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline"). The Debtors shall promptly provide a copy of each Qualified Bid to each of the Consultation Parties, but in no event later than the next calendar day after the Debtors' receipt of such Qualified Bid.

10.      If the Debtors receive more than one Qualified Bid for an Asset, the Debtors shall conduct an Auction for such Asset. With respect to Assets for which the Debtors only receive one Qualified Bid, the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may determine to consummate a Sale Transaction with the applicable

RLF1 21383862v.121455463v.1
RLF1 21455463v.2

Qualified Bidder (subject to Court approval) or include such Assets in the Auction; provided, that, if a Stalking Horse Bid is the only Qualified Bid received in respect of Stalking Horse Assets, the Debtors shall not conduct an Auction for such Stalking Horse Assets.

11.     The Auction, if required, will be conducted at the offices of Jones Day, 77 West Wacker, Chicago, Illinois 60601 on **July 22, 2019, at 10:00 a.m. (prevailing Central Time)**, or at such other time and location as designated by the Debtors, after providing notice to the Sale Notice Parties.  If held, the Auction proceedings shall be transcribed or video recorded.

12.     In the event the Debtors determine not to hold an Auction for some or all of the Assets, the Debtors shall file with the Court, serve on the Sale Notice Parties (as defined in Section X. B of the Bidding Procedures) and cause to be published on the website maintained by Omni Management Group, Inc., the Debtors' claims and noticing agent in these Chapter 11 Cases, located at www.omnimgt.com/FTD (the "Omni Website"), a notice containing the following information (as applicable): (a) a statement that the Auction for the relevant Assets has been canceled; (b) the identity of the Successful Bidder; (c) a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption or assignment of Contracts contemplated thereby; and (d) the date, time and location of the Sale Hearing.

13.     Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction, subject to any other limitations as the Debtors may reasonably impose in accordance with the Bidding Procedures.  Qualified Bidders participating in the Auction must appear in person at the Auction or through a duly authorized representative.  The Debtors may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction.  Notwithstanding the foregoing, the Auction shall be conducted openly, and all creditors shall be permitted to attend.

14.     Each Qualified Bidder participating in the Auction shall confirm in writing on the record that (a) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets; and (b) the Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction constitutes a binding, good-faith and <u>bona fide</u> offer to purchase the Assets identified in such bids.

15.     ~~By no later than the later of (a) July 24, 2019 and (b) one business~~ <u>Within one</u> day after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the Omni Website, a notice setting forth the results of the Auction (the "<u>Notice of Auction Results</u>"), which shall (i) identify each Successful Bidder and each Backup Bidder; (ii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby; and (iii) set forth the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

**D.      Sale Noticing and Objection Procedures**

16.     All general objections to any Sale Transaction (each, a "<u>Sale Objection</u>"), including (a) any objection to the sale of any Assets free and clear of liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder and/or a Backup Bidder (as applicable) and (b) any objection to the entry of any Sale Order shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) be filed with the Court; and (iii) served on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) by no later than **July 16, 2019, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Sale Objection Deadline</u>").

17.     Following service of the Notice of Auction Results, parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid (each such objection, a "Supplemental Sale Objection").  Any Supplemental Sale Objection shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) be filed with the Court and (c) served on the Objection Notice Parties by no later than the later of **(i) July 26, 2019, at 4:00 p.m. (prevailing Eastern Time) and (ii) three business days prior to the Sale Hearing** (the "Supplemental Sale Objection Deadline").

18.     Any party who fails to file and serve a timely Sale Objection or Supplemental Sale Objection in accordance with the terms of this Order shall be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection or Supplemental Sale Objection to the relief requested in the Motion, or to the consummation or performance of the applicable Sale Transaction(s), including the transfer of Assets to the applicable Successful Bidder free and clear of liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

19.     Consummation of any Sale Transaction pursuant to a Successful Bid shall be subject to Court approval.  The Sale Hearing shall be held before the Court on **July 31, 2019, at 11:00 a.m. (prevailing Eastern Time)**; provided, that, the Debtors may, after consulting with the Consultation Parties, seek an adjournment of the Sale Hearing, consistent with the Bidding Procedures and paragraph 5 of this Order.

20.     The Sale Notice, substantially in the form attached hereto as Exhibit 2, is approved, and no other or further notice of the proposed sale of the Assets, the Auction, the Sale

RLF1 21383862v.121455463v.1
RLF1 21455463v.2

Hearing, the Sale Objection Deadline or the Supplemental Sale Objection Deadline shall be required if the Debtors serve and publish the Sale Notice in the manner provided in the Bidding Procedures and this Order.

21.    By no later than the later of (a) June 27, 2019 and (b) two ~~business~~ days after the entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the Omni Website, the Sale Notice.

22.    Within four business days after the entry of this Order, the Debtors shall cause the information contained in the Sale Notice to be published once in the national edition of *USA Today* and once in the *Chicago Tribune* (the "Publication Notice").

**E.    Assumption and Assignment Procedures**

23.    The Assumption and Assignment Notice, substantially in the form attached hereto as Exhibit 3, is approved, and no other or further notice of the Debtors' proposed Cure Costs with respect to Contracts listed on an Assumption and Assignment Notice is necessary or required.

24.    By no later than the later of (a) July 1, 2019 and (b) three business days after the entry of this Order, the Debtors shall file with the Court, serve on the applicable Counterparties and cause to be published on the Omni Website, the Assumption and Assignment Notice.

25.    Any objection to the Debtors' proposed Cure Costs (each such objection, a "Cure Objection") shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) be filed with the Court; and (c) served on the Objection Notice Parties by no later than **July 16, 2019, at 4:00 p.m. (prevailing Eastern Time)**.

26.    The Debtors, the applicable Stalking Horse Bidder or Successful Bidder (if applicable) and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If the parties are unable to consensually resolve the

-11-

Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to paragraph 27 of this Order. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the applicable Sale Transaction, the Debtors may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned in connection with the applicable Sale Transaction (subject to the terms of the applicable Sale Transaction); provided, that, in the case of an unexpired lease of non-residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. All other objections to the Debtors' proposed assumption and assignment of the Debtors' right, title and interest in, to and under a Contract shall be heard at the Sale Hearing.

27. If a timely Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, at the ~~Debtors' option~~option of the Debtors, in consultation with the Consultation Parties and the applicable Successful Bidder, be adjourned to a subsequent hearing (each such Cure Objection, an "Adjourned Cure Objection"). An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction; provided, that, with respect to any disputed cure amounts asserted in a timely filed Cure Objection, the Debtors shall, within five business days after the entry of the applicable Sale Order, establish or cause to be established a cash reserve in an amount sufficient to pay the disputed cure amounts in full. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall–, at the election of the Successful Bidder, and subject to the Debtors' rights set forth in

paragraph 26 of this Order, be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale Transaction.

28.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract.  The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

29.     In accordance with the Bidding Procedures, Qualified Bids shall be accompanied by Adequate Assurance Information (as defined in Section Section VI.A.9 of the Bidding Procedures).  The Debtors shall use commercially reasonable efforts to furnish all available, within 24 hours after the Bid Deadline, but, in no event later than 24 hours after the Debtors receive Adequate Assurance Information, serve by email or overnight mail such Adequate Assurance Information to applicable on all Counterparties as soon as reasonably practicable following their receipt of such informationto any Contract that may be assumed by the applicable Qualified Bidder.

30.     Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is a Successful Bidder's (or any other relevant assignee's) proposed form of adequate assurance of future performance with respect to the Contract (each, such objection, an "Adequate Assurance Objection"), shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) be filed with the Court; and (c) served on the Objection Notice Parties by no later than the later

of **(i) July 26, 2019, at 4:00 p.m. (prevailing Eastern Time) and (ii) three business days prior to the Sale Hearing.**

31.     The Debtors, the applicable Successful Bidder and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the applicable Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing.

32.     If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance.  The applicable Successful Bidder (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

33.     Successful Bidders (including any Stalking Horse Bidder or Backup Bidder ultimately named a Successful Bidder) may, pursuant to the terms of an applicable asset purchase agreement executed with the Debtors (including any applicable Stalking Horse Agreement), designate (a) for assumption and assignment to the applicable Successful Bidder (or other relevant assignee) Contracts that were not originally included among the Assets to be acquired in connection with the applicable Successful Bid or for which the Successful Bidder had not

determined to acquire or exclude as of the filing of the Notice of Auction Results  and (b) rejection of Contracts that previously were included among the Assets to be acquired in connection with the applicable Successful Bid or for which the Successful Bidder had not determined to acquire or exclude as of the filing of the Notice of Auction Results as "excluded assets" that will not be assigned to or otherwise acquired by the Successful Bidder.  The Debtors shall use commercially reasonable efforts to, as soon as reasonably practicable within two business days after the Debtors receive notice of any such designation, file with the Court, serve on the applicable Counterparties and cause to be published on the Omni Website, a Designation Notice containing sufficient information to apprise Counterparties of the designation of their respective Contracts.

34.     As soon as reasonably practicable after the closing of a Sale Transaction, the Debtors shall file with the Court, serve on the applicable Counterparties and cause to be published on the Omni Website, a notice containing the list of Contracts that the Debtors assumed and assigned pursuant to any asset purchase agreement with a Successful Bidder.

35.     The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination or admission by the Debtors, any Stalking Horse Bidder, any Successful Bidder or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned.  The Debtors reserve all of their rights, claims and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

**F.     Other Related Relief**

36.     All persons and entities that participate in the Auction or bidding for any Asset during the Sale Process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction,

-15-

or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

37.    Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

38.    The Debtors are authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

39.    This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2019
       Wilmington, Delaware          THE HONORABLE LAURIE SELBER SILVERSTEIN
                                     UNITED STATES BANKRUPTCY JUDGE

RLF1 21383862v.121455463v.1
RLF1 21455463v.2

**<u>Exhibit 1</u>**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FTD Companies, Inc., <u>et al.</u>,[1] | : | Case No. 19-11240 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

<u>**BIDDING PROCEDURES**</u>

The debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (collectively, the "<u>Chapter 11 Cases</u>") will use the procedures set forth herein (the "<u>Bidding Procedures</u>") in connection with a sale or disposition of substantially all of the Debtors' assets (the "<u>Assets</u>") in one or more sale transactions (each, a "<u>Sale Transaction</u>").

On June 6**,** 2019, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. —82] (the "<u>Motion</u>").  By the Motion, the Debtors sought, among other things, entry of an order approving Bidding Procedures for soliciting bids for, conducting an auction (the "<u>Auction</u>") of and consummating one or more Sale Transactions, as further described herein.

On _____, 2019, the Court entered an *Order (I) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (II) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner*

---

[1]     The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses):  FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce, Inc. (0019); and Provide Creations, Inc. (8964).  The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

*of Notice Thereof and (VI) Granting Related Relief* [Docket No. [●]] (the "<u>Bidding Procedures Order</u>").[2]

## I.    ASSETS FOR SALE

Set forth below are categories of specific Assets that comprise the Debtors' Assets and are subject to sale in accordance with the Bidding Procedures set forth herein:

### A.    The FTD Assets

- FTD.com, the business unit held by Debtor FTD.COM Inc.; and

- the florist business segment held by Debtor Florists' Transworld Delivery, Inc.

### The Provide Businesses

- the Restructured ProFlowers Business (as defined in the Motion) which is operated by Debtor Provide Commerce, Inc. ("<u>Provide Commerce</u>");

- the Gourmet Foods business (including Shari's Berries) ("<u>Gourmet Foods</u>"), which is operated by Provide Commerce; and

- the Personal Creations business (including Gifts.com) ("<u>Personal Creations</u>"), which is operated by Debtor Provide Creations, Inc.

A Prospective Bidder (as defined in Section IV below) may bid on all or any combination of the Assets, subject to the conditions set forth herein.

The ability to undertake and consummate any sale of the Assets shall be subject to competitive bidding as set forth herein and approval by the Court.  In addition to any Stalking Horse Bid (as defined in the Motion), and as set forth herein, the Debtors will consider bids for any or all of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders.  Any bid for an individual Asset, even if such bid is the highest or best bid for such individual Asset, is subject to higher or better bids (including any Credit Bid (as defined in Section VI.A.3.a below)) on packages of Assets that include the individual Asset.  Additionally, any bid on all of the Assets is subject to bids on individual Assets or packages of Assets (including Credit Bids) that are, in the aggregate, higher or better bids.

Any party interested in submitting a bid for any of the Debtors' FTD Assets should contact the Debtors' investment banker for the FTD Sale Process, Moelis & Company LLC, 300 North LaSalle, Suite 5300, Chicago, Illinois ~~6054   60654~~ 10022 (Attn: Ken Viellieu (Ken.Viellieu@moelis.com) and Steve Bloom (Steve.Bloom@moelis.com)).

Any party interested in submitting a bid for any of the Provide Businesses should contact the Debtors' investment banker for the Provide Sale Process, Piper Jaffray & Co., at  the following

---

[2] ~~All capitalized~~ Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms later in these Bidding Procedures or in the Motion and/or the Bidding Procedures Order, as applicable.

addresses: (i) 2321 Rosecrans Avenue, Suite 3200, El Segundo, California 90245 (Attn:  Teri Stratton (Teri.L.Stratton@pjc.com)) and (ii) 444 West Lake Street, 33rd Floor, Chicago, Illinois 60606 (Attn:  Jean Hosty (Jean.E.Hosty@pjc.com)).

## II.    STALKING HORSE PROCEDURES

### A.    ~~The Nexus Agreement and Active Potential~~ Stalking Horse ~~Bidders~~Agreements

On June ~~2~~19, 2019, the Debtors entered into an asset purchase agreement with Gateway Mercury Holdings, LLC~~, an affiliate of Nexus Capital Management LP~~ ("Gateway"), for the sale of the FTD Assets and the Restructured ProFlowers Business for an aggregate purchase price of approximately $95 million (the "~~Nexus Agreement"). The Debtors intend to seek by separate motion approval of (i) the Nexus Agreement as a Stalking Horse Bid for the FTD Assets and the Restructured ProFlowers Business (the "Nexus Stalking Horse Bid"); and (ii) the provision of certain bidding protections in accordance with the terms of the Nexus Agreement.~~Gateway Stalking Horse Agreement").  From an economic perspective (and taking into account the working capital adjustment contained in the Gateway Stalking Horse Agreement), the Debtors currently expect to realize approximately $86 million in gross proceeds upon a closing of the Gateway Sale (based on the Debtors' management team's forecast of working capital at closing).  On June 24, 2019, the Debtors filed with the Court the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Gateway Stalking Horse Agreement and (II) Granting Related Relief* [Docket No. [●]] (the "Gateway Stalking Horse Motion").

The Debtors are requesting that the hearing to consider the relief requested in the Gateway Stalking Horse Motion be scheduled to be held before the Court on July 2, 2019.  Subject to the Court's entry of an order granting the Gateway Stalking Horse Motion, (i) Gateway's bid for the FTD Assets and the Restructured ProFlowers Business, as reflected in the Gateway Stalking Horse Agreement is a "Stalking Horse Bid," as such term is used in these Bidding Procedures; (ii) the Gateway Stalking Horse Agreement is a "Stalking Horse Agreement," as such term is used in these Bidding Procedures; and (iii) Gateway is a "Stalking Horse Bidder," as such term is used in these Bidding Procedures.

On June 23, 2019, the Debtors entered into (i) an asset purchase agreement with Farids & Co. LLC ("Farids") for the sale of the Gourmet Foods business (including Shari's Berries) for an aggregate purchase price of approximately $6 million (the "Farids Stalking Horse Agreement") and (ii) an asset purchase agreement with PlanetArt LLC ("PlanetArt") for the sale of the Personal Creations business (including Gifts.com) for an aggregate purchase price of approximately $18.1 million (the "PlanetArt Stalking Horse Agreement").  On June 24, 2019, the Debtors filed with the Court (i) the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Farids Stalking Horse Agreement and (II) Granting Related Relief* (the "Farids Stalking Horse Motion") and (ii) the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the PlanetArt Stalking Horse Agreement and (II) Granting Related Relief* (the "PlanetArt Stalking Horse Motion").  The Debtors are requesting that the hearing to consider the relief requested in the Farids Stalking Horse Motion

and the PlanetArt Stalking Horse Motion also be scheduled to be held before the Court on July 2, 2019.

Subject to the Court's entry of an order granting each of the Farids Stalking Horse Motion and the PlanetArt Stalking Horse Motion, respectively, (i) each of (A) Farids' bid for Gourmet Foods, as reflected in the Farids Stalking Horse Agreement, and (B) PlanetArt's bid for Personal Creations, as reflected in the PlanetArt Stalking Horse Agreement, is a "Stalking Horse Bid," as such term is used in these Bidding Procedures; (ii) each of the Farids Stalking Horse Agreement and the PlanetArt Stalking Horse Agreement is a "Stalking Horse Agreement," as such term is used in these Bidding Procedures; and (iii) each of Farids and PlanetArt is a "Stalking Horse Bidder," as such term is used in these Bidding Procedures.

~~The Debtors also have entered into non-binding letters of intent for the acquisition of (i) Personal Creations by a strategic investor and (ii) Gourmet Foods by Farids & Co., LLC (together, the "Potential Provide Stalking Horse Bidders"). In the event the Debtors enter into a Stalking Horse Agreement with any of the Potential Provide Stalking Horse Bidders, the Debtors intend to seek, by separate motion, approval of such Stalking Horse Agreement and the provision of any bidding protections thereunder.~~

**B.      Designating Additional Stalking Horse Bidders**

In addition, the Debtors may, as they deem necessary or appropriate, and after consulting with the Consultation Parties (as defined in Section XI below), enter into one or more Stalking Horse Agreements with one or more other bidders that the Debtors designate to serve as a Stalking Horse Bidder. The Debtors also may determine to provide certain bidding protections to designated Stalking Horse Bidders, including a "break-up" fee and an expense reimbursement (together, a "Termination Payment"), in each case, in accordance with the terms of the applicable Stalking Horse Agreement.

A Stalking Horse Bid may also take the form of a Credit Bid, including a Credit Bid by any of (i) Bank of America, N.A. ("Bank of America" and, in its capacity as administrative agent under the DIP Facility, the "DIP Agent" and, in its capacity as administrative agent under the prepetition Credit Facility, the "Prepetition Agent"); (ii) the lenders under the DIP Facility (the "DIP Lenders"); and (iii) the lenders under the prepetition Credit Facility (together with the DIP Lenders and Bank of America, in its capacity as the DIP Agent and the Prepetition Agent, the "Secured Parties").

     i.      Stalking Horse Notice. Within two ~~business~~ days after executing a Stalking Horse Agreement, the Debtors will file with the Court, serve on the Sale Notice Parties (as defined in Section X.B below) and cause to be published on the website maintained by Omni Management Group, Inc., the Debtors' claims and noticing agent in these Chapter 11 Cases, located at www.omnimgt.com/FTD (the "Omni Website"), a notice setting forth the material terms of the proposed Stalking Horse Agreement, including the terms and conditions of any Termination Payment to be provided thereunder (each such notice, a "Stalking Horse Notice").

     ii.      Stalking Horse Hearing. The Debtors will request that the Court schedule a hearing (each, a "Stalking Horse Hearing"), in each case, to be held within five business

days after service of the applicable Stalking Horse Notice, to consider approval of the applicable Stalking Horse Agreement and the provision of bidding protections thereunder.

iii. <u>Deadline to Designate Stalking Horse Bidders</u>.  Any Stalking Horse Bidder designated by the Debtors in accordance with these Bidding Procedures will be so designated by no later than the later of (A) July 8, 2019 and (B) seven calendar days prior to the Bid Deadline (as defined in Section V below); provided, that, the Debtors may, in their reasonable business judgment, after consulting with the Consultation Parties, extend the deadline to designate a Stalking Horse Bidder; provided, further, that, the Debtors will not extend such deadline to a date that is later than three days prior to the Bid Deadline.

iv. <u>Bidding Protection Objections</u>.  Any objection to the provision of a Termination Payment offered to a Stalking Horse Bidder in accordance with this Section II.B (each such objection, a "<u>Bidding Protection Objection</u>") must (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) be filed with the Court and served on the applicable Objection Notice Parties (as defined in Section X.D below) within three ~~calendar~~ business days after service of the applicable Stalking Horse Notice.

If the parties are unable to consensually resolve a Bidding Protection Objection, such Bidding Protection Objection will be heard and resolved by the Court at the applicable Stalking Horse Hearing.  The applicable Termination Payment will not be deemed approved until the Bidding Protection Objection is resolved, either consensually, by agreement of the objecting party and the Debtors (after consulting with the Consultation Parties) or by order of the Court resolving the Bidding Protection Objection and approving the provision of the Termination Payment.

v. <u>Failure to File a Timely Bidding Protection Objection</u>.  If no timely Bidding Protection Objection is filed and served in accordance with these Bidding Procedures, the Debtors may seek permission from the Court to file, upon certification of counsel and the consent of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") and the Consultation Parties, a proposed order authorizing and approving the Debtors' entry into the applicable Stalking Horse Agreement and the provision of a Termination Payment thereunder in lieu of holding a Stalking Horse Hearing.  Whether to proceed with or cancel a Stalking Horse Hearing for an uncontested Stalking Horse Agreement shall be in the sole and absolute discretion of the Court.

## III.    KEY DATES AND DEADLINES[3]

| | |
|---|---|
| **June 25, 2019, at 10:00 a.m. (prevailing Eastern Time)** | Bidding Procedures Hearing |
| **The later of (i) June 27, 2019 and (ii) two ~~business~~ days after the entry of the Bidding Procedures Order** | Deadline for Debtors to file and serve Sale Notice |
| **The later of (i) July 1, 2019 and (ii) three business days after the entry of the Bidding Procedures Order** | Deadline for Debtors to file and serve Assumption and Assignment Notice |
| **The later of (i) July 8, 2019 and (ii) seven days prior to the Bid Deadline** | Deadline to designate Stalking Horse Bidder(s) |
| **July 15, 2019, at 4:00 p.m. (prevailing Eastern Time)** | Bid Deadline |
| **July 16, 2019, at 4:00 p.m. (prevailing Eastern Time)** | Sale Objection Deadline and Cure Objection Deadline |
| **July 22, 2019, at 10:00 a.m. (prevailing Central Time), at Jones Day's Chicago offices** | Auction |
| **~~The later of (i) July 24, 2019 and (ii) one business~~ One day after the conclusion of the Auction** | Deadline for Debtors to file Notice of Auction Results |
| **The later of (i) July 26, 2019 and (ii) ~~seven~~ three business days ~~after~~ prior to the Sale Hearing** | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |
| **July 31, 2019, at 11:00 a.m. (prevailing Eastern Time)** | Sale Hearing |
| **The later of (i) August 7, 2019 and (ii) seven days after the conclusion of the Sale Hearing** | Deadline to consummate approved Sale Transactions |

## IV.    DUE DILIGENCE

Each person or entity that desires to participate in the Auction process (each, a "Prospective Bidder") must first deliver to each of the Bid Notice Parties (as defined in Section X.A below) the following:

---

[3]     Capitalized terms used but not defined in this chart shall have the respective meanings ascribed to such terms later in these Bidding Procedures or the Motion or the Bidding Procedures Order, as applicable.

-6-

- an executed confidentiality agreement, in form and substance satisfactory to the Debtors;

- a statement and other factual support demonstrating to the Debtors, in the exercise of their reasonable business judgment, that the Prospective Bidder has a bona fide interest in purchasing some or all of the Assets; and

- preliminary proof by the Prospective Bidder of its financial capacity to close a proposed Sale Transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Prospective Bidder (or, if the Prospective Bidder is an entity formed for the purpose of acquiring the Assets to be sold, the party that will bear liability for a breach by the Prospective Bidder of an asset purchase agreement or other agreement entered into in respect of an applicable Sale Transaction), the adequacy of which the Debtors and their advisors will determine.

Any Stalking Horse Bidder is deemed to be a Prospective Bidder and a Qualified Bidder.

Upon execution of a valid confidentiality agreement and subject to the other limitations and guidelines set forth herein, the Debtors may grant a Prospective Bidder that the Debtors identify as reasonably likely to become a Qualified Bidder (as defined in Section VI.C below) with access to information allowing such Prospective Bidder to conduct due diligence on with respect to the potential acquisition of some or all of the Assets. The Debtors will post in the Debtors' electronic data room substantially all written due diligence provided to any Prospective Bidder and will make any due diligence that has been made available to any other Prospective Bidder available to all Stalking Horse Bidders. If any Prospective Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Prospective Bidder any trade secrets or proprietary information (as determined by the Debtors in their sole discretion), unless the confidentiality agreement executed by such Prospective Bidder is satisfactory to the Debtors and contains provisions sufficient to ensure that such Prospective Bidder will not use such trade secrets or proprietary information for an improper purpose or to gain an unfair competitive advantage.

If the Debtors determine that a Prospective Bidder is unlikely to qualify as a Qualified Bidder or fails to become a Qualified Bidder, then such Prospective Bidder shall have no further right to access due diligence or any other non-public information. The Prospective Bidder shall return or destroy any non-public information the Debtors or their advisors provided to the Prospective Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Prospective Bidder.

The Debtors will work to accommodate all reasonable requests from Prospective Bidders for additional information and due diligence access. All due diligence requests shall be directed to (a) the Debtors, c/o FTD Companies, Inc., 3113 Woodcreek Drive, Downers Grove, Illinois 60515 (Attn: Jennifer Baumann, Esq. (jbaumann@ftdi.com)); (b) the Debtors' investment banker for the FTD Sale Process, Moelis & Company LLC, 300 North LaSalle, Suite 5300, Chicago, Illinois 6054 60654 (Attn: Ken Viellieu (Ken.Viellieu@moelis.com) and Steve Bloom (Steve.Bloom@moelis.com)); and (c) the Debtors' investment banker for the Provide Sale Process, (i) Piper Jaffray & Co., 2321 Rosecrans Avenue, Suite 3200, El Segundo, California 90245 (Attn:

Teri Stratton (Teri.L.Stratton@pjc.com)) and (ii) Piper Jaffray & Co., 444 West Lake Street, 33rd Floor, Chicago, Illinois 60606 (Attn: Jean Hosty (Jean.E.Hosty@pjc.com)).

## V.    BID DEADLINE

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties a Qualified Bid (as defined in Section VI.C below) on or before **July 15, 2019, at 4:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").  The Debtors shall promptly provide a copy of each Qualified Bid to each of the Consultation Parties, but in no event later than the next calendar day after the Debtors' receipt of such Qualified Bid.

The Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties and any applicable Stalking Horse Bidder, extend the Bid Deadline for all or certain Prospective Bidders.

## VI.    BID REQUIREMENTS

### A.    Qualified Bid Requirements

To qualify as a "Qualified Bid," a bid must be in writing and determined by the Debtors to satisfy the following requirements:

1.    Identification of Bidder.  A Qualified Bid must fully disclose the following: (a) the legal identity of each person or entity bidding for the applicable Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such bid) or participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such bid) the Auction in connection with such bid and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtors or their non-debtor affiliates, any Stalking Horse Bidder(s), any other known Prospective Bidder or Qualified Bidder, any Secured Party or any officer or director of any of the foregoing (including any current or former officer or director of the Debtors or their non-debtor affiliates).

2.    Purchased Assets.  A Qualified Bid must identify the following:

a)    the Assets to be purchased, including any then known executory contracts and unexpired leases (collectively, the "Contracts") that are proposed, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtors in connection with the proposed Sale Transaction; provided, that, any Successful Bidder (as defined in Section VII.C.1 below) will have an opportunity to make a final determination regarding any such Contracts prior to closing an applicable Sale Transaction;

b)    if applicable, any Assets included in the bid that the Prospective Bidder intends to operate as a going concern;

-8-

c)    the liabilities, if any, to be assumed, including any debt to be assumed;

d)    the valuation that the Prospective Bidder associates with each applicable Asset, including a description of any significant assumptions upon which each such valuation is based; and

e)    if a bid is for more than one Asset, an allocation of the purchase price across the individual Assets.

3.    Form of Consideration.

a)    Credit Bidding.  A Prospective Bidder holding a perfected security interest in any of the Assets may seek to credit bid all or a portion of the Prospective Bidder's claims for its respective collateral (each such bid, a "Credit Bid") in accordance with section 363(k) of title 11 of the United States Code (the "Bankruptcy Code"); provided, that, such Credit Bid complies with (i) a Credit Bid may only be applied to reduce the cash consideration for the Assets in which the credit bidding party holds a perfected security interest; (ii) a Credit Bid must comply with, and shall be subject to, the terms of the DIP Orders,[4] including, for the avoidance of doubt, (A) any challenge provisions contained therein and (B) the requirement in the Interim DIP Order that any Credit Bid of the Prepetition Lenders that does not also contain a Credit Bid of the DIP Obligations (as defined in the Interim DIP Order) must contain a cash component satisfactory to satisfy in full the DIP Obligations.

b)    All-Cash Offer.  Unless a bid includes a Credit Bid, the bid must include (i) a statement confirming that the bid is based on an all-cash offer and (ii) sufficient cash consideration to pay any applicable Termination Payment to a Stalking Horse Bidder for the Assets pursuant to the terms of an applicable Stalking Horse Agreement; provided, that, any bid that includes a Credit Bid also shall include a cash component sufficient to pay, and earmarked exclusively for the payment of, any applicable Termination Payment.

---

[4]    On June 5, 2019, the Court entered the *Interim Order Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling Final Hearing, and (IV) Granting Related Relief,* entered by the Court on [Docket No. 60] (the "Interim DIP Order" and, together with any order approving the DIP Facility on a final basis, the "DIP Orders").

4.    <u>Minimum Bid for Stalking Horse Assets</u>.  Each bid submitted in connection with Assets that are the subject of a particular Stalking Horse Bid (any such Assets, the "<u>Stalking Horse Assets</u>") must either (a) (i) be a bid for all of the Stalking Horse Assets in the Stalking Horse Bid and (ii) exceed the cash purchase price in the Stalking Horse Bid (taking into account any working capital adjustment under the applicable Stalking Horse Agreement), plus any applicable Termination Payment and the applicable Minimum Overbid (as defined in Section VII.B.3 below); or (b) propose an alternative transaction that, in the Debtors' reasonable business judgment, provides better terms than the Stalking Horse Bid, taking into account, among other things, any applicable Termination Payment.

The Debtors , in consultation with the Consultation Parties, may consider a bid for a portion of any applicable Stalking Horse Assets (each such bid, a "<u>Partial Bid</u>") if (a) the Debtors receive another Partial Bid for the remaining applicable Stalking Horse Assets such that, when taken together, the Partial Bids constitute a higher or better bid than the Stalking Horse Bid plus any applicable Termination Payment; or (b) the Partial Bid proposes a purchase price for the applicable Stalking Horse Assets that, when taken together with the liquidation value of the remaining applicable Stalking Horse Assets, exceeds the purchase price in the Stalking Horse Bid (taking into account any working capital adjustment under the applicable Stalking Horse Agreement) plus any applicable Termination Payment.

If the value of a bid (whether such bid is for all of the applicable Stalking Horse Assets or is a Partial Bid) relative to the Stalking Horse Bid includes additional non-cash components (such as fewer contingencies than are in the Stalking Horse Agreement), the bidder should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtors in better evaluating the competing bid; provided, that, any such Termination Payment payable to a Stalking Horse Bidder shall be paid upon the closing of any portion of a Partial Bid.

5.    <u>Proposed Asset Purchase Agreement</u>:  A Qualified Bid must constitute an irrevocable offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the bid (each, a "<u>Proposed Asset Purchase Agreement</u>").  A Proposed Asset Purchase Agreement shall (a) be duly authorized and executed; (b) be based on, and marked against, the form asset purchase agreement provided by the Debtors to Prospective Bidders to reflect the proposed Sale Transaction and to show any other proposed modifications to the form purchase agreement; (c) specify the proposed purchase price for the applicable Assets in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtors); and (e) identify any then-known Contracts proposed for or that may be proposed for assumption and assignment Contracts that, as of the submission of such

-10-

bid, the Prospective Bidder proposes to be assumed and assigned by the Debtors in connection with the proposed Sale Transaction.

A Qualified Bid for Stalking Horse Assets must also include a marked copy of the applicable Stalking Horse Agreement showing the differences between the Stalking Horse Agreement and the Prospective Bidder's Proposed Asset Purchase Agreement.

6.    Proposed Sale Order.  A Qualified Bid must include a proposed sale order (each, a "Proposed Sale Order") that is based on and marked against the form Sale Order attached to the Motion as Exhibit B to reflect the proposed Sale Transaction and to show any other proposed modifications to the form Sale Order.

A Qualified Bid for Stalking Horse Assets must also include a marked copy of any Sale Order included or prepared in connection with any applicable Stalking Horse Bid (each, a "Stalking Horse Sale Order") showing the differences between the Stalking Horse Sale Order and the Prospective Bidder's Proposed Sale Order.

7.    Financial Information.  A Qualified Bid must include the following:

a)    a statement that the Prospective Bidder is financially capable of consummating the Sale Transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement and Proposed Sale Order;

b)    sufficient evidence, as reasonably determined by the Debtors (in consultation with the Consultation Parties), to determine that the Prospective Bidder has, or can will obtain, the financial wherewithal to consummate the Sale Transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement and Proposed Sale Order; and

c)    Adequate Assurance Information (as defined in Section VI.A.9 below) with respect to any Contracts included or that may be included in the Prospective Bidder's bid, including the identity of any known proposed assignee of the applicable Contracts (if different from the Prospective Bidder), including contact information for such proposed assignee.

8.    Good Faith Deposit.  Each Qualified Bid must be accompanied by a good faith deposit (each, a "Good Faith Deposit") in the form of cash (or other form acceptable to the Debtors in their sole discretion) in an amount equal to 10% of the proposed purchase price for the applicable Assets (inclusive of any amount thereof comprising any applicable Credit Bid consideration).

Good Faith Deposits shall be deposited with an escrow agent selected by the Debtors (the "Escrow Agent") and held in escrow until no later than 10 business days after the conclusion of the Auction (except for the Good Faith Deposit of any bidder who is selected at the Auction as a Successful Bidder or as a Backup Bidder (as defined in Section VI.A.12.a below)) and thereafter returned to the respective Qualified Bidders in accordance with Section VII.D of these Bidding Procedures; provided, that, the return of any Good Faith Deposit of a Stalking Horse Bidder may be governed by the applicable Stalking Horse Agreement.

9.      Adequate Assurance.  A Qualified Bid must include evidence of the Prospective Bidder's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Prospective Bidder's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its bid. The Debtors may require the following information in connection with demonstrating adequate assurance of future performance: (a) information evidencing the Prospective Bidder's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the bid, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns and (iv) annual reports; and (b) the Prospective Bidder's (or any other relevant assignee's) proposed use of any leased premises included in the bid (the information described in clauses (a) and (b) of this Section VI.A.9, the "Adequate Assurance Information").

All Adequate Assurance Information must be in a form that will permit its immediate dissemination to the applicable Counterparties.

10.     Representations and Warranties.  A Qualified Bid must include the following representations and warranties:

a)      a statement that the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and the applicable Assets prior to submitting its bid; and

b)      a statement that the Prospective Bidder has relied solely upon its own independent review, investigation and/or inspection of any relevant documents and the Assets in making its bid and did not rely on any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, by operation of law or otherwise, regarding the Debtors' businesses or the applicable Assets or the completeness of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in a Stalking Horse

Agreement or any asset purchase agreement ultimately accepted and executed by the Debtors.

11.   <u>Authorization</u>.  A Qualified Bid must (a) include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution and delivery of any bid for the Assets, participation in the Auction and closing of the Sale Transactions contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement and Proposed Sale Order; or, (b) if the Prospective Bidder is an entity formed for the purpose of effecting the proposed Sale Transaction, a Qualified Bid must provide written evidence acceptable to the Debtors of authorization and the approval by the equity holder(s) of such Prospective Bidder.

12.   <u>Other Requirements</u>.  A Qualified Bid must:

a)   ~~except as otherwise may be provided in a Stalking Horse Agreement,~~ state that the Prospective Bidder agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if such bidder's Qualified Bid is selected at the Auction as the next highest or next best bid after the Successful Bid (as defined in Section VII.C.1 below) for the applicable Assets (each such bid, a "<u>Backup Bid</u>");

b)   state that the bid represents a binding, good-faith and <u>bona fide</u> offer to purchase the applicable Assets and is not subject to or conditioned on any further due diligence, and is irrevocable (i) until the selection of the Successful Bid in accordance with these Bidding Procedures; or, (ii) if the bid is selected as a Successful Bid or as a Backup Bid, until the Backup Bid Expiration Date (as defined in Section VII.C.1 below).

c)   except as otherwise may be provided in a Stalking Horse Agreement, expressly state and acknowledge that the Prospective Bidder shall not be entitled to a break-up fee, termination fee, expense reimbursement or other "bidding protection" in connection with the submission of a bid for the Assets or otherwise participating in the Auction or the Sale Process, unless otherwise granted by the Debtors and approved by an order of the Court;

d)   state that the Prospective Bidder is committed to closing the Sale Transactions contemplated in its bid as soon as practicable;

e)   expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the Sale Process;

-13-

f)       not contain any financing contingencies of any kind;

g)       include a covenant to cooperate with the Debtors to provide pertinent factual information regarding the Prospective Bidder's operations reasonably required to analyze issues arising with respect to any applicable antitrust laws and any other applicable regulatory requirements;

h)       state whether the Prospective Bidder intends to offer future employment to any of the Debtors' employees;

i)       state or otherwise estimate the types of, and costs or charges for, transition services, if any, the Prospective Bidder would require of and/or provide to the Debtors, including an estimate of the time any such transition services would be required of and/or provided to the Debtors, if the Prospective Bidder's bid were selected as the Successful Bid for the applicable Assets;

j)       certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture or other entity in which more than one bidder (or any affiliates of a bidder) has a direct or indirect interest, unless consented to in writing by the Debtors;

k)       include a covenant to comply with the terms of these Bidding Procedures and the Bidding Procedures Order; and

l)       include contact information for the specific person(s) the Debtors should contact in the event they have any questions about the Prospective Bidder's bid.

**B.      Bid Review Process**

The Debtors will evaluate timely bids in consultation with the Consultation Parties. Based upon their evaluation of the content of each bid, the Debtors may, as they deem appropriate in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, engage in negotiations with any Prospective Bidder for the purposes of (i) curing any deficiencies in a bid that prevents it from constituting a Qualified Bid, (ii) improving the terms of the Prospective Bidder's bid or (iii) otherwise promoting a more competitive bidding and Auction process with the ultimate goal of maximizing the value of the Assets.

In evaluating a bid, the Debtors may take into consideration any and all factors that the Debtors deem reasonably pertinent, including (i) the amount of the proposed purchase price and proposed form of consideration; (ii) any Assets included in, or excluded from, the bid, including any Contracts marked for assumption and assignment; (iii) the value to be provided to the Debtors under the bid, including the net economic effect on the Debtors' estates (taking into account any Stalking Horse Bidder's rights with respect to any Termination Payment); (iv) any benefit to the Debtors' estates from any assumption or waiver of liabilities contemplated by the bid; (v) the

-14-

structure of the proposed Sale Transaction and any attendant execution risk, including conditions to, timing of and certainty of closing; termination provisions; financing contingencies, availability of financing and general financial wherewithal to meet all commitments; and any required governmental approvals; and (vi) the impact of the proposed Sale Transaction on the Debtors' employees, trade creditors, landlords and any other parties in interest.

The Debtors, in consultation with the Consultation Parties, will make a determination regarding the bids that qualify as Qualified Bids and as Baseline Bids (as defined in Section VII.B.2 below) and will notify bidders whether they have been selected as Qualified Bidders as soon as commercially reasonable following the Bid Deadline. A Qualified Bidder shall not (without the consent of the Debtors), modify, amend or withdraw its Qualified Bid, unless for the purposes of increasing the purchase price or otherwise improving the terms of the bid, as determined by the Debtors in their reasonable business judgment.

### C.    Qualified Bidders

A bid received for all or any portion of the Assets that the Debtors (in consultation with the Consultation Parties) determine satisfies the requirements set forth in Section V and VI above (including and any Stalking Horse Bid) will qualify as a "Qualified Bid," and any bidder that submits a Qualified Bid (including any Stalking Horse Bidder) will qualify as a "Qualified Bidder."

In the case of a Credit Bid for Assets securing their respective debt, and subject to the applicable provisions of the DIP Orders, each of the Secured Parties is a Qualified Bidder, and each such Credit Bid is a Qualified Bid, to the extent such bid (i) is received by the Bid Notice Parties by the Bid Deadline; (ii) complies with the applicable requirements set forth under Section V and Section VI above; and (iii) complies with section 363(k) of the Bankruptcy Code.

The Debtors may, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, amend or waive the conditions precedent to qualifying as a Qualified Bidder.

### D.    Bidding Protections

Other than any Termination Payment provided to a Stalking Horse Bidder pursuant to the terms of a Court-approved Stalking Horse Agreement, no bidder or any other party shall be entitled to any termination or "break-up" fee, expense reimbursement or any other bidding protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or the Sale Process, unless otherwise granted by the Debtors and approved by an order of the Court.

### VII.    THE AUCTION

If the Debtors receive more than one Qualified Bid for an Asset, the Debtors will conduct an Auction for such Asset. With respect to Assets for which the Debtors receive only one Qualified Bid by the Bid Deadline, the Debtors may, in their reasonable business judgment, and in consultation with the Consultation Parties, determine to consummate a Sale Transaction with the applicable Qualified Bidder or include such Assets in the Auction; provided, that, if a Stalking Horse Bid is the only Qualified Bid received in respect of Stalking Horse Assets, the Debtors will not conduct an Auction for such Stalking Horse Assets and will seek approval of any such Stalking

Horse Bid at an applicable Sale Hearing.  In the event the Debtors determine not to hold an Auction for some or all of the Assets, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the Omni Website, a notice containing the following information, as applicable: (i) a statement that the Auction for the relevant Assets has been canceled; (ii) the identity of the Successful Bidder; (iii) a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby; and (iv) the date, time and location of the applicable Sale Hearing.

The Auction, if required, will be conducted on **July 22, 2019, at 10:00 a.m. (prevailing Central Time)**, at the offices of Jones Day, 77 West Wacker, Chicago, Illinois 60601, or at such other time and location as designated by the Debtors, after consulting with the Consultation Parties and providing notice to the Sale Notice Parties.

If held, the Auction proceedings will be transcribed and/or video recorded.

## A.     Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction must appear in person at the Auction or through a duly authorized representative.  Subject to the Auction procedures set forth in Section VII of these Bidding Procedures, all Qualified Bidders and the Consultation Parties are permitted to attend the Auction; provided, that, the Debtors may, in their sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction.  Notwithstanding the foregoing, the Auction will be conducted openly, and all creditors will be permitted to attend.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets and (ii) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction is a binding, good-faith and bona fide offer to purchase the Assets identified in such bids.

All Prospective Bidders and Qualified Bidders (including any Stalking Horse Bidder, Successful Bidder and Backup Bidder) shall be deemed to have (i) consented to the core jurisdiction of the Court to enter any order related to these Bidding Procedures, the Auction, any other relief requested in the Motion or granted pursuant to the Bidding Procedures Order or the construction or enforcement of any agreement or any other document relating to any Sale Transaction; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction or the construction or enforcement of any agreement or any other document relating to any Sale Transaction; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to these Bidding Procedures, the Auction or the construction or enforcement of any agreement or any other document relating to any Sale Transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

B.      **Auction Procedures**

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment (and in consultation with the Consultation Parties):

1.      <u>Auction Packages</u>.  Prior to the commencement of the Auction, the Debtors (in consultation with the Consultation Parties) will make a determination regarding the Assets and/or combinations of Assets for which the Debtors will conduct an Auction (each such Asset or group of Assets, an "<u>Auction Package</u>")<u>; provided, that, the Stalking Horse Assets included in a particular Stalking Horse Bid shall constitute an Auction Package</u>.  For the avoidance of doubt, the Debtors may, in their reasonable business judgment (and in consultation with the Consultation Parties) determine to include an individual Asset in more than one Auction Package.

2.      <u>Baseline Bids</u>.  Prior to the commencement of the Auction, the Debtors will determine, in their reasonable business judgment (and in consultation with the Consultation Parties), the highest and/or best Qualified Bid submitted for each Auction Package (each such Qualified Bid, a "<u>Baseline Bid</u>").  Bidding for each Auction Package at the Auction shall commence at the amount of the applicable Baseline Bid.  <u>As soon as practicable, but in no event later than two days prior to the Auction, the Debtors will notify the applicable Stalking Horse Bidder as to which Qualified Bid has been selected as the Baseline Bid for the applicable Auction Package and provide to the Stalking Horse Bidder copies of such Baseline Bid.</u>

3.      <u>Minimum Overbid</u>.  At each round of bidding for an Auction Package, Qualified Bidders may submit successive bids higher than the Leading Bid from the prior round, which initially will be based on and increased from the applicable Baseline Bid.  After consulting with the Consultation Parties, the Debtors will announce at the outset of the Auction the minimum required increments for successive Qualified Bids (each, such bid, a "<u>Minimum Overbid</u>"); <u>provided</u>, <u>that</u>, to the extent that the Baseline Bid is a Stalking Horse Bid, the bidding for the applicable Stalking Horse Assets shall commence at an amount equal to the sum of (a) the purchase price in the Stalking Horse Bid, (b) the amount of any applicable Termination Payment and (c) the amount of the applicable Minimum Overbid (each such bid, a "<u>Stalking Horse Overbid</u>").  The Debtors may, in their reasonable discretion (and in consultation with the Consultation Parties), announce increases or reductions to Minimum Overbids or Stalking Horse Overbids at any time during the Auction.

Upon a Qualified Bidder's declaration of a bid at the Auction, the Qualified Bidder must state on the record its commitment to pay following the Auction, if such bid were to be selected as the Successful Bid or as the Backup Bid for the applicable Auction Package, the incremental amount of

-17-

the Qualified Bidder's Good Faith Deposit calculated based on the increased purchase price of such bid (such Good Faith Deposit so increased, the "Incremental Deposit Amount").

Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any bid subsequent to a Baseline Bid, the Debtors will, at each round of bidding, consider and/or give effect to (a) any Termination Payment payable to any Stalking Horse Bidder under an applicable Stalking Horse Agreement; (b) any additional liabilities to be assumed by a Qualified Bidder under the bid, including whether such liabilities are secured or unsecured; and (c) any additional costs that may be imposed on the Debtors.

4.     Leading Bid.  After the first round of bidding and between each subsequent round of bidding, the Debtors will announce, in consultation with the Consultation Parties, the bid that they believe to be the highest or otherwise best offer for the applicable Auction Package (each such bid, a "Leading Bid") and describe the material terms thereof.  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the material terms of the Leading Bid.

The Auction may include open bidding in the presence of all other Qualified Bidders.  Each Qualified Bidder shall have the right to be present for all rounds of bidding and to submit additional bids and make modifications to its Proposed Asset Purchase Agreement at the Auction to improve its bid.  The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction.

The Debtors shall have the right to determine, in their reasonable business judgment (and in consultation with the Consultation Parties), which bid is the highest or otherwise best bid with respect to the applicable Auction Package and reject, at any time, without liability, any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, these Bidding Procedures, any order of the Court or the best interests of the Debtors and their estates.

## C.     **Auction Results**

1.     Successful Bids.  Immediately prior to the conclusion of the Auction for an Auction Package, the Debtors, in consultation with the Consultation Parties, will  (a) determine,  consistent  with  these  Bidding  Procedures,  which Qualified Bid constitutes the highest or otherwise best bid(s) for the Auction Package (each such bid, a "Successful Bid") and (b) notify all Qualified

-18-

Bidders at the Auction of the identity of the bidder that submitted the Successful Bid for the Auction Package (each such bidder, a "Successful Bidder") and the amount of the purchase price and other material terms of the Successful Bid.  As a condition to remaining the Successful Bidder, the Successful Bidder shall, within two business days after the conclusion of the Auction, wire to the Debtors in immediately available funds the Incremental Deposit Amount, calculated based on the purchase price in the Successful Bid.

2.  Backup Bids.  Immediately prior to the conclusion of the Auction for an Auction Package, the Debtors (in consultation with the Consultation Parties) will (a) determine, in a manner consistent with these Bidding Procedures, which Qualified Bid is the Backup Bid for the Auction Package; and (b) notify all Qualified Bidders at the Auction for the Auction Package of the identity of the Backup Bidder for the Auction Package and the amount of the purchase price and other material terms of the Backup Bid.

A Except as otherwise provided in an applicable Stalking Horse Agreement, a Backup Bid will remain binding on the applicable Backup Bidder until the earlier of (a) the first business day after the closing of a Sale Transaction with the Successful Bidder for the applicable Auction Package and (b) 60 days after the Sale Hearing (such date, the "Backup Bid Expiration Date"). If the Sale Transaction with the applicable Successful Bidder is terminated prior to the Backup Bid Expiration Date, the Backup Bidder shall be deemed the new Successful Bidder for the applicable Auction Package and shall be obligated to consummate the Backup Bid as if it were the Successful Bid at the Auction; provided, that, the Debtors may, in their reasonable business judgment (after consulting with the Consultation Parties and providing notice to the Sale Notice Parties), elect not to pursue the Sale Transaction contemplated by the Backup Bid.

3.  Notice of Auction Results.  By the later of (a) July 24, 2019 and (b) one business Within one day after the conclusion of the Auction, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the Omni Website, a notice setting forth the results of the Auction (the "Notice of Auction Results"), which will (a) identify each Successful Bidder and each Backup Bidder; (b) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any proposed assumption and assignment of Contracts contemplated thereby; and (c) set forth the Supplemental Sale Objection Deadline (as defined in Section X.D below), the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

D.    **Disposition of Good Faith Deposit**

1.    <u>Prospective Bidders</u>.  Within five business days after the Debtors make final determinations as to which Prospective Bidders qualify as Qualified Bidders, the Escrow Agent shall return to each Prospective Bidder that did not qualify as a Qualified Bidder, as confirmed by the Debtors, such Prospective Bidder's Good Faith Deposit.  Upon the authorized return of a Prospective Bidder's Good Faith Deposit in accordance with this Section VII.D, the bid of such Prospective Bidder shall be deemed terminated and no longer binding against the Prospective Bidder.

2.    <u>Qualified Bidders</u>.

a)    <u>Forfeiture of Good Faith Deposit</u>.  The Good Faith Deposit of a Qualified Bidder shall be forfeited if the Qualified Bidder attempts to withdraw its Qualified Bid, except as may be permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures.  The Debtors and their estates shall be entitled to retain the Qualified Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of the Qualified Bidder's failure to adhere to the terms of these Bidding Procedures and/or the relevant Qualified Bid.  In the event that a Qualified Bidder's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors within two business days after the Escrow Agent receives written notice by an authorized officer of the Debtors stating that the applicable Qualified Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Qualified Bid.

b)    <u>Return of Good Faith Deposit</u>.  With the exception of the Good Faith Deposits of Successful Bidders and Backup Bidders, the Escrow Agent shall return to any other Qualified Bidder the Qualified Bidder's Good Faith Deposit, within 10 business days after the conclusion of the Auction for the applicable Auction Package.

c)    <u>Backup Bidder</u>.  The Escrow Agent shall return a Backup Bidder's Good Faith Deposit, within 10 business days after the occurrence of the applicable Backup Bid Expiration Date.

d)    <u>Successful Bidder</u>.  At the closing of a Sale Transaction, the Successful Bidder shall be entitled to a credit against the purchase price for the applicable Assets in the amount of the Successful Bidder's Good Faith Deposit.  The Good Faith Deposit of a Successful Bidder shall be forfeited if the Successful Bidder fails to

-20-

consummate the applicable Sale Transaction because of a breach that entitles the Debtors to terminate the applicable asset purchase agreement with such Successful Bidder, and the Debtors and their estates shall be entitled to retain the Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach. In the event that a Successful Bidder's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors within two business days after the Escrow Agent receives written notice by an authorized officer of the Debtors stating that the applicable Successful Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Successful Bid.

e)   Stalking Horse Bidder.  The terms of the applicable Stalking Horse Agreement shall govern the disposition of any Good Faith Deposit of a Stalking Horse Bidder.

## VIII.   SALE HEARING

Each Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to Court approval.  The hearing to approve any Sale Transaction consummated in accordance with these Bidding Procedures (except in the case of a Sale Transaction contemplated by a Backup Bid that subsequently is deemed a Successful Bid) shall take place on **July 31, 2019, at 11:00 a.m. (prevailing Eastern Time**) (the "Sale Hearing") before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

At the Sale Hearing, the Debtors will seek entry of one or more orders (each, a "Sale Order") approving, among other things, one or more sales of the Assets to the Successful Bidder(s).

The Debtors may, in their reasonable business judgment (after consulting with the Consultation Parties and the Successful Bidder(s)), adjourn or reschedule the Sale Hearing with sufficient notice to the Sale Notice Parties, including by announcing such adjournment or rescheduling at the Auction or in Court on the date of the originally scheduled Sale Hearing; provided, that, nothing herein authorizes the Debtors to extend any date or deadline set forth in a Stalking Horse Agreement except as provided in an applicable Stalking Horse Agreement.

The Debtors' presentation to the Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.  Upon the Court's approval of a Successful Bid, the Debtors will be bound by the terms of that Successful Bid with no further opportunity for an auction of the applicable Assets.

## IX.    RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and after consulting with the Consultation Parties, modify these Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein; adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders, as applicable; if applicable, provide reasonable accommodations to a Stalking Horse Bidder; or otherwise modify these Bidding Procedures to further promote competitive bidding for and maximizing the of value of the Assets, in each case, to the extent not materially inconsistent with these Bidding Procedures, the Bidding Procedures Order or any applicable Stalking Horse Agreement.

## X.    NOTICING

### A.    Bid Notice Parties

Qualified Bids must be submitted in writing to the following parties (collectively, the "Bid Notice Parties"):

- the Debtors, c/o FTD Companies, Inc., 3113 Woodcreek Drive, Downers Grove, Illinois 60515 (Attn:  Jennifer Baumann, Esq. (jbaumann@ftdi.com));

- counsel for the Debtors, (i) Jones Day, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn: Heather Lennox, Esq. (hlennox@jonesday.com) and Tom A. Wilson, Esq. (tawilson@jonesday.com)); (ii) Jones Day, 77 West Wacker, Chicago, Illinois 60601 (Attn: Timothy W. Hoffmann, Esq. (thoffmann@jonesday.com) and Caitlin K. Cahow, Esq. (ccahow@jonesday.com)); (iii) Jones Day, 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309 (Attn: Danielle D. Donovan, Esq. (ddonovan@jonesday.com)); and (iv) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com) and Brett M. Haywood, Esq. (haywood@rlf.com));

- the Debtors' investment banker for the FTD Sale Process, Moelis & Company LLC, 300 North LaSalle, Suite 5300, Chicago, Illinois 6054 60654 (Attn: Ken Viellieu (Ken.Viellieu@moelis.com) and Steve Bloom (Steve.Bloom@moelis.com)); and

- the Debtors' investment banker for the Provide Sale Process, (i) Piper Jaffray & Co., 2321 Rosecrans Avenue, Suite 3200, El Segundo, California 90245 (Attn: Teri Stratton (Teri.L.Stratton@pjc.com)) and (ii) Piper Jaffray & Co., 444 West Lake Street, 33rd Floor, Chicago, Illinois 60606 (Attn: Jean Hosty (Jean.E.Hosty@pjc.com)).

### B.    Sale Notice Parties

The "Sale Notice Parties" shall include the following persons and entities:

- the Consultation Parties (as applicable);
- counsel to any Stalking Horse Bidder;
- all persons and entities known by the Debtors to have expressed an interest to the Debtors in a Sale Transaction involving any of the Assets during the past 12 months, including any person or entity that has submitted a bid for any of the Assets;
- all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtors);
- all relevant non-debtor parties (each, a "Counterparty") to any Contract that may be assumed or rejected in connection with a Sale Transaction;
- all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtors);
- any governmental authority known to have a claim against the Debtors in these Chapter 11 Cases;
- the office of the U.S. Trustee;
- all applicable federal, state and local taxing authorities, including the Internal Revenue Service;
- the United States Securities and Exchange Commission;
- the United States Attorney's Office for the District of Delaware;
- United States Attorney General's Office for the District of Delaware;
- the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate;
- the Antitrust Division of the United States Department of Justice;
- the Federal Trade Commission;
- counsel for ~~any~~ the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Creditors' Committee");
- all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and
- all other parties as directed by the Court.

## C.    Sale Notice and Publication Notice

By the later of (i) June 27, 2019 and (ii) two ~~business~~ days after entry of the Bidding Procedures Order, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the Omni Website a notice (the "Sale Notice") setting forth (A) a description of the Assets available for sale in accordance with these Bidding Procedures; (B) the date, time and location of the Auction and Sale Hearing; (C) the Sale Objection Deadline and Supplemental Sale Objection Deadline (each as defined in Section X.D below) and the procedures for filing such objections; and, if applicable, (D) a summary of the material terms of any Stalking Horse Agreement, including the terms and conditions of any Termination Payment to be provided thereunder, as of the date of the Sale Notice.

-23-

Within four business days after entry of the Bidding Procedures Order, the Debtors will cause the information contained in the Sale Notice to be published once in the national edition of *USA Today* and once in the *Chicago Tribune*.

### D.    Sale Objections and Supplemental Sale Objections

Objections to a sale of the Assets, including (i) any objection to a sale of the Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (ii) entry of any Sale Order (each such objection, a "Sale Objection") shall, by no later than **July 16, 2019, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline"), be filed with Court and served on the following parties (collectively, the "Objection Notice Parties"):

- the Debtors, c/o FTD Companies, Inc., 3113 Woodcreek Drive, Downers Grove, Illinois 60515 (Attn: Jennifer Baumann, Esq. (jbaumann@ftdi.com));

- counsel for the Debtors, (i) Jones Day, 901 Lakeside Avenue, Cleveland, Ohio 44114 (Attn: Heather Lennox, Esq. (hlennox@jonesday.com) and Tom A. Wilson, Esq. (tawilson@jonesday.com)); (ii) Jones Day, 77 West Wacker, Chicago, Illinois 60601 (Attn: Timothy W. Hoffmann, Esq. (thoffmann@jonesday.com) and Caitlin K. Cahow, Esq. (ccahow@jonesday.com)); (iii) Jones Day, 1420 Peachtree Street, N.E., Suite 800, Atlanta, Georgia 30309 (Attn: Danielle D. Donovan, Esq. (ddonovan@jonesday.com)); and (iv) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com) and Brett M. Haywood, Esq. (haywood@rlf.com));

- the Debtors' investment banker for the FTD Sale Process, Moelis & Company LLC, 300 North LaSalle, Suite 5300, Chicago, Illinois ~~6054~~ 60654-10022 (Attn: Ken Viellieu (Ken.Viellieu@moelis.com) and Steve Bloom (Steve.Bloom@moelis.com));

- the Debtors' investment banker for the Provide Sale Process, (i) Piper Jaffray & Co., 2321 Rosecrans Avenue, Suite 3200, Segundo, California 90245 (Attn: Teri Stratton (Teri.L.Stratton@pjc.com)) and (ii) 444 West Lake Street, 33rd Floor, Chicago, Illinois 60606 (Attn: Jean Hosty (Jean.E.Hosty@pjc.com));

- ~~counsel for any official committee appointed in these Chapter 11 Cases;~~

- counsel for the Creditors' Committee, (i) Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178 (Attn: Eric Wilson, Esq. (ewilson@kelleydrye.com) and Maeghan McLoughlin (mmcloughlin@kelleydrye.com)); and (ii) Benesch, Friedlander, Coplan & Aronoff LLP, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801 (Attn: Jennifer Hoover (jhoover@beneschlaw.com) and Kevin Capuzzi (kcapuzzi@beneschlaw.com));

- counsel for Bank of America, in its capacity as the DIP Agent and the Prepetition Agent, (i) Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, North Carolina 28202 (Attn: Jim Langdon, Esq.

(jmlangdon@mvalaw.com) and Cole Richins, Esq. (colerichins@mvalaw.com));  and (ii) Buchanan Ingersoll & Rooney PC, 919 N. Market Street, Suite 990, Wilmington, Delaware 19801 (Attn: Mary F. Caloway, Esq. (mary.caloway@bipc.com));

- if applicable, counsel for any relevant Stalking Horse Bidder(s) or relevant Successful Bidder(s); and

- if applicable, counsel for any relevant Backup Bidder(s).

Following service of the Notice of Auction Results, Sale Notice Parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid (each such objection, a "Supplemental Sale Objection") by no later than the later of (i) **July 26, 2019, at 4:00 p.m. (prevailing Eastern Time)** and (ii) three business days prior to the Sale Hearing (the "Supplemental Sale Objection Deadline").

### E.    Notices Regarding Assumption and Assignment of Contracts

The Debtors will provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

## XI.    CONSULTATION BY THE DEBTORS

Throughout the Sale Process, the Debtors and their advisors will consult with the following parties (collectively, the "Consultation Parties"), as provided in these Bidding Procedures, or as is otherwise necessary or appropriate, as determined in the Debtors' business judgment: (i) the legal and financial advisors for Bank of America, in its capacity as DIP Agent and Prepetition Agent, including (A) Moore & Van Allen PLLC and (B) FTI Consulting, Inc.; and (ii) the legal and financial advisors for any official committee appointed in these Chapter 11 Cases the Creditors' Committee, including (A) Kelley Drye & Warren LLP, (B) Benesch, Friedlander, Coplan & Aronoff LLP and (C) Province, Inc.

Notwithstanding the foregoing, the Debtors will not consult with or provide copies of any bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtors if such party is an active bidder for any of the Assets at the applicable time.  If, however, a member of an official committee appointed in these Chapter 11 Cases submits a Qualified Bid for any of the Assets, the applicable committee will maintain its consultation rights as a Consultation Party, provided, that, such committee excludes the bidding committee member from any discussions or deliberations regarding a transaction involving the relevant Assets, and shall not provide any confidential information regarding the Assets or otherwise involving the Sale Process to the bidding committee member.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures or the Bidding Procedures Order shall not in any way limit the Debtors' discretion and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment.

**Exhibit 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| FTD Companies, Inc., et al.,[1] | : | Case No. 19-11240 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**NOTICE OF SALE, BIDDING PROCEDURES, AUCTION,
SALE HEARING AND OTHER DEADLINES RELATED THERETO**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On June 6, 2019, FTD Companies, Inc. and its debtor affiliates as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. [●]82] (the "Motion") seeking entry of (a) an order (the "Bidding Procedures Order") (i) approving bidding procedures (the "Bidding Procedures")[2] to be used in connection with one or more sales (each, a "Sale Transaction") of substantially all of the Debtors' assets (the "Assets"); (ii) authorizing the Debtors to enter into one or more asset purchase agreements with one or more "stalking horse" bidders (each such agreement, a "Stalking Horse Agreement" and, each such bidder, a "Stalking Horse Bidder," and the bid of any such Stalking Horse Bidder, a "Stalking Horse Bid") and to provide certain bidding protections, including a Termination Payment (as defined below), to any Stalking Horse Bidder in connection therewith; (iii) scheduling an auction of the Assets (the "Auction") and a final hearing to consider approval of any proposed Sale Transactions (the "Sale Hearing"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with any Sale Transaction; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information

---

[1]     The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses):  FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce, Inc. LLC (0019); and Provide Creations, Inc. (8964).  The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

[2]     Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.  Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any inconsistency between any summary in this Sale Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

regarding the potential assumption and assignment of Contracts in connection with a Sale Transaction; and (vii) granting related relief; and (b) one or more orders (each, a "Sale Order") (i) authorizing one or more Sale Transactions for a sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtors and any Successful Bidder (as defined below) for the applicable Assets, with liens to attach to the proceeds of the applicable Sale Transaction; (ii) authorizing the assumption and assignment of certain Contracts in connection with approved Sale Transactions; and (iii) granting related relief.

On _____, 2019, the Court entered the Bidding Procedures Order [Docket No. [●].

## ASSETS FOR SALE

The Debtors are seeking to sell substantially all of their Assets, including the following:

**A.     The FTD Assets**

- FTD.com, the business unit held by Debtor FTD.COM Inc. ("FTD.com"); and

- the florist business segment held by Debtor Florists' Transworld Delivery, Inc. (together with FTD.com, the "FTD Assets").

**B.     The Provide Businesses**

- the Restructured ProFlowers Business (as defined in the Motion) which is operated by Debtor Provide Commerce, ~~Inc.~~ LLC ("Provide Commerce");

- the Gourmet Foods business (including Shari's Berries) ("Gourmet Foods"), which is operated by Provide Commerce; and

- the Personal Creations business (including Gifts.com) ("Personal Creations" and, together with the Restructured ProFlowers Business and Gourmet Foods, the "Provide Businesses"), which is operated by Debtor Provide Creations, Inc.

Interested parties may bid on all or any combination of the Assets, subject to the conditions set forth in the Bidding Procedures.

Any party interested in submitting a bid for any of the FTD Assets should contact the Debtors' investment banker for the FTD Sale Process, Moelis & Company LLC, 300 North LaSalle, Suite 5300, Chicago, Illinois 6054 10022 (Attn: Ken Viellieu (Ken.Viellieu@moelis.com) and Steve Bloom (Steve.Bloom@moelis.com)).

Any party interested in submitting a bid for any of the Provide Businesses should contact the Debtors' investment banker for the Provide Sale Process, Piper Jaffray & Co., at the following addresses: (i) 2321 Rosecrans Avenue, Suite 3200, El Segundo, California 90245 (Attn: Teri Stratton (Teri.L.Stratton@pjc.com)) and (ii) 444 West Lake Street, 33rd Floor, Chicago, Illinois 60606 (Attn: Jean Hosty (Jean.E.Hosty@pjc.com)).

**STALKING HORSE PROCEDURES**

A.    ~~The Nexus Agreement and Potential Provide~~ Stalking    Horse ~~Bidders~~Agreements

On June ~~2~~19, 2019, the Debtors entered into an asset purchase agreement with Gateway Mercury Holdings, LLC~~, an affiliate of Nexus Capital Management LP~~ ("Gateway"), for the sale of the FTD Assets and the Restructured ProFlowers Business for an aggregate purchase price of approximately $95 million (the "~~Nexus Agreement~~").  ~~The Debtors intend to file a motion with the Court seeking approval of (i) the Nexus Agreement as a Stalking Horse Bid for the FTD Assets and the Restructured ProFlowers Business (the "Nexus Stalking Horse Bid") and (ii) the provision of certain bidding protections in accordance with the terms of the Nexus Agreement.~~Gateway Stalking Horse Agreement").  On June 24, 2019, the Debtors filed with the Court the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Gateway Stalking Horse Agreement and (II) Granting Related Relief* [Docket No. [●]] (the "Gateway Stalking Horse Motion").

The Debtors are requesting that the hearing to consider the relief requested in the Gateway Stalking Horse Motion be scheduled to be held before the Court on July 2, 2019.  Subject to the Court's entry of an order granting the Gateway Stalking Horse Motion, (i) Gateway's bid for the FTD Assets and the Restructured ProFlowers Business, as reflected in the Gateway Stalking Horse Agreement, is a "Stalking Horse Bid," as such term is used in the Bidding Procedures; (ii) the Gateway Stalking Horse Agreement is a "Stalking Horse Agreement," as such term is used in the Bidding Procedures; and (iii) Gateway is a "Stalking Horse Bidder," as such term is used in the Bidding Procedures.

On June 23, 2019, the Debtors entered into (i) an asset purchase agreement with Farids & Co. LLC ("Farids") for the sale of the Gourmet Foods business (including Shari's Berries) for an aggregate purchase price of approximately $6 million (the "Farids Stalking Horse Agreement") and (ii) an asset purchase agreement with PlanetArt LLC ("PlanetArt") for the sale of the Personal Creations business (including Gifts.com) for an aggregate purchase price of approximately $18.1 million (the "PlanetArt Stalking Horse Agreement").  On June 24, 2019, the Debtors filed with the Court (A) the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Farids Stalking Horse Agreement and (II) Granting Related Relief* [Docket No. [●]] (the "Farids Stalking Horse Motion") and (B) the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the PlanetArt Stalking Horse Agreement and (II) Granting Related Relief* [Docket No. [●]] (the "PlanetArt Stalking Horse Motion").  The Debtors are requesting that the hearing to consider the relief requested in the Farids Stalking Horse Motion and the PlanetArt Stalking Horse Motion also be scheduled to be held before the Court on July 2, 2019.

Subject to the Court's entry of an order granting each of the Farids Stalking Horse Motion and the PlanetArt Stalking Horse Motion, respectively, (i) each of the (A) Farids' bid for Gourmet Foods, as reflected in the Farids Stalking Horse Agreement, and (B) PlanetArt's bid for Personal Creations, as reflected in the PlanetArt Stalking Horse Agreement, is a "Stalking Horse Bid," as such term is used in the Bidding Procedures; (ii) each of the Farids Stalking Horse Agreement and

the PlanetArt Stalking Horse Agreement is a "Stalking Horse Agreement," as such term is used in the Bidding Procedures; and (iii) each of Farids and PlanetArt is a "Stalking Horse Bidder," as such term is used in the Bidding Procedures.

~~The Debtors also have entered into non-binding letters of intent for the acquisition of (i) Personal Creations by a strategic investor and (ii) Gourmet Foods by Farids & Co., LLC (together, the "Potential Provide Stalking Horse Bidders"). In the event the Debtors enter into a Stalking Horse Agreement with any of the Potential Provide Stalking Horse Bidders, the Debtors intend to file a motion with the Court seeking approval of any such Stalking Horse Agreement and the provision of any bidding protections thereunder.~~

### B.    Designating Additional Stalking Horse Bidders

In addition, pursuant to the Bidding Procedures Order and as provided in Section II.B of the Bidding Procedures, the Debtors may enter into one or more Stalking Horse Agreements with one or more other bidders that the Debtors determine to designate as a Stalking Horse Bidder. The Debtors also are authorized to provide certain bidding protections to any such Stalking Horse Bidder, including a "break-up" fee and an expense reimbursement (together, a "<u>Termination Payment</u>").

  i.    <u>Stalking Horse Notice</u>. Within two ~~business~~ days after executing a Stalking Horse Agreement, the Debtors will file with the Court, serve on the Sale Notice Parties (as defined in Section X.B of the Bidding Procedures) and cause to be served on the website maintained by Omni Management Group, Inc., the Debtors' claims and noticing agent in these Chapter 11 Cases, located at www.omnimgt.com/FTD (the "<u>Omni Website</u>"), a notice setting forth the material terms of the proposed Stalking Horse Agreement, including the terms and conditions of any Termination Payment to be provided thereunder (each such notice, a "<u>Stalking Horse Notice</u>").

  ii.    <u>Stalking Horse Hearing</u>. The Debtors will request that the Court schedule a hearing (each, a "<u>Stalking Horse Hearing</u>"), in each case, to be held within five business days after service of the applicable Stalking Horse Notice, to consider approval of the applicable Stalking Horse Agreement and the provision of bidding protections thereunder.

  iii.    <u>Deadline to Designate Stalking Horse Bidders</u>. Any Stalking Horse Bidder designated by the Debtors in accordance with the Bidding Procedures will be so designated by no later than the later of (A) July 8, 2019 and (B) seven calendar days prior to the Bid Deadline (as defined below); <u>provided</u>, <u>that</u>, the Debtors may extend the deadline to designate a Stalking Horse Bidder in accordance with the terms of the Bidding Procedures; provided, further, that, the Debtors will not extend the deadline to a date that is later than three days prior to the Bid Deadline.

  iv.    <u>Bidding Protection Objections</u>. Any objection to the provision of a Termination Payment offered to a Stalking Horse Bidder in accordance with Section II.B of the Bidding Procedures (each such objection, a "<u>Bidding Protection Objection</u>") must (A) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (B) be filed with the Court and served on the Objection Notice Parties (as defined in Section X.D of the

Bidding Procedures) within three ~~calendar~~ business days after service of the applicable Stalking Horse Notice.

If the parties are unable to consensually resolve a Bidding Protection Objection, such Bidding Protection Objection will be heard and resolved by the Court at the applicable Stalking Horse Hearing. The applicable Termination Payment will not be deemed approved until the Bidding Protection is resolved, either consensually, or by order of the Court.

v.  <u>Failure to File a Timely Bidding Protection Objection</u>.  If no timely Bidding Protection Objection is filed and served, the Debtors may seek permission from the Court to file, upon certification of counsel and the consent of the United States Trustee for the District of Delaware and the Consultation Parties (as defined in Section XI of the Bidding Procedures), a proposed order authorizing and approving the Debtors' entry into the applicable Stalking Horse Agreement and the provision of a Termination Payment thereunder in lieu of holding a Stalking Horse Hearing. Whether to proceed with or cancel a Stalking Horse Hearing for an uncontested Stalking Horse Agreement shall be in the sole and absolute discretion of the Court.

<u>**KEY DATES AND DEADLINES**</u>

**A.  Bid Deadline**

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties (as defined in Section X.A of the Bidding Procedures) a Qualified Bid (as defined in Section VI.C of the Bidding Procedures) on or before **July 15, 2019, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Bid Deadline</u>"). The Debtors may extend the Bid Deadline for all or certain Prospective Bidders in a manner consistent with the terms of the Bidding Procedures.

The Qualified Bid requirements are set forth in Sections IV, V and VI of the Bidding Procedures.

**B.  Auction**

If the Debtors receive more than one Qualified Bid for an Asset, the Debtors will conduct an Auction for such Asset.  With respect to Assets for which the Debtors receive only one Qualified Bid by the Bid Deadline, the Debtors may determine to consummate a Sale Transaction with the applicable Qualified Bidder or include such Assets in the Auction; provided, that, if a Stalking Horse Bid is the only Qualified Bid received in respect of Stalking Horse Assets (as defined in Section VI.A.4 of the Bidding Procedures), the Debtors will not conduct an Auction for such Stalking Horse Assets and will seek approval of any such Stalking Horse Bid at an applicable Sale Hearing.

Prior to the Auction, the Debtors will make a determination regarding the Assets and/or combinations of Assets for which the Debtors will conduct an Auction (each such Asset or group of Assets, an "<u>Auction Package</u>").  The Debtors may determine to include an individual Asset in more than one Auction Package.

The Auction, if required, will be conducted on **July 22, 2019, at 10:00 a.m. (prevailing Central Time)**, at the offices of Jones Day, 77 West Wacker, Chicago, Illinois 60601, or at such other time and location as designated by the Debtors, in accordance with the Bidding Procedures.

~~By the later of (a) July 24, 2019 and (b) one business~~ One day after the conclusion of the Auction, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the Omni Website, a notice setting forth the results of the Auction (the "Notice of Auction Results"), which will (i) identify the bidder that submitted the highest or best bid for each Auction Package (each such bidder, a "Successful Bidder" and, each such bid, a "Successful Bid"); (ii) identify the bidder that submitted the next highest or next best bid after the Successful Bid for each Auction Package (each such bidder, a "Backup Bidder" and, each such bid, a "Backup Bid"); (iii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby; and (iv) set forth the Supplemental Sale Objection Deadline (as defined below) and the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.

**C.    Objection Deadlines**

1.  <u>Sale Objection Deadline</u>.  Objections to a sale of the Assets, including (a) any objection to a sale of the Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code and (b) entry of any Sale Order (each such objection, a "Sale Objection") must (i) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) be filed with the Court and served on the Objection Notice Parties by no later than **July 16, 2019, at 4:00 p.m. (prevailing Eastern Time)**.

2.  <u>Supplemental Sale Objection Deadline</u>.  Following service of the Notice of Auction Results, parties may object to the particular terms of a proposed Sale Transaction in a Successful Bid.  Any Supplemental Objection must (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) be filed with the Court and served on the Objection Notice Parties by no later than **the later of (i) July 26, 2019, at 4:00 p.m. (prevailing Eastern Time) and (ii) three business days prior to the Sale Hearing** (the "Supplemental Sale Objection Deadline").

**D.    Sale Hearing**

The Sale Hearing shall take place on **July 31, 2019, at 11:00 a.m. (prevailing Eastern Time**) before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

<u>**RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES**</u>

The Debtors reserve the right to, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, and after consulting with the Consultation

Parties, modify the Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth therein; adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders, as applicable; if applicable, provide reasonable accommodations to a Stalking Horse Bidder; or otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the of value of the Assets, in each case, to the extent not materially inconsistent with the Bidding Procedures, the Bidding Procedures Order or any applicable Stalking Horse Agreement.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Omni Website.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THESE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE DEBTORS' ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE TRANSACTION, INCLUDING THE SALE OF ANY ASSETS TO A SUCCESSFUL BIDDER FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF ANY STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS.**

Dated: _____, 2019
        Wilmington, Delaware

_/s/_ _____
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Brett M. Haywood (No. 6166)
Megan E. Kenney (No. 6426)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, 920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email: defranceschi@rlf.com
      heath@rlf.com
      haywood@rlf.com
      kenney@rlf.com

      -and-

Heather Lennox (admitted _pro hac vice_)
Thomas A. Wilson (admitted _pro hac vice_)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939
Email: hlennox@jonesday.com
      tawilson@jonesday.com

Timothy W. Hoffmann (admitted _pro hac vice_
~~admission pending~~)
JONES DAY
77 West Wacker
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Email: thoffmann@jonesday.com

Danielle D. Donovan (admitted _pro hac vice_
~~admission pending~~)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 521-3939
Email:  ddonovan@jonesday.com

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**<u>Exhibit 3</u>**

**Assumption and Assignment Notice**

**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FTD Companies, Inc., et al.,[1] | : | Case No. 19-11240 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION**
**AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED**
**LEASES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On June 6, 2019, FTD Companies, Inc. and its debtor affiliates as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. [●]82] (the "Motion") seeking entry of (a) an order (the "Bidding Procedures Order") (i) approving bidding procedures (the "Bidding Procedures")[2] to be used in connection with one or more sales (each, a "Sale Transaction") of substantially all of the Debtors' assets (the "Assets"); (ii) authorizing the Debtors to enter into one or more asset purchase agreements with one or more "stalking horse" bidders and to provide certain bidding protections in connection therewith; (iii) scheduling an auction of the Assets (the "Auction") and a final hearing to consider approval of any proposed Sale Transactions (the "Sale Hearing"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with any Sale Transaction (the "Assumption and Assignment Procedures"); (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and certain other information regarding the potential assumption and assignment of Contracts in connection

---

[1]    The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses):  FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce, Inc. LLC (0019); and Provide Creations, Inc. (8964).  The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or the Bidding Procedures, as applicable.  Any summary of the Bidding Procedures or the Bidding Procedures Order (or any provision thereof) contained herein is qualified in its entirety by the actual terms and conditions thereof.  To the extent that there is any inconsistency between any summary in this Notice and the terms and conditions of either of the Bidding Procedures or the Bidding Procedures Order, the actual terms and conditions in those documents shall control.

with a Sale Transaction; and (vii) granting related relief; and (b) one or more orders (each, a "Sale Order") (i) authorizing one or more Sale Transactions for a sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtors and any Successful Bidder (as defined ~~below~~in Section VII.C.1 of the Bidding Procedures) for the applicable Assets, with liens to attach to the proceeds of the applicable Sale Transaction; (ii) authorizing the assumption and assignment of certain Contracts in connection with approved Sale Transactions; and (iii) granting related relief.

On _____, 2019, the Court entered the Bidding Procedures Order [Docket No. [●].

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtors that may be assumed and assigned to a Successful Bidder for the Debtors' Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtors may, in connection with one or more Sale Transactions with a Successful Bidder at the Auction, seek to assume and assign to the Successful Bidder certain of their Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with a Sale Transaction, together with the Debtors' calculation of Cure Costs with respect to such Contracts, is set forth on <u>Schedule 1</u> hereto. The inclusion of any Contract on Schedule 1 does not constitute an admission by the Debtors or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. All rights of the Debtors with respect thereto are reserved.

## CURE OBJECTIONS

### A.    Cure Objection Deadline

Any Counterparty that wishes to object to the Debtors' proposed Cure Costs (each such objection, a "Cure Objection") must file with the Court and serve on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) its Cure Objection, which must be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by no later than **July 16, 2019, at 4:00 p.m. (prevailing Eastern Time).**

### B.    Resolution of Cure Objections

Pursuant to the Bidding Procedures Order, the Debtors~~,~~, the applicable Stalking Horse Bidder or Successful Bidder (if applicable) and the objecting Counterparty must first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to the following paragraph. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the applicable Sale Transaction, the Debtors may determine that any Contract subject to such resolved Cure Objection no longer will be

assumed and assigned; provided, that, in the case of an unexpired lease of non-residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code.

### C.    Adjourned Cure Objections

If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing, or, at the ~~Debtors' option~~option of the Debtors, in consultation with the Consultation Parties (as defined in Section XI of the Bidding Procedures) and the applicable Successful Bidder, be adjourned to a subsequent hearing (each such Cure Objection, an "Adjourned Cure Objection").  Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall (as applicable) be deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale Transaction.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT.  THE CURE COSTS SET FORTH ON SCHEDULE 1 HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(b) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE DEEMED BOUND BY AND TO HAVE CONSENTED TO THE CURE COSTS.**

<u>**NOTICE OF AUCTION RESULTS**</u>

The Auction, if required, will be conducted on **July 22, 2019, at 10:00 a.m. (prevailing Central Time)**, at the offices of Jones Day, 77 West Wacker, Chicago, Illinois 60601, or at such other time and location as designated by the Debtors in accordance with the Bidding Procedures.

~~By the later of (i) July 24, 2019 and (ii) one business~~ One day after the conclusion of the Auction, the Debtors will file with the Court, serve on the Sale Notice Parties (as defined in Section X.B of the Bidding Procedures) and cause to be published on the website maintained by Omni Management Group, Inc., the Debtors' claims and noticing agent in these Chapter 11 Cases, located at www.omnimgt.com/FTD (the "Omni Website"), a notice of the results of the Auction, which will, among other things, (A) identify the Successful Bidder(s) and Backup Bidder(s) for each Auction Package; (B)  include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including whether such bids contemplate the assumption and assignment of any Contracts; and (C) set forth the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties of the outcome of the Auction.

## ADEQUATE ASSURANCE OBJECTIONS

### A.      Adequate Assurance Objection Deadline

Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of the Contract, the subject of which objection is a Successful Bidder's (or any other relevant assignee's) proposed form of adequate assurance of future performance (each such objection, an "Adequate Assurance Objection"), must file with the Court and serve on the Objection Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by no later than **the later of (i) July 26, 2019, at 4:00 p.m. (prevailing Eastern Time) and (ii) three business days prior to the Sale Hearing**.

### B.      Resolution of Adequate Assurance Objections

Pursuant to the Bidding Procedures Order, the Debtors, the applicable Successful Bidder and the objecting Counterparty must first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the applicable Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE.  THE APPLICABLE SUCCESSFUL BIDDER (OR ANY OTHER RELEVANT ASSIGNEE) SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.**

## SALE HEARING

The Sale Hearing shall take place on **July 31, 2019, at 11:00 a.m. (prevailing Eastern Time)** before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Omni Website.

Dated: _____, 2019
       Wilmington, Delaware

/s/ _____
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Brett M. Haywood (No. 6166)
Megan E. Kenney (No. 6426)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, 920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Email: defranceschi@rlf.com
       heath@rlf.com
       haywood@rlf.com
       kenney@rlf.com

       -and-

Heather Lennox (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  (216) 586-3939
Email: hlennox@jonesday.com
       tawilson@jonesday.com

Timothy W. Hoffmann (admitted *pro hac vice* admission pending)
JONES DAY
77 West Wacker
Chicago, Illinois  60601
Telephone:  (312) 782-3939
Email: thoffmann@jonesday.com

Danielle D. Donovan (admitted *pro hac vice* admission pending)
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 521-3939
Email:  ddonovan@jonesday.com

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

## Schedule 1