## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FTD Companies, Inc., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-11240 (LSS)<br><br>(Jointly Administered) |

## DECLARATION OF ALAN D. HOLTZ IN SUPPORT
## OF THE (I) GATEWAY STALKING HORSE MOTION, (II) FARIDS
## STALKING HORSE MOTION AND (II) PLANETART STALKING HORSE MOTION

I, Alan D. Holtz, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1.      I am the appointed Chief Restructuring Officer of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors" and, together with their non-debtor affiliates, the "Company").   In addition, I am a Managing Director of AlixPartners, LLP ("AlixPartners") and a Managing Director of AP Services, LLC ("APS"), which is an affiliate of AlixPartners.[2]  I am authorized to make this declaration (this "Declaration") on behalf of the Debtors.

---

[1]      The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses):  FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce LLC (0019); and Provide Creations, Inc. (8964).  The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

[2]      On June 6, 2019, the Debtors filed the *Debtor's Application for an Order Authorizing them to (I) Employ and Retain AP Services, LLC and (II) Designate Alan D. Holtz as Chief Restructuring Officer and Scott M. Tandberg as Associate Restructuring Officer, Nunc Pro Tunc to the Petition Date* [Docket No. 81] (the "APS Retention Application").  The APS Retention Application is scheduled to be considered at a hearing before the Court on July 2, 2019.

2.     I submit this Declaration in support of the (a) *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Gateway Stalking Horse Agreement and (II) Granting Related Relief* (the "Gateway Stalking Horse Motion"), (b) *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Farids Stalking Horse Agreement and (II) Granting Related Relief* filed contemporaneously herewith (the "Farids Stalking Horse Motion") and (c) *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the PlanetArt Stalking Horse Agreement and (II) Granting Related Relief* filed contemporaneously herewith (the "PlanetArt Stalking Horse Motion" and, together with the Gateway Stalking Horse Motion and the Farids Stalking Horse Motion, the "Stalking Horse Motions"),[3] filed contemporaneously herewith.

3.     In particular, I submit this Declaration in support of the Debtors' decision to enter into:

(a)     that certain *Amended and Restated Asset Purchase* Agreement, dated as of June 19, 2019, by and among Gateway Mercury Holdings, LLC ("Gateway"), as purchaser, and FTD, Inc., Florists Transworld Delivery, Inc., FTD.COM Inc., FTD.CA, Inc., Provide Commerce, LLC, FlowerFarm, Inc. and Bloom That, Inc., as sellers (as may be hereafter amended, supplemented or otherwise modified, the "Gateway Stalking Horse Agreement"), substantially in the form attached to the Gateway Stalking Horse Motion as Exhibit B, and to provide Gateway with certain Bidding Protections in accordance with the terms of the Gateway Stalking Horse Agreement and the Bidding Procedures, in each case, as a valid exercise of the Debtors' business judgment.

(b)     that certain *Asset Purchase Agreement*, dated as of June 23, 2019, by and among Farids & Co. LLC ("Farids"), as purchaser, and Provide Commerce LLC, as seller (the "Farids Stalking Horse Agreement"), substantially in the form attached to the Farids Stalking Horse Motion as Exhibit B, and to provide Farids with certain

---

[3]     Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Stalking Horse Motions or in the Bidding Procedures Motion [Docket No. 82], as applicable.

2

Bidding Protections in accordance with the terms of the Farids Stalking Horse Agreement and the Bidding Procedures, in each case, as a valid exercise of the Debtors' business judgment; and

(c) that certain *Asset Purchase Agreement*, dated as of June 23, 2019, by and among PlanetArt LLC, as purchaser ("PlanetArt"), and Provide Creations, Inc., Provide Commerce LLC, FTD, Inc., and Giftco, LLC., as sellers (the "PlanetArt Stalking Horse Agreement" and, together with the Gateway Stalking Horse Agreement and the Farids Stalking Horse Agreement, the "Stalking Horse Agreements"), substantially in the form attached to the PlanetArt Stalking Horse Motion as Exhibit B, and to provide PlanetArt with certain Bidding Protections in accordance with the terms of the PlanetArt Stalking Horse Agreement and the Bidding Procedures, in each case, as a valid exercise of the Debtors' business judgment.

4.    Except as otherwise indicated, all statements set forth in this Declaration are based on (a) my personal knowledge, (b) my review of relevant documents, (c) information provided to me by AlixPartners and/or APS employees working under my supervision, (d) information provided to me by, or discussions with, the Debtors' management team, employees or the Debtors' other advisors or (e) my opinion based upon my experience.  If called to testify, I could and would testify to the facts and the opinions set forth herein.

### Qualifications

5.    AlixPartners is an internationally recognized restructuring and turnaround firm with a wealth of experience in providing financial advisory services.  Since their inception in 1981, AlixPartners and APS each have enjoyed an excellent reputation for financial advisory, crisis management and restructuring-related services. AlixPartners and APS have provided these services to debtors and other key constituents in numerous recent chapter 11 cases.  See, e.g., In re PG&E Corp., Case No. 19-30088 (DM) (Bankr. N.D. Cal. Jan. 29, 2019); In re Heritage Home Grp., LLC, et al., Case No. 18-11736 (KG) (Bankr. D. Del. Jul. 29, 2018); In re Video Equipment Rental, et al., Case No. 18-10834 (KG) (Bankr. D. Del. May 22, 2018); In re HCR Manorcare, Inc., et al., Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 16, 2018); In re Velocity Holding Co.,

3

*et al.*, Case No. 17-12442 (KJC) (Bankr. D. Del. Dec. 12, 2017); <u>In re Appvion, Inc., et al.</u>, Case No. 17-12082 (KJC) (Bankr. D. Del. Oct. 30, 2017); <u>In re The Gymboree Corp., et al.</u>, Case No. 17-32986 (KLP) (Bank. E.D. Va. July 26, 2017); <u>In re BCBG Max Azria Global Holdings, et al.</u>, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); <u>In re Eastern Outfitters, LLC, et al.</u>, Case No. 17-10243 (LSS) (Bankr. D. Del. Mar. 9, 2017).

6. I have over 31 years of experience advising clients on maximizing value, recoveries and financial returns in complex restructuring situations. This experience includes working with management teams and boards of directors of dozens of large companies facing financial challenges like those facing the Debtors.

7. I have a Bachelor of Science in Economics from the University of Pennsylvania. I am a Certified Insolvency and Restructuring Advisor; a member of the American Bankruptcy Institute; a member of the Turnaround Management Association; a member of the American Institute of Certified Public Accountants; and a past president of the Association of Insolvency and Restructuring Advisors.

8. The Debtors engaged AlixPartners in July 2018 to provide financial advisory and consulting services in connection with the Debtors' prepetition restructuring efforts. During the course of its engagement, AlixPartners worked closely with the Debtors' management team and has become well-acquainted with the Debtors' capital structure, liquidity needs, business operations and workforce. Prior to the commencement of these chapter 11 cases, each Debtor appointed me to serve as its Chief Restructuring Officer.

### The Debtors' Prepetition Marketing and Sale Process

9. In July 2018, the Debtors commenced a comprehensive assessment of strategic alternatives in pursuit of a global resolution of the Company's challenges. These

4

alternatives included, among others, a sale or merger of the entire Company, the sale or other disposition of certain business segments or assets, a corporate restructuring, refinancing debt and the pursuit of certain other value-enhancing initiatives.  The Debtors engaged Moelis & Company LLC ("Moelis") to serve as their investment banker in connection with their review of strategic alternatives, including to design and execute a marketing and sale process (the "FTD Sale Process") for, among other things, (a) a sale of the entire Company or, in the alternative, (b) one or more transactions involving the following Assets or businesses:  (i) FTD.com, the business unit held by Debtor FTD.COM Inc.; (ii) the florist business segment (together with FTD.com, the "FTD Assets") held by Debtor Florists' Transworld Delivery, Inc.; and (iii) the Company's Interflora business unit in the United Kingdom.

10.     When the momentum of the prepetition FTD Sale Process stalled following the release of the Company's 2019 Valentine's Day results, the Debtors recalibrated the Sale Process to focus more on marketing and consummating strategic sales of individual businesses while remaining willing to entertain offers for the entire Company.  In furtherance of the Debtors' focus on consummating sales of individual businesses, the Debtors engaged Piper Jaffray in April 2019 to serve as their investment banker in connection with their review of strategic alternatives for the non-FTD Assets.  In particular, Piper Jaffray has been engaged to design and execute a marketing and sale process (the "Provide Sale Process" and, together with the FTD Sale Process, the "Sale Processes") for certain of the Company's non-core business units, including (a) the ProFlowers business (including ProPlants), which is operated by Provide Commerce; (b) the Gourmet Foods business (including Shari's Berries) ("Gourmet Foods"), which also is operated by Provide Commerce; and (c) Personal Creations (including Gifts.com) ("Personal Creations"), which is operated by Debtor Provide Creations, Inc.

5

11.     The Debtors' management team worked closely with Moelis and Piper Jaffray to develop a strategic marketing protocol for the FTD Sale Process and the Provide Sale Process, respectively, to ensure that the Debtors would receive the highest or otherwise best value for the Debtors' Assets.  Moelis and Piper Jaffray consistently have kept the Debtors' management team and advisors, including AlixPartners, apprised of the status of the Sale Processes.

### The Stalking Horse Agreements

12.     After careful review of the indications of interests submitted in respect of the FTD Assets and the non-FTD Assets, and with the advice of the Debtors' advisors, the Debtors determined, in their reasonable business judgment, that it was in the best interests of the Debtors' businesses, restructuring efforts and stakeholders to pursue a stalking horse transaction with each of Gateway, Farids and PlanetArt on the terms set forth in the respective Stalking Horse Agreements.  After several rounds of good-faith, arms'-length negotiations, the Debtors executed Stalking Horse Agreements with (a) Gateway on June 19, 2019, (b) Farids on June 23, 2019 and (c) PlanetArt on June 23, 2019.

13.     Based on the advice of the Debtors' advisors, I believe that the Bidding Protections to be provided to Gateway, Farids and PlanetArt in accordance with the terms of the applicable Stalking Horse Agreement and the Bidding Procedures are reasonable and appropriate under the circumstances.  The Debtors do not intend to terminate any of the Stalking Horse Agreements unless they receive a Qualified Bid at the Auction for an Alternative Transaction that generates higher or better value for the assets subject to the applicable Stalking Horse Agreement that also includes sufficient consideration to cover the cost of the Termination Payment (as defined in the applicable Stalking Horse Motion).  As such, I believe that the Bidding Protections will enhance—not diminish—the value of the Debtors' estates.

6

14.     Finally, I believe that the Debtors, Gateway, Farids, PlanetArt and each of their respective advisors (as applicable) negotiated the terms of their respective Stalking Horse Agreements and the Bidding Protections without collusion, in good faith and from arms'-length bargaining positions at all times.

Dated: June 25, 2019

 /s/  Alan D. Holtz
Alan D. Holtz
Chief Restructuring Officer
FTD Companies, Inc.

7