**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FTD Companies, Inc., et al.,[1] | : | Case No. 19-11240 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Re: Docket No. 82** |

**ORDER (I) APPROVING BIDDING PROCEDURES
FOR THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS, (II) AUTHORIZING THE DEBTORS TO
ENTER INTO ONE OR MORE STALKING HORSE AGREEMENTS
AND TO PROVIDE BIDDING PROTECTIONS THEREUNDER, (III) SCHEDULING
AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE
THEREOF, (IV) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES,
(V) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND
MANNER OF NOTICE THEREOF AND (VI) GRANTING RELATED RELIEF**

This matter coming before the Court on the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of*

---

[1] The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce, Inc. (0019); and Provide Creations, Inc. (8964). The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

*Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 82] (the "Motion")[2] filed by the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"); the Court having reviewed the Motion and the First Day Declaration [Docket No. 3], and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court on June 25, 2019 to consider certain of the relief requested in the Motion (the "Bidding Procedures Hearing"); and after due deliberation, this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

      A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

      B.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    Notice of the Motion and the Bidding Procedures Hearing was sufficient under the circumstances and no other or further notice need be provided.

      D.    The bidding procedures attached hereto as Exhibit 1 (the "Bidding Procedures") are fair, reasonable and appropriate and are designed to maximize the value of the

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion or in the Bidding Procedures, as applicable.

proceeds of one or more sales (each, a "Sale Transaction") of substantially all of the Debtors' assets (the "Assets").

E. The Bidding Procedures comply with the requirements of Rule 6004-1(c) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

F. The procedures set forth herein regarding the Debtors' assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with any Sale Transaction (the "Assumption and Assignment Procedures") are fair, reasonable and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

G. The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures; (ii) the form and manner of notice of the Bidding Procedures, the auction of the Assets (the "Auction") and the final hearing to consider approval of any proposed Sale Transaction(s) (the "Sale Hearing"), substantially in the form attached hereto as Exhibit 2 (the "Sale Notice"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (a) the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale Transaction, substantially in the form attached hereto as Exhibit 3 (the "Assumption and Assignment Notice"); and (iv) the Assumption and Assignment Procedures.

H. The Bidding Procedures are reasonably designed to promote participation and active bidding at and participation in the Auction to ensure that the highest or otherwise best value is generated for the Assets.

-3-

I. Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

J. The Sale Notice, the Publication Notice (as defined below) and the Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the Assumption and Assignment Procedures, the Debtors' proposed Cure Costs, any proposed assumption of a Contract in connection with a Sale Transaction and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Auction, the sale of the Assets or the assumption and assignment of Contracts in connection therewith shall be required.

K. Good and sufficient business reasons exist for the Court to authorize the "stalking horse" procedures set forth in Section II.B of the Bidding Procedures (the "<u>Stalking Horse Procedures</u>"), which permit the Debtors to designate one or more Stalking Horse Bidders and seek authorization of certain bidding protections pursuant to the terms of an applicable Stalking Horse Agreement, including the payment of a "break-up" fee and an expense reimbursement (together, a "<u>Termination Payment</u>").

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. All objections to the relief granted in this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.     The Bidding Procedures**

3.    The Bidding Procedures attached hereto as <u>Exhibit 1</u> are hereby approved and are incorporated herein by reference. The Bidding Procedures shall govern the bids and proceedings related to the Auction and the sale of the Assets. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4.    Any party holding a perfected security interest in any of the Assets may seek to credit bid all, or a portion of, such party's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "<u>Credit Bid</u>"); <u>provided</u>, <u>that</u>, (a) a Credit Bid may only be applied to reduce the cash consideration for the Assets in which the credit bidding party holds a perfected security interest; (b) a Credit Bid must also comply with, and be subject to, the terms of the DIP Orders,[3] including, for the avoidance of doubt (i) any challenge provisions contained therein and (ii) the requirement in the Interim DIP Order that any Credit Bid of the Prepetition Lenders that does not also contain a Credit Bid of the DIP Obligations (as defined in the Interim DIP Order) must contain a cash component satisfactory to satisfy in full the DIP Obligations; and (c) any bid that includes a Credit Bid shall also include a cash component sufficient to pay, and earmarked exclusively for the payment of, any applicable Termination Payment.

5.    Subject to this Order and the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, and in consultation with the Consultation Parties, shall have the right to

---

[3]   On June 5, 2019, the Court entered the *Interim Order Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling Final Hearing, and (IV) Granting Related* Relief, entered by the Court [Docket No. 60] (the "<u>Interim DIP Order</u>" and, together with any order of the Court approving the DIP Facility on a final basis, the "<u>DIP Orders</u>").

(a) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (b) make final determinations as to which Assets or combinations of Assets for which the Debtors will conduct an Auction (each such Asset or group of Assets, an "<u>Auction Package</u>"); (c) select the Baseline Bid for each Auction Package; (d) determine the amount of each Minimum Overbid; (e) determine the Leading Bid for each Auction Package; (f) determine which Qualified Bid is the highest or otherwise best bid for each Auction Package (each such Qualified Bid, a "<u>Successful Bid</u>") and which Qualified Bid is the next highest and next best bid after the Successful Bid for an Auction Package (each such Qualified Bid, a "<u>Backup Bid</u>"); (g) reject any bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of this Order or any other applicable order of the Court, the Bidding Procedures, the Bankruptcy Code or other applicable law; or (iii) contrary to the best interests of the Debtors and their estates; (h) adjourn or cancel the Auction with respect to any or all of the Assets in accordance with the Bidding Procedures; and (i) adjourn the Sale Hearing with respect to a Sale Transaction involving any or all of the Assets in accordance with the Bidding Procedures.

6. In accordance with the Bidding Procedures, the Debtors, in the exercise of the their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, and after consulting with the Consultation Parties, shall have the right to modify the Bidding Procedures, including to (a) extend or waive deadlines or other terms and conditions set forth herein; (b) adopt new rules and procedures for conducting the bidding and Auction process; (c) if applicable, provide reasonable accommodations to a Stalking Horse Bidder; and (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and

maximizing the of value of the Assets; <u>provided</u>, <u>that</u>, the Bid Deadline shall not be extended absent consultation with the Consultation Parties and any applicable Stalking Horse Bidder.

**B.      Stalking Horse Agreements and Bidding Protections**

7.      The Debtors, in the exercise of their reasonable business judgment and in a manner consistent with the Bidding Procedures, their fiduciary duties and applicable law, may designate one or more Stalking Horse Bidders for the sale of the Assets and provide, subject to approval by the Court or in accordance with the Bidding Procedures, any such Stalking Horse Bidder a Termination Payment in connection therewith in accordance with the Stalking Horse Procedures set forth in Section II.B of the Bidding Procedures.

8.      Unless authorized by separate order of the Court, no person or entity shall be entitled to any expense reimbursement or "termination," "break-up," "topping" or other similar fee or payment by the Debtors for submitting a bid for any of the Assets or in any way participating in the Auction or the Sale Process.

**C.      Bid Deadline and Auction**

9.      Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties (as defined in Section X.A of the Bidding Procedures) a Qualified Bid on or before **July 15, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Bid Deadline</u>").  The Debtors shall promptly provide a copy of each Qualified Bid to each of the Consultation Parties, but in no event later than the next calendar day after the Debtors' receipt of such Qualified Bid.

10.     If the Debtors receive more than one Qualified Bid for an Asset, the Debtors shall conduct an Auction for such Asset.  With respect to Assets for which the Debtors only receive one Qualified Bid, the Debtors, in their reasonable business judgment, in consultation with the Consultation Parties, may determine to consummate a Sale Transaction with the applicable

Qualified Bidder (subject to Court approval) or include such Assets in the Auction; <u>provided</u>, <u>that</u>, if a Stalking Horse Bid is the only Qualified Bid received in respect of Stalking Horse Assets, the Debtors shall not conduct an Auction for such Stalking Horse Assets.

11. The Auction, if required, will be conducted at the offices of Jones Day, 77 West Wacker, Chicago, Illinois 60601 on **July 22, 2019, at 10:00 a.m. (prevailing Central Time)**, or at such other time and location as designated by the Debtors, after providing notice to the Sale Notice Parties. If held, the Auction proceedings shall be transcribed or video recorded.

12. In the event the Debtors determine not to hold an Auction for some or all of the Assets, the Debtors shall file with the Court, serve on the Sale Notice Parties (as defined in Section X. B of the Bidding Procedures) and cause to be published on the website maintained by Omni Management Group, Inc., the Debtors' claims and noticing agent in these Chapter 11 Cases, located at www.omnimgt.com/FTD (the "<u>Omni Website</u>"), a notice containing the following information (as applicable): (a) a statement that the Auction for the relevant Assets has been canceled; (b) the identity of the Successful Bidder; (c) a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption or assignment of Contracts contemplated thereby; and (d) the date, time and location of the Sale Hearing.

13. Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction, subject to any other limitations as the Debtors may reasonably impose in accordance with the Bidding Procedures. Qualified Bidders participating in the Auction must appear in person at the Auction or through a duly authorized representative. The Debtors may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction. Notwithstanding the foregoing, the Auction shall be conducted openly, and all creditors shall be permitted to attend.

14. Each Qualified Bidder participating in the Auction shall confirm in writing on the record that (a) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets; and (b) the Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction constitutes a binding, good-faith and bona fide offer to purchase the Assets identified in such bids.

15. Within one day after the conclusion of the Auction, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the Omni Website, a notice setting forth the results of the Auction (the "Notice of Auction Results"), which shall (i) identify each Successful Bidder and each Backup Bidder; (ii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby; and (iii) set forth the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

**D.    Sale Noticing and Objection Procedures**

16. All general objections to any Sale Transaction (each, a "Sale Objection"), including (a) any objection to the sale of any Assets free and clear of liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code to a Successful Bidder and/or a Backup Bidder (as applicable) and (b) any objection to the entry of any Sale Order shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) be filed with the Court; and (iii) served on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) by no later than **July 16, 2019, at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Objection Deadline").

17. Following service of the Notice of Auction Results, parties may object to the conduct of the Auction and/or the particular terms of any proposed Sale Transaction in a Successful Bid (each such objection, a "<u>Supplemental Sale Objection</u>").  Any Supplemental Sale Objection shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) be filed with the Court and (c) served on the Objection Notice Parties by no later than the later of **(i) July 26, 2019, at 4:00 p.m. (prevailing Eastern Time) and (ii) three business days prior to the Sale Hearing** (the "<u>Supplemental Sale Objection Deadline</u>").

18. Any party who fails to file and serve a timely Sale Objection or Supplemental Sale Objection in accordance with the terms of this Order shall be forever barred from asserting, at the Sale Hearing or thereafter, any Sale Objection or Supplemental Sale Objection to the relief requested in the Motion, or to the consummation or performance of the applicable Sale Transaction(s), including the transfer of Assets to the applicable Successful Bidder free and clear of liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

19. Consummation of any Sale Transaction pursuant to a Successful Bid shall be subject to Court approval.  The Sale Hearing shall be held before the Court on **July 31, 2019, at 11:00 a.m. (prevailing Eastern Time)**; <u>provided</u>, <u>that</u>, the Debtors may, after consulting with the Consultation Parties, seek an adjournment of the Sale Hearing, consistent with the Bidding Procedures and paragraph 5 of this Order.

20. The Sale Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, is approved, and no other or further notice of the proposed sale of the Assets, the Auction, the Sale

Hearing, the Sale Objection Deadline or the Supplemental Sale Objection Deadline shall be required if the Debtors serve and publish the Sale Notice in the manner provided in the Bidding Procedures and this Order.

21.    By no later than the later of (a) June 27, 2019 and (b) two days after the entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the Omni Website, the Sale Notice.

22.    Within four business days after the entry of this Order, the Debtors shall cause the information contained in the Sale Notice to be published once in the national edition of *USA Today* and once in the *Chicago Tribune* (the "Publication Notice").

**E.    Assumption and Assignment Procedures**

23.    The Assumption and Assignment Notice, substantially in the form attached hereto as Exhibit 3, is approved, and no other or further notice of the Debtors' proposed Cure Costs with respect to Contracts listed on an Assumption and Assignment Notice is necessary or required.

24.    By no later than the later of (a) July 1, 2019 and (b) three business days after the entry of this Order, the Debtors shall file with the Court, serve on the applicable Counterparties and cause to be published on the Omni Website, the Assumption and Assignment Notice.

25.    Any objection to the Debtors' proposed Cure Costs (each such objection, a "Cure Objection") shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) be filed with the Court; and (c) served on the Objection Notice Parties by no later than **July 16, 2019, at 4:00 p.m. (prevailing Eastern Time)**.

26.    The Debtors, the applicable Stalking Horse Bidder or Successful Bidder (if applicable) and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention. If the parties are unable to consensually resolve the

Cure Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the applicable Cure Costs and Cure Objection at a hearing scheduled pursuant to paragraph 27 of this Order. If a Cure Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the applicable Sale Transaction, the Debtors may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned in connection with the applicable Sale Transaction (subject to the terms of the applicable Sale Transaction); provided, that, in the case of an unexpired lease of non-residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code. All other objections to the Debtors' proposed assumption and assignment of the Debtors' right, title and interest in, to and under a Contract shall be heard at the Sale Hearing.

27. If a timely Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, at the option of the Debtors, in consultation with the Consultation Parties and the applicable Successful Bidder, be adjourned to a subsequent hearing (each such Cure Objection, an "<u>Adjourned Cure Objection</u>"). An Adjourned Cure Objection may be resolved after the closing date of the applicable Sale Transaction; provided, that, with respect to any disputed cure amounts asserted in a timely filed Cure Objection, the Debtors shall, within five business days after the entry of the applicable Sale Order, establish or cause to be established a cash reserve in an amount sufficient to pay the disputed cure amounts in full. Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Bidder, and subject to the Debtors' rights set forth in paragraph 26 of this Order, be

deemed assumed and assigned to the applicable Successful Bidder as of the closing date of the applicable Sale Transaction.

28. If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract.  The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

29. In accordance with the Bidding Procedures, Qualified Bids shall be accompanied by Adequate Assurance Information (as defined in Section Section VI.A.9 of the Bidding Procedures).  The Debtors shall use commercially reasonable efforts to, within 24 hours after the Bid Deadline, but, in no event later than 24 hours after the Debtors receive Adequate Assurance Information, serve by email or overnight mail such Adequate Assurance Information on all Counterparties to any Contract that may be assumed by the applicable Qualified Bidder.

30. Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is a Successful Bidder's (or any other relevant assignee's) proposed form of adequate assurance of future performance with respect to the Contract (each, such objection, an "Adequate Assurance Objection"), shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) be filed with the Court; and (c) served on the Objection Notice Parties by no later than the later of **(i) July 26, 2019, at 4:00 p.m. (prevailing Eastern Time) and (ii) three business days prior to the Sale Hearing.**

31. The Debtors, the applicable Successful Bidder and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the applicable Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing.

32. If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance. The applicable Successful Bidder (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B) and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

33. Successful Bidders (including any Stalking Horse Bidder or Backup Bidder ultimately named a Successful Bidder) may, pursuant to the terms of an applicable asset purchase agreement executed with the Debtors (including any applicable Stalking Horse Agreement), designate (a) for assumption and assignment to the applicable Successful Bidder (or other relevant assignee) Contracts that were not originally included among the Assets to be acquired in connection with the applicable Successful Bid or for which the Successful Bidder had not determined to acquire or exclude as of the filing of the Notice of Auction Results and (b) rejection of Contracts that previously were included among the Assets to be acquired in connection with the

applicable Successful Bid or for which the Successful Bidder had not determined to acquire or exclude as of the filing of the Notice of Auction Results as "excluded assets" that will not be assigned to or otherwise acquired by the Successful Bidder.  The Debtors shall use commercially reasonable efforts to, within two business days after the Debtors receive notice of any such designation, file with the Court, serve on the applicable Counterparties and cause to be published on the Omni Website, a Designation Notice containing sufficient information to apprise Counterparties of the designation of their respective Contracts.

34. As soon as reasonably practicable after the closing of a Sale Transaction, the Debtors shall file with the Court, serve on the applicable Counterparties and cause to be published on the Omni Website, a notice containing the list of Contracts that the Debtors assumed and assigned pursuant to any asset purchase agreement with a Successful Bidder.

35. The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination or admission by the Debtors, any Stalking Horse Bidder, any Successful Bidder or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned.  The Debtors reserve all of their rights, claims and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

**F.     Other Related Relief**

36. All persons and entities that participate in the Auction or bidding for any Asset during the Sale Process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction or any other

relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

37. Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

38. The Debtors are authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

39. This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

**Dated: June 25th, 2019**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**