**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTD Companies, Inc., *et al.*,[1] | Case No. 19-11240 (LSS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF EVAN P. GLUCOFT IN SUPPORT OF
THE SALE OF THE FTD ASSETS AND THE
<u>RESTRUCTURED PROFLOWERS BUSINESS</u>**

I, Evan P. Glucoft, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am a Vice President of Gateway Mercury Holdings, LLC ("Gateway"), the proposed purchaser of (a) FTD.com, the business unit held by Debtor FTD.COM Inc.; (b) the florist business segment held by Debtor Florists' Transworld Delivery, Inc.; (c) the Restructured ProFlowers Business;[2] (d) the Overhead and Shared Services; and (e) all various other related assets (the "Purchased Assets") of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). I am authorized to make this declaration (this "Declaration") on behalf of Gateway. Unless otherwise stated herein, I have personal knowledge of the facts set forth in this Declaration.

---

[1] The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce, Inc. (0019); and Provide Creations, Inc. (8964). The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Gateway Stalking Horse Agreement, the Sale Motion, or the Bidding Procedures Order (as both terms are defined below), as applicable.

2. I submit this Declaration in support of the *Motion of the Debtors for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; (II) (A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "Sale Motion") (D.I. 82).

3. Prior to the commencement of these Chapter 11 Cases on June 3, 2019 (the "Petition Date"), Gateway was contacted by the Debtors' advisors about the sale of the Purchased Assets, which would be effectuated pursuant to section 363 of the Bankruptcy Code. On June 2, 2019, following diligence and extensive negotiations with the Debtors, Gateway and the Debtors executed the Asset Purchase Agreement that contained certain items subject to post-signing finalization. These items were subsequently finalized and, on June 19, 2019, Gateway and the Debtors executed the Amended and Restated Asset Purchase Agreement (as amended, supplemented, or otherwise modified, the "Gateway Stalking Horse Agreement").

4. On June 24, 2019, the Debtors filed the *Motion of the Debtors for Entry of an Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Gateway Stalking Horse Agreement and (II) Granting Related Relief* (D.I. 185). On July 2, 2019, the Court entered the *Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Gateway Stalking*

*Horse Agreement and (II) Granting Related Relief* (D.I. 306) by which the Court designated Gateway as the Stalking Horse Bidder and the Gateway bid as the Stalking Horse Bid for the Purchased Assets.

5. In accordance with the Bidding Procedures Order and the Bidding Procedures, on July 31, 2019, the Debtors held an Auction for the Purchased Assets. At the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, selected Gateway as the Successful Bidder for the Purchased Assets, pursuant to the terms and conditions in the Second Amended and Restated Asset Purchase Agreement dated July 31, 2019, substantially in the form attached as <u>Exhibit A</u> to the *Notice of Auction Results in Connection with the Sale of the FTD Assets and the Restructured ProFlowers Business* (D.I. 499) (the "Notice of Auction Results").

6. On August 1, 2019, the Debtors filed the Notice of Auction Results, notifying parties in interest that Gateway was the Successful Bidder for the Purchased Assets.

***Good Faith***

7. Throughout the diligence, negotiation, and auction process, Gateway has complied with the Bidding Procedures Order[3] and the Bidding Procedures. Gateway participated in the sales process in good faith, and on an arms' length basis. Indeed, pursuant to the Gateway Stalking Horse Agreement and Bidding Procedures Order, (a) the Debtors were free to solicit offers from and negotiate with any other party interested in acquiring the Purchased Assets; and

---

[3] *Order (I) Approving Bidding Procedures for the Sale of Substantially of the Debtors' Assets, (II) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (VI) Granting Related Relief* [Docket No. 201] (the "<u>Bidding Procedures Order</u>").

(b) Gateway agreed to subject its bid to the competitive process set forth in the Bidding Procedures Order and the Bidding Procedures.

8. Gateway has not engaged in any conduct that would cause or permit the Gateway Stalking Horse Agreement to be avoided under 11 U.S.C. § 363(n). Specifically, Gateway has not acted in a collusive manner with any person or entity with respect to the Purchased Assets, and Gateway did not enter into any agreement with another bidder or potential bidder that controlled the purchase price of the Purchased Assets.

9. To the best of my knowledge, information, and belief, Gateway is neither an "insider" nor an "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code.

10. For all of these reasons, Gateway has acted in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

*Adequate Assurance of Future Performance*

11. Following the closing of the sale, Gateway intends to operate the Acquired Business going forward, which will include satisfying its obligations under contracts that the Debtors will seek to assume and assign to Gateway (the "Assigned Contracts") in connection with the sale.[4]

12. Gateway has sufficient capital to perform under the Assigned Contracts on a go-forward basis and intends to perform under such contracts. The sale transaction and related obligations will be financed through (i) an equity commitment, and (ii) a senior secured

---

[4] Specifically, pursuant to the Gateway Stalking Horse Agreement, Gateway will assume (a) any cure amounts required to be paid pursuant to section 365 of the Bankruptcy Code, and (b) all Liabilities of the Debtors under the Assigned Contracts that are Current Liabilities or ProFlowers Current Liabilities (in each case as defined in the Gateway Stalking Horse Agreement).

financing facility, which includes term loans and a revolving credit facility. This credit facility will be available post-closing for general corporate purposes, including payments to be made under the Assigned Contracts.

13. On July 3, 2019, Gateway provided evidence of its ability to satisfy its obligations under the Assigned Contracts to counsel to the Debtors for the purpose of providing assurance of future performance to counterparties of potential Assigned Contracts. To the best of my knowledge and belief, no counterparty to a potential Assigned Contract has filed an objection to the adequacy of Gateway's assurance of future performance.

14. Based on these facts, I believe that Gateway has made the required showing of adequate assurance of future performance required by the Bankruptcy Code or otherwise.

Dated: August 7, 2019

/s/ Evan P. Glucoft
Evan P. Glucoft
Vice President
Gateway Mercury Holdings, LLC

13006216.4