**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| FTD Companies, Inc., <u>et al.</u>,[1] | Case No. 19-11240 (LSS) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF ALAN D. HOLTZ IN SUPPORT OF**
**THE (A) SALE OF THE FTD ASSETS AND THE RESTRUCTURED**
**PROFLOWERS BUSINESS TO GATEWAY MERCURY HOLDINGS, LLC**
**AND (B) SALE OF GOURMET FOODS TO SBGF ACQUISITION, LLC**

I, Alan D. Holtz, hereby declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am the appointed Chief Restructuring Officer of the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>"). In addition, I am a Managing Director of AlixPartners, LLP ("<u>AlixPartners</u>") and a Managing Director of AP Services, LLC ("<u>APS</u>"). I am authorized to make this declaration (this "<u>Declaration</u>") on behalf of the Debtors.

2. I submit this Declaration in support of the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to*

---

[1] The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce LLC (0019); and Provide Creations, Inc. (8964). The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

*Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice thereof and (F) Granting Related Relief; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 82] (the "Motion").[2]

3.    In particular, I submit this Declaration in support of the Debtors' decision to (a) transfer the FTD Assets and the Restructured ProFlowers Business pursuant to that certain *Second Amended and Restated Asset Purchase Agreement*, dated as of June 31, 2019, by and among Gateway Mercury Holdings, LLC ("Gateway"), as purchaser, and FTD, Inc., Florists' Transworld Delivery, Inc., FTD.COM Inc., FTD.CA, Inc., Provide Commerce, LLC, FlowerFarm, Inc. and Bloom That, Inc., as sellers (the "Gateway Purchase Agreement" and, the sale transactions contemplated thereby, the "Gateway Sale"), substantially in the form attached as Exhibit A to the *Notice of Auction Results in Connection with the Sale of the FTD Assets and the Restructured ProFlowers Business* [Docket No. 499]; and (b) transfer substantially all of the assets of Gourmet Foods pursuant to that certain *Asset Purchase Agreement*, dated as of July 31, 2019, by and among SBGF Acquisition, LLC ("SBGF"), as purchaser, and Provide Commerce LLC, as seller (the "SBGF Purchase Agreement" and, the sale transactions contemplated thereby, the "SBGF Sale"), substantially in the form attached as Exhibit A to the *Notice of Auction Results in Connection with the Sale of Gourmet Foods* [Docket No. 500], in each case, as a valid exercise of the Debtors' business judgment.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

4. Except as otherwise indicated, all statements set forth in this Declaration are based on (a) my personal knowledge; (b) my review of relevant documents; (c) information provided to me by AlixPartners and/or employees of APS working under my supervision; (d) information provided to me by, or discussions with, the Debtors' management team, employees or the Debtors' other advisors; or (e) my opinion based upon my experience.  If called to testify, I could and would testify to the facts and the opinions set forth herein.

## Qualifications

5. AlixPartners is an internationally recognized restructuring and turnaround firm with a wealth of experience in providing financial advisory services.  Since their inception in 1981, AlixPartners and APS each have enjoyed an excellent reputation for financial advisory, crisis management and restructuring-related services.  AlixPartners and APS have provided these services to debtors and other key constituents in numerous recent chapter 11 cases.  See, e.g., In re PG&E Corp., Case No. 19-30088 (DM) (Bankr. N.D. Cal. Jan. 29, 2019); In re Heritage Home Grp., LLC, et al., Case No. 18-11736 (KG) (Bankr. D. Del. Jul. 29, 2018); In re Video Equipment Rental, et al., Case No. 18-10834 (KG) (Bankr. D. Del. May 22, 2018); In re HCR Manorcare, Inc., et al., Case No. 18-10467 (KG) (Bankr. D. Del. Mar. 16, 2018); In re Velocity Holding Co., et al., Case No. 17-12442 (KJC) (Bankr. D. Del. Dec. 12, 2017); In re Appvion, Inc., et al., Case No. 17-12082 (KJC) (Bankr. D. Del. Oct. 30, 2017); In re The Gymboree Corp., et al., Case No. 17-32986 (KLP) (Bank. E.D. Va. July 26, 2017); In re BCBG Max Azria Global Holdings, et al., Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017); In re Eastern Outfitters, LLC, et al., Case No. 17-10243 (LSS) (Bankr. D. Del. Mar. 9, 2017).

6. I have over 31 years of experience advising clients on maximizing value, recoveries and financial returns in complex restructuring situations.  This experience includes

working with management teams and boards of directors of dozens of large companies facing financial challenges like those facing the Debtors.

7. I have a Bachelor of Science in Economics from the University of Pennsylvania. I am a Certified Insolvency and Restructuring Advisor; a member of the American Bankruptcy Institute; a member of the Turnaround Management Association; a member of the American Institute of Certified Public Accountants; and a past president of the Association of Insolvency and Restructuring Advisors.

8. The Debtors engaged AlixPartners in July 2018 to provide financial advisory and consulting services in connection with the Debtors' prepetition restructuring efforts. During the course of its engagement, AlixPartners has worked closely with the Debtors' management team and has become well-acquainted with the Debtors' capital structure, liquidity needs, business operations and workforce. Prior to the commencement of these chapter 11 cases, each Debtor appointed me to serve as its Associate Restructuring Officer.

**THE DEBTORS' SALE PROCESS**

9. As set forth in greater detail in the *Declaration of Alan D. Holtz in Support of the (I) Gateway Stalking Horse Motion, (II) Farids Stalking Horse Motion and (III) PlanetArt Stalking Horse Motion* [Docket No. 189] (the "Holtz Declaration"), the Debtors' management team worked closely with the Debtors' investment bankers, Moelis & Company LLC ("Moelis") and Piper Jaffray & Co. ("Piper Jaffray"), to develop and execute a strategic Sale Process to ensure that the Debtors would receive the highest or otherwise best value for their Assets.

A. **Auction and Sale of FTD Assets and Restructured ProFlowers Business**

10. After careful review of the indications of interest submitted in respect of their Assets, and with the advice of the Debtors' advisors, the Debtors determined, in their

reasonable business judgment, that it was in the best interests of the Debtors' businesses, restructuring efforts and stakeholders to pursue a stalking horse transaction with Gateway for the sale of the FTD Assets and the Restructured ProFlowers Business on the terms set forth in the Gateway Stalking Horse Agreement (as defined in the Holtz Declaration) executed on June 19, 2019 (the "Gateway Stalking Horse Bid").[3]

11.   Prior to and following the entry of the Bidding Procedures Order on June 25, 2019, the Debtors and Moelis continued marketing the FTD Assets and the Restructured ProFlowers Business to maximize the number of Qualified Bids received in respect of such Assets by the Bid Deadline, including a Baseline Bid that would improve the starting point for Qualified Bids at the Auction.[4]  In addition to the Gateway Stalking Horse Bid, the Debtors received two other Qualified Bids for the FTD Assets and the Restructured ProFlowers Business.

12.   After a thorough analysis of the three Qualified Bids, the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, selected the Qualified Bid submitted by Vine Holding Corporation ("Vine"), to serve as the Baseline Bid at the Auction for the FTD Assets and Restructured ProFlowers Business (the "Vine Baseline Bid").  The Vine Baseline Bid included a purchase price of approximately $102.5 million.[5]

---

[3]   As set forth in the *Declaration of Steve Bloom in Support of the Sale of the FTD Assets and the Restructured ProFlowers Business to Gateway Mercury Holdings, LLC* filed contemporaneously herewith (the "Bloom Declaration"), the Debtors expected to realize approximately $86 million in gross proceeds upon the closing of a sale on the terms set forth in the Gateway Stalking Horse Agreement.  *See* Bloom Decl. ¶ 10.

[4]   *See Order (I) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (VI) Granting Related Relief* [Docket No. 201] (the "Bidding Procedures Order").

[5]   As set forth in the Bloom Declaration the Debtors expected to realize approximately $90.1 million in gross proceeds upon the closing of a sale on the terms set forth in the Vine Baseline Bid. *See* Bloom Decl. ¶ 16.

5

RLF1 21830891v.1

13. Prior to the commencement of the Auction, the Debtors notified each of the parties that had submitted Qualified Bids of their status as Qualified Bidders eligible to participate in the Auction and of the selection and material terms of the Vine Baseline Bid.

14. In accordance with the Bidding Procedures Order and the Bidding Procedures, on July 31, 2019, the Debtors held an Auction for the FTD Assets and the Restructured ProFlowers Business. Ultimately, only Gateway and Vine elected to participate in the Auction.

15. The Auction for the FTD Assets and Restructured ProFlowers Business concluded after several rounds of active and competitive bidding by Gateway and Vine. After careful deliberation with their advisors and consulting with the Consultation Parties, the Debtors selected the final bid submitted by Gateway as the highest or otherwise best bid for the FTD Assets and the Restructured ProFlowers Business (the "Gateway Successful Bid"). The Gateway Successful Bid includes cash consideration of approximately $110.86 million, allows the Debtors to avoid the payment of the Termination Payment in the approximate amount of $3.64 million, includes a "ticking" fee of $200,000 per day for each day the Gateway Sale fails to close after August 15, 2019, through August 20, 2019, and includes the assumption of employee paid time off obligations in the estimated amount of approximately $2.4 million.[6]

16. Based upon the results of the Auction and the Debtors' marketing efforts prior thereto, I believe the Debtors' determination that the Gateway Sale will yield the highest or otherwise best value for the FTD Assets and the Restructured ProFlowers Business constitutes an exercise of the Debtors' reasonable business judgment and is in the best interests of the Debtors' estates, their restructuring efforts and their stakeholders.

---

[6] As set forth in the Bloom Declaration, the Debtors expect to realize approximately $103.1 million in gross proceeds upon the closing of the Gateway Sale. *See* Bloom Decl. ¶ 20.

17.     In addition, to the best of my knowledge, and as confirmed by representatives of Gateway and Vine on the record at the Auction, there was no collusion by or among any of the Debtors, Qualified Bidders or any other party that participated in the Auction with respect to the FTD Assets and the Restructured ProFlowers Business.  In my opinion, the Gateway Successful Bid is the result of an open, fair and competitive process.

**B.     Auction and Sale of Gourmet Foods**

18.     After careful review of the indications of interest submitted in respect of their Assets, and with the advice of the Debtors' advisors, the Debtors determined, in their reasonable business judgment, that it was in the best interests of the Debtors' businesses, restructuring efforts and stakeholders to pursue a stalking horse transaction with Farids & Co. LLC ("Farids") for the sale of Gourmet Foods on the terms set forth in the Farids Stalking Horse Agreement (as defined in the Holtz Declaration) executed on June 23, 2019 (the "Farids Stalking Horse Bid").

19.     Prior to and following the entry of the Bidding Procedures Order, the Debtors and Piper Jaffray continued marketing Gourmet Foods to maximize the number of Qualified Bids received for the business by the Bid Deadline, including a Baseline Bid that would improve the starting point for Qualified Bids at the Auction.  Other than Farids, SBGF was the only entity that submitted a Qualified Bid for Gourmet Foods.  The Qualified Bid submitted by SBGF was a bid for an asset-only purchase, as opposed to a going-concern sale of Gourmet Foods. Accordingly, to accurately value and compare the Qualified Bids, the Debtors, with the assistance of their advisors and in consultation with the Consultation Parties, worked to analyze and estimate the administrative expenses that would arise from a wind-down of the Gourmet Foods business in connection with the proposed SBGF sale.

20. After a thorough analysis of the two Qualified Bids, the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, selected the Qualified Bid submitted by SBGF to serve as the Baseline Bid at the Auction for Gourmet Foods (the "SBGF Baseline Bid"). The SBGF Baseline Bid included a purchase price of approximately $13 million, which, based upon the Debtors' estimates was sufficient to meet the minimum overbid requirement of $500,000 after taking into account the additional administrative expenses the Debtors' estates would incur or bear in connection with the asset-only sale contemplated by the SBGF Baseline Bid.

21. Prior to the commencement of the Auction for Gourmet Foods, the Debtors notified Farids and SBGF of their status as Qualified Bidders eligible to participate in the Auction, the selection and material terms of the SBGF Baseline Bid and the Minimum Overbid amount.

22. In accordance with the Bidding Procedures Order and the Bidding Procedures, on July 31, 2019, the Debtors held an Auction for Gourmet Foods.

23. The Auction for Gourmet Foods ended after a number of rounds of active and competitive bidding by Farids and SBGF. After careful deliberation with their advisors and consulting with the Consultation Parties, the Debtors selected the final bid submitted by SBGF as the highest or otherwise best bid for Gourmet Foods (the "SBGF Successful Bid"). The SBGF Successful Bid includes a purchase price of $20.5 million.

24. Based upon the results of the Auction and the Debtors' marketing efforts prior thereto, I believe the Debtors' determination that the SBGF Sale will yield the highest or otherwise best value for Gourmet Foods constitutes an exercise of the Debtors' reasonable business judgment and is in the best interests of the Debtors' estates, their restructuring efforts and their stakeholders.

25. Finally, to the best of my knowledge, and as confirmed by representatives of SBGF and Farids on the record at the Auction, there was no collusion by or among any of the Debtors, Qualified Bidders or any other party that participated in the Auction with respect to Gourmet Foods. In my opinion, the SBGF Successful Bid is the result of an open, fair and competitive process.

Dated: August 7, 2019

      /s/  Alan D. Holtz
Alan D. Holtz
Chief Restructuring Officer
FTD Companies, Inc.