## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FTD Companies, Inc., <u>et al.</u>,[1] | : | Case No. 19-11240 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | Docket Nos. 82, 185 |
| | : | |

## ORDER (I) APPROVING THE SALE OF THE FTD ASSETS AND RESTRUCTURED PROFLOWERS BUSINESS AND RELATED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO GATEWAY MERCURY HOLDINGS, LLC, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH AND (III) GRANTING RELATED RELIEF

This matter coming before the Court on the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired*

---

[1] The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses):  FTD Companies, Inc. (5852); Bloom That, Inc. (9936); Florists' Transworld Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); FTD, Inc. (1271); FTD.CA, Inc. (7556); FTD.COM Inc. (4509); FTD Group, Inc. (9190); FTD Mobile, Inc. (7423); Giftco, LLC (5832); Provide Cards, Inc. (3462); Provide Commerce LLC (0019); and Provide Creations, Inc. (8964).  The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, Illinois 60515.

*Leases and (C) Granting Related Relief* (the "<u>Sale Motion</u>") [Docket No. 82],[2] filed by the debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>"); and the Court having previously entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (VI) Granting Related Relief* [Docket No. 201] (the "<u>Bidding Procedures Order</u>") and the *Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Gateway Stalking Horse Agreement and (II) Granting Related Relief* [Docket No. 201]; and Gateway Mercury Holdings, LLC ("<u>Gateway</u>" or the "<u>Purchaser</u>") having submitted the highest or best bid for the Purchased Assets (as defined in the Asset Purchase Agreement), as reflected in that certain Second Amended and Restated Asset Purchase Agreement, dated as of July 31, 2019, by and among Gateway and FTD, Inc. and the other Sellers party thereto (the "<u>Asset Purchase Agreement</u>" and the Transactions contemplated thereby and as defined therein, the "<u>FTD Sale Transaction</u>"), a copy of which is attached as <u>Exhibit A</u> to the *Notice of Auction Results in Connection With the Sale of the FTD Assets and the Restructured ProFlowers Business* [Docket No. 499] (the "<u>Notice of Auction Results</u>"); and the Court having conducted a hearing to consider certain relief requested in the Sale Motion, as it pertained to the FTD Sale Transaction and the sale of Gourmet Foods to SBGF Acquisition, LLC, on August 9, 2019 (the "<u>Sale Hearing</u>"), at which time all interested parties were offered an opportunity to be heard with

---

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Motion or the Asset Purchase Agreement (as hereinafter defined), as applicable.

respect to the Sale Motion; and the Court having reviewed and considered (i) the Sale Motion, (ii) the Asset Purchase Agreement, (iii) the Bidding Procedures Order and the record of the hearing before the Court on June 25, 2019, after which hearing the Court entered the Bidding Procedures Order, (iv) the *Order (I) Authorizing the Debtors to Provide Bidding Protections in Accordance with the Bidding Procedures and the Gateway Stalking Horse Agreement and (II) Granting Related Relief* [Docket No. 306] (the "Gateway Bidding Protections Order") and the record of the hearing before the Court on July 2, 2019, after which hearing the Court entered the Gateway Bidding Protections Order, (v) the *Declaration of Alan D. Holtz in Support of the (A) Sale of the FTD Assets and the Restructured ProFlowers Business to Gateway Mercury Holdings, LLC and (B) Sale of Gourmet Foods to SBGF Acquisition, LLC* [Docket No. 525], (vi) the *Declaration of Steven Bloom in Support of the Sale of the FTD Assets and the Restructured ProFlowers Business to Gateway Mercury Holdings, LLC* [Docket No. 524], (vii) the *Declaration of Evan P. Glucoft in Support of the Sale of the FTD Assets and the Restructured ProFlowers Business* [Docket No. 518] and (viii) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion, as it related to the FTD Sale Transaction, is in the best interest of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    <u>Jurisdiction and Venue</u>.    This Court has jurisdiction to consider the Sale Motion and the relief requested therein, including the FTD Sale Transaction, pursuant to 28 U.S.C. §§ 157 and 1134 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Final Order</u>.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.    <u>Statutory Predicates</u>.    The statutory and other legal predicates for the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, 6006, 9007 and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

D.    <u>Notice and Opportunity to Be Heard</u>.    As evidenced with the certificates of service filed with the Court [Docket Nos. 115, 116, 128, 221, 222, 223, 230, 314, 335, 338, 439, 533], the Debtors have provided proper, timely, adequate and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion, solely as it relates to the FTD Sale Transaction, the Bidding Procedures, the Auction, the Sale

---

[3]    The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.    The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

Hearing, the FTD Sale Transaction free and clear of any Liens within the meaning of section 363(f) of the Bankruptcy Code, the *Notice of (I) Adjournment of Auction and Sale Hearing for (A) the FTD Assets and Provide Commerce and (B) Gourmet Foods and (II) Extension of Certain Deadlines Set Forth in Bidding Procedures* [Docket No. 420], the *Notice of Auction Results, the Assumption and Assignment Notice* [Docket No. 286], the *Notice of Filing of Amendments to Cure Costs and Potential Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale of Substantially All Assets* [Docket No. 448] (the "Amended Assumption and Assignment Notice") and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to Purchaser at Closing (as defined in the Asset Purchase Agreement) pursuant to this Order and the terms of the Asset Purchase Agreement (collectively, the "Purchased Contracts"), in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9007 and 9014, Local Rules 2002-1, 6004-1 and 9006-1 and the Bidding Procedures Order, to all persons and entities entitled to such notice, including the Sale Notice Parties (as defined in the Bidding Procedures) and all other persons and entities as directed by the Court. Such notice was good, sufficient and appropriate under the circumstances, and no other or further notice of any of the foregoing is required.  With respect to parties in interest whose identities could not be reasonably ascertained by the Debtors, the Publication Notice published in the national edition of *USA Today* on July 1, 2019 and in the *Chicago Tribune* on July 1, 2019 was sufficient and reasonably calculated to provide notice to such parties under the circumstances.

       E.    <u>Disclosures</u>.  The disclosures made by the Debtors in the Sale Motion, the Sale Notice, the Assumption and Assignment Notice, the Notice of Auction Results and all

other related notices and documents filed with the Court concerning the Asset Purchase Agreement and FTD Sale Transaction were complete and adequate.

F.    <u>Sound Business Purpose</u>.    The Debtors have demonstrated good, sufficient and sound business purposes and justifications for approval of the Sale Motion, solely as it relates to the FTD Sale Transaction, and the approval of and entry into the FTD Sale Transaction, the Asset Purchase Agreement and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.    Business justifications for entry into the FTD Sale Transaction and the Asset Purchase Agreement include, without limitation, (a) the Asset Purchase Agreement constitutes the highest or best offer received for the Purchased Assets; (b) the Asset Purchase Agreement presents the best opportunity to maximize the value of the Purchased Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (c) failure to consummate the FTD Sale Transaction expeditiously, as provided under the Asset Purchase Agreement, could materially diminish creditor recoveries; and (d) the immediate consummation of the FTD Sale Transaction is necessary to maximize the value of the Debtors' estates.

G.    <u>Compliance with Bidding Procedures</u>.    The Debtors conducted an open and fair sale process in connection with the FTD Sale Transaction.    The sale process was non-collusive in all respects, and all interested parties were provided a full, fair and reasonable opportunity to make an offer to purchase the Purchased Assets.    The Debtors, the Purchaser and their respective counsel and other advisors have complied with the Bidding Procedures and the

-6-

Bidding Procedures Order.

H.    <u>Highest or Best Value</u>.    The Debtors determined, in their reasonable business judgment, in a manner consistent with their fiduciary duties and, in consultation with the Consultation Parties, that the Purchaser's Qualified Bid, as documented in the Asset Purchase Agreement, was the highest or otherwise best Qualified Bid for the Purchased Assets. Consummating the FTD Sale Transaction will yield greater value to the Debtors' estates than would have been provided by any other available alternative transaction.

I.    <u>Fair Consideration</u>.    The consideration the Purchaser will pay under the Asset Purchase Agreement constitutes (i) fair and reasonable consideration for the Purchased Assets; and (ii) reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States, any state, territory, possession thereof or the District of Columbia.

J.    <u>Free and Clear Sale</u>.    The Debtors may sell the Purchased Assets free and clear of all Liens (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Liens that objected to the FTD Sale Transaction or the Sale Motion, solely as it relates to the FTD Sale Transaction, and that have a Lien on the Purchased Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Lien pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f) and, therefore, are adequately protected by having their Liens on the Purchased Assets attach solely to the proceeds of the FTD Sale Transaction ultimately attributable to the sale of the property on

-7-

which such holders have a Lien, in the same order of priority, and with the same validity, force and effect that such Liens had prior to the consummation of the FTD Sale Transaction, subject to any rights, claims or defenses of the Debtors and their estates.  Any Lien holders that did not object, or that withdrew their objections, to the Sale Motion, solely as it relates to the FTD Sale Transaction, or the FTD Sale Transaction, are deemed to have consented to the sale of the Purchased Assets free and clear of their respective Liens on the Purchased Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

K.    <u>Purchaser's Reliance on Free and Clear Sale</u>.  The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the FTD Sale Transaction or the other transactions contemplated thereby if the sale of the Purchased Assets were not free and clear of all Liens, or if the Purchaser would, or in the future could, be liable for any such Liens.  A sale of the Purchased Assets other than one free and clear of all Liens would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Purchased Assets and the Debtors' estates, with less certainty than provided by the FTD Sale Transaction.  The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Liens, including, without limitation, any potential derivative, vicarious, transferee or successor liability Liens.

L.    <u>No Consumer Privacy Ombudsman</u>. The Debtors' published policy in connection with offering products or services permits the transfer of personally identifiable information and therefore, the sale of the Purchased Assets may be approved by section 363(b)(1)(A) of the Bankruptcy Code without the appointment of a consumer privacy

ombudsman, as defined in section 363(b)(1) of the Bankruptcy Code.

M.    <u>No Successor or Other Derivative Liability</u>.  By consummating the FTD Sale Transaction pursuant to the Asset Purchase Agreement, the Purchaser is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Purchaser and any Debtor.  The Purchaser is not holding itself out as a continuation of any Debtor.  The Purchaser is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the FTD Sale Transaction does not amount to a consolidation, merger or <u>de</u> <u>facto</u> merger of the Purchaser and the Debtors or any of the Debtors' estates.  Neither the Purchaser nor any of its affiliates or their respective successors, assigns, members, partners, principals or shareholders (or the equivalent thereof) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Asset Purchase Agreement.  The sale and transfer of the Purchased Assets to the Purchaser, including the assumption by the Debtors and assignment, transfer and/or sale to the Purchaser of any of the Purchased Contracts, will not subject the Purchaser to any liability with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, except that, upon the Closing, the Purchaser shall remain liable for the applicable Assumed Liabilities (as defined in the Asset Purchase Agreement).

N.    <u>Good Faith</u>.  The Debtors, the Purchaser and their respective counsel and other advisors have negotiated and entered into the Asset Purchase Agreement and each of the transactions contemplated thereby in good faith, without collusion and from arms'-length bargaining positions.  The Purchaser is a good-faith purchaser and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the

RLF1 21851004v.2

protections afforded thereby.  The Debtors were free to deal with any other party interested in acquiring all or some of the Purchased Assets.   Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the FTD Sale Transaction, the Asset Purchase Agreement or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code.   The Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction.   Specifically, the Purchaser has not acted in a collusive manner with any person or entity, and the Purchaser's participation in and bidding at the Auction were not controlled by any agreement among bidders.  All payments to be made by the Purchaser and all agreements entered into by the Purchaser and the Debtors under the Asset Purchase Agreement in connection with the FTD Sale Transaction have been disclosed and are appropriate.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under laws of the United States, any state, territory, possession or the District of Columbia.

O.    <u>Insider Status</u>.  The Purchaser is not an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders (or the equivalent thereof) exists between the Purchaser and any of the Debtors.

P.    <u>Assumption and Assignment of Purchased Contracts</u>.  The assumption and assignment of the Purchased Contracts are an integral part of the FTD Sale Transaction, are in the best interests of the Debtors and their estates and represent the valid and reasonable exercise of the Debtors' sound business judgment.   Specifically, the assumption and assignment of the Purchased Contracts (i) are necessary to sell the Purchased Assets to the

Purchaser as contemplated by the Asset Purchase Agreement, (ii) allow the Debtors to sell the Purchased Assets to the Purchaser as a going concern, (iii) limit the losses suffered by the Counterparties to the Purchased Contracts and (iv) maximize the recoveries of other creditors of the Debtors by eliminating claims against the Debtors' estates that would arise from the Debtors' rejection of the Purchased Contracts.  Any Counterparty to any Purchased Contract that has not actually filed with the Court and served on the Objection Notice Parties (as defined in the Bidding Procedures) an objection to the assumption and/or assignment of such Purchased Contracts as of the date specified in the Bidding Procedures Order (as such date may have been modified or extended in accordance with the terms of the Bidding Procedures Order) is deemed to have consented to the assumption and assignment of the Purchased Contracts.

Q.    <u>Compliance with Section 365 of the Bankruptcy Code</u>.  The Debtors have met all requirements of section 365(b) of the Bankruptcy Code with respect to the assumption and assignment of each of the Purchased Contracts.  The Debtors have provided adequate assurance (within the meaning of section 365(b)(1) of the Bankruptcy Code) of cure of any default existing under any of the Purchased Contracts on or before the Closing Date (as defined in the Asset Purchase Agreement).  The Purchaser has demonstrated adequate assurance of future performance of and under the Purchased Contracts within the meaning of sections 365(b)(1)(C), 365(f)(2)(B) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Purchased Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the Purchased Contracts or other restrictions prohibiting their assignment or transfer.

RLF1 21851004v.2

R.    <u>Property of the Estates</u>.  The Purchased Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

S.    <u>Validity of the FTD Sale Transaction</u>.  The consummation of the FTD Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been complied with in all respects in connection with the FTD Sale Transaction.  As of the Closing, the transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, including the assigned Purchased Contracts, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets free and clear of all Liens.  The Debtors have full corporate or other applicable authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the FTD Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors.  Upon entry of this Order, other than any consents identified in the Asset Purchase Agreement, no consent or approval from any other person, entity or legal authority is required to consummate the FTD Sale Transaction.

T.    <u>No Sub Rosa Plan</u>.  Neither the FTD Sale Transaction nor the Asset Purchase Agreement impermissibly restructures the rights of any of the Debtors' creditors or impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.  Neither the FTD Sale Transaction nor the Asset Purchase Agreement constitutes a <u>sub rosa</u> or <u>de facto</u> plan of reorganization or liquidation, as neither proposes to (i) impair or restructure any existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors; (iii) circumvent chapter 11 safeguards, such

as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests or extend debt maturities.

U.    No Stay of Order.    Time is of the essence to implement the Asset Purchase Agreement and consummate the FTD Sale Transaction.  The FTD Sale Transaction must be approved and consummated promptly in order to preserve the value of the Purchased Assets and to ensure the Debtors' compliance with their obligations under their post-petition financing agreements. The Debtors have demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the FTD Sale Transaction as contemplated by the Asset Purchase Agreement. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    Sale Motion Granted.  The Sale Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or otherwise), solely as the Sale Motion and the relief requested therein related to the FTD Sale Transaction, are GRANTED and approved as set forth herein.

2.    Objections Overruled.  Any objections to the Sale Motion or the relief requested therein, solely as such relate to the FTD Sale Transaction, that have not been withdrawn, waived or settled and all reservations of rights included in such objections are hereby overruled on the merits with prejudice.

3.    FTD Sale Transaction Approved.   The Asset Purchase Agreement and all transactions contemplated thereby are APPROVED.

4.    Debtors' Performance Authorized.   The Debtors are hereby authorized

and directed to enter into and perform their obligations under the Asset Purchase Agreement, and to take such other actions as may be necessary or desirable to effectuate the terms of the Asset Purchase Agreement and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, the FTD Sale Transaction or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and any other instruments of transfer, without further order of the Court.  The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Purchaser or otherwise for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to the Purchaser's possession any or all of the Purchased Assets, including the Purchased Contracts, as may be necessary or appropriate for the Debtors to perform their obligations under the Asset Purchase Agreement and consummate the FTD Sale Transaction, without further order of the Court.

5.    The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents with respect to the Purchased Assets that are necessary or appropriate to effectuate the Asset Purchase Agreement, the FTD Sale Transaction or this Order, including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

6.    Valid Transfer.  Effective as of the Closing Date, the sale and assignment of the Purchased Assets and the Purchased Contracts by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Purchased Assets and the Purchased

-14-

Contracts, notwithstanding any requirement for approval or consent by any person, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets and the Purchased Contracts, free and clear of all Liens (other than any Liens expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

7.      <u>Free and Clear Sale</u>.  Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing Date, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and transfer to the Purchaser the Purchased Assets.  The sale and transfer of the Purchased Assets to the Purchaser shall vest the Purchaser with all right, title and interest of the Debtor in and to the Purchased Assets free and clear of any and all Liens of any person or entity, with all such Liens to attach to the net proceeds of the FTD Sale Transaction ultimately attributable to the sale of the property on which such holders have a Lien, in the same order of priority, and with the same validity, force and effect that such Liens had prior to the consummation of the FTD Sale Transaction, subject to any rights, claims or defenses of the Debtors or their estates.  Following the Closing, no holder of any Lien on any of the Purchased Assets shall interfere with the Purchaser's use or enjoyment of any of the Purchased Assets based on or related to such Lien or any actions that the Debtors have taken or may take in their Chapter 11 Cases.

8.      The provisions of this Order authorizing the sale and transfer of the Purchased Assets free and clear of Liens shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate or implement the provisions of

this Order.  For the avoidance of doubt, on or after the Closing Date, the Debtors and/or the Purchaser shall be authorized, but not directed, to file any such releases, termination statements, assignments, consents or other instruments in any jurisdiction to record the release, discharge and termination of Liens on the Acquired Assets pursuant to the terms of this Order.

9.    <u>Direction to Creditors</u>.    This Order shall be (a) effective as a determination that, as of the Closing Date, all Liens on the Purchased Assets (excepted as otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) shall be unconditionally released, discharged and terminated as to the Purchaser and the Purchased Assets; and (b) binding upon all persons and entities, including all the Debtors' creditors and any holder of a Lien on any of the Purchased Assets, and all such persons and entities are hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release their respective Liens on the Purchased Assets, if any.  If any person or entity that has filed a financing statement, mortgage, mechanics lien, <u>lis pendens</u> or other document, instrument, notice or agreement evidencing any Lien on the Purchased Assets has not delivered to the Debtors on or before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Purchased Assets, the Debtors and/or the Purchaser are authorized to (x) execute and file such termination statements, releases, instruments of satisfaction or other documents with respect to the Purchased Assets on behalf of the applicable person or entity; and (y) file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens on the Purchased Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state,

local, tribal or foreign government agency, department or office.

10.    <u>Authorization of Recording Officers</u>.  This Order shall be binding upon all persons and entities, including filing agents or officers, title agents or companies, recorders of mortgages or deeds, registrars, administrative agencies, governmental units or departments, secretaries of state, governmental officials and all other persons or entities that may be required by operation of law, the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments regarding the Purchased Assets or who may be required to report or insure any title or state of title in or to the Purchased Assets, (collectively, the "<u>Recording Officers</u>").  All Recording Officers are hereby authorized to (a) accept any and all documents or instruments necessary and appropriate to consummate the FTD Sale Transaction or to record and reflect that the Purchaser is the owner of the Purchased Assets free and clear of all Liens (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement) and (b) strike all recorded Liens on the Purchased Assets from their records.

11.    <u>Direction to Surrender the Purchased Assets</u>.  All persons or entities in possession or control of any of the Purchased Assets, either presently or on or before the Closing Date, are directed to surrender possession or control of the Purchased Assets to the Purchaser on the Closing Date.

12.    <u>No Successor Liability</u>.  The Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or the equivalent thereof) are not and shall not be (a) deemed a "successor" in any respect to any of the Debtors or any of their estates as a result of the consummation of the FTD Sale Transaction or any other event occurring in the Debtors' Chapter 11 Cases under any

-17-

theory of law or equity; (b) deemed to have, de facto or otherwise, merged or consolidated with or into any of the Debtors or any of their estates; (c) deemed to be an alter ego of or have a common identity with any of the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, including (with respect to clause (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, products liability or other law, doctrine rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtors' liability under such law, doctrine, rule or regulation.

13.     The Purchaser shall not assume, nor be deemed to have assumed or in any way be responsible for any liability or obligation, of any of the Debtors or any of their estates including, but not limited to, any Excluded Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors or similar liability, except as otherwise expressly provided in the Asset Purchase Agreement; and the Sale Motion and the Sale Notice, solely as such relate to the FTD Sale Transaction, and Notice of Auction Results contain sufficient notice of such limitation in accordance with applicable law.  Except for the Assumed Liabilities, the transfer of the Purchased Assets and the Purchased Contracts to the Purchaser under the Asset Purchase Agreement shall not result in (a) the Purchaser, its affiliates or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or any of the Purchased Assets having any liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors (including, without limitation, Excluded Liabilities); (b) the Purchaser, its affiliates or

-18-

any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or any of the Purchased Assets having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff, recoupment or otherwise, directly or indirectly, any Liens or Excluded Liabilities; or (c) the Purchaser, its affiliates or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or any of the Purchased Assets having any liability or responsibility to any of the Debtors except as is expressly set forth in the Asset Purchase Agreement.

14.    Effective upon the Closing Date, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Purchaser, its assets (including the Purchased Assets) or its successors or assigns, with respect to any (a) Lien on the Purchased Assets or (b) successor, transferee, vicarious or other similar liability or theory of liability, including (i) commencing or continuing any action or other proceeding pending or threatened, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of the Court or the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Lien; or (iv) asserting any setoff or right of subrogation of any kind.

15.    <u>Assumption and Assignment of Purchased Contracts</u>.    Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the

closing of the FTD Sale Transaction, the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser free and clear of all Liens pursuant to the terms of the Asset Purchase Agreement, as modified by the terms of any amendments reached by the Purchaser and the respective Counterparty, is hereby approved, and the requirements of sections 365(b)(1), 365(f)(2) and 365(b)(3) (to the extent applicable) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser, and subject to payment of the Cure Costs (as defined herein), each applicable Counterparty shall be forever barred, estopped and permanently enjoined from raising or asserting against the Debtors, the Purchaser or their respective property, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, known or unknown, liquidated or unliquidated senior or subordinate), counterclaim, defense, setoff or any other matter arising under or out of, in connection with or in any way related to, the Purchased Contracts existing as of the Closing Date or arising by reason of the Closing; provided, however, that Purchaser shall be responsible for all obligations arising or occurring under the Purchased Contracts after the Closing Date as provided in the Asset Purchase Agreement, and for the payment of any accrued but unbilled obligations with respect to any year-end adjustments or reconciliations when billed in accordance with the terms of the Purchased Contracts that become due and owing after the Closing Date (irrespective of whether such obligations accrued or relate to the period before the Closing Date).[4]  Upon the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser, and subject to Purchaser's payment of the Cure Costs, the Purchaser shall be fully and irrevocably vested with

---

[4]     For the avoidance of doubt, nothing in this paragraph 15 shall alter the terms of the Asset Purchase Agreement with respect to the adjustments contemplated under section 3 of the Asset Purchase Agreement.

all right, tile and interest of the Debtors in and to the Purchased Contracts.  The Debtors' assumption and assignment of the Purchased Contracts to the Purchaser shall not constitute a default under or a termination of any Purchased Contract.

16.    The Debtors Shall Not Retain Liability for the Purchased Contracts and Assumed Liabilities.  Effective as of the Closing Date, (a) the assumption of the Purchased Contracts and the Assumed Liabilities by the Purchaser constitutes a legal, valid, effective, complete and absolute sale, conveyance and transfer from the Debtors to the Purchaser of any and all Liabilities relating to, in connection with or arising under the Purchased Contracts and Assumed Liabilities, and (b) the Debtors shall have no liability to Purchaser or any other Person for any Liabilities with respect to the Purchased Contracts and such Assumed Liabilities. Further, it is the Parties' express intention that the FTD Sale Transaction be, and be treated for all purposes, as an absolute sale, conveyance and transfer of all Liabilities relating to, in connection with or arising under the Purchased Contracts and Assumed Liabilities.

17.    Cure Obligations.  The payment of the cure costs as set forth in the Assumption and Assignment Notice, the Amended Assumption and Assignment Notice or as otherwise agreed upon between Purchaser and any counterparty, due under the Purchased Contracts pursuant to section 365(b) of the Bankruptcy Code (the "Cure Costs") by the Purchaser shall cure all monetary defaults existing thereunder as of the assignment of the Purchased Contracts and shall compensate the counterparties to the Purchased Contracts for actual pecuniary loss resulting from such default.

18.    Cure Objections.  Any objections to the Debtors' calculation of Cure Costs with respect to any of the Purchased Contracts (each such objection, a "Cure Objection"), that have not been resolved by the parties by the Sale Hearing may be heard at a later date as set

by the Court and may be resolved after the Closing Date.  For any Cure Objection that has not

been overruled, withdrawn, waived, settled or otherwise resolved by the Sale Hearing, within

five business days after the entry of this Order, the Purchaser shall reserve funds in an amount

sufficient to pay the disputed cure amounts set forth in the Cure Objection in full, and shall

promptly pay the Cure Costs as are ultimately agreed by the parties or as determined by this

Court.  The pendency of a dispute relating to a particular Purchased Contract shall not prevent

or delay the assumption or assignment of any other Purchased Contract or the closing of the

FTD Sale Transaction; provided, however, that upon resolution of a Cure Objection, the

Purchaser may elect, subject to the Debtors' rights in paragraph 26 of the Bidding Procedures

Order, to exclude such contract or lease as a Purchased Contract.

19.    Adequate Assurance.  The Purchaser has provided adequate assurance of

future performance under the Purchased Contracts within the meaning of sections 365(b)(1)(C),

365(f)(2)(B) and 365(365(b)(3) (to the extent applicable) of the Bankruptcy Code.  Any

Adequate Assurance Objections (as defined in the Sale Motion) that have not been withdrawn,

waived or settled and all reservations of rights included in such objections are hereby

overruled on the merits with prejudice. All other requirements and conditions under sections

363 and 365 of the Bankruptcy Code for the Debtors' assumption and assignment of the

Purchased Contracts to the Purchaser have been satisfied in accordance with the terms of this

Order.

20.    Anti-Assignment Provisions Unenforceable.  No section or provision of

any Purchased Contract that purports to (a) prohibit, restrict or condition the assignment of a

Purchased Contract, including, but not limited to, the conditioning of such assignment on the

consent of any Counterparty to such Purchased Contract; (b) authorize the termination,

cancellation or modification of a Purchased Contract based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the Counterparty to a Purchased Contract, or modification of any term or condition upon the assignment of a Purchased Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and any such section or provision constitutes an unenforceable anti-assignment provision under section 365(f) of the Bankruptcy Code and/or is otherwise unenforceable under section 365(e) of the Bankruptcy Code.

21.    <u>Direction to Contract Counterparties</u>.    All Counterparties to Purchased Contracts assigned to the Purchaser in accordance with the terms of this Order and the Asset Purchase Agreement shall cooperate with, and expeditiously execute and deliver upon, any reasonable request of the Purchaser for any instruments, applications, consents or other documents that may be required or requested by any governmental unit or other public or quasi-public authority or other party to effectuate the applicable transfers in connection with the Debtors' assumption and assignment of the Purchased Contracts to the Purchaser.

22.    <u>Licenses and Permits</u>.    To the extent provided in the Asset Purchase Agreement and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Purchased Assets and the Purchased Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser

-23-

as of the Closing Date.  To the extent any license or permit necessary for the operation of the Purchased Assets is determined not to be an executory contract that may be assumed and assigned under section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such license or permit of the Debtors shall remain in place for the Purchaser's benefit until a new license or permit is obtained.

23.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the FTD Sale Transaction.

24.    <u>Purchase of Avoidance Actions</u>.  Pursuant to this Order, the (i) Purchaser is authorized to and shall purchase and acquire all avoidance claims or causes of action of the Sellers arising under sections 544, 547, 548, 549 and 550 of the Bankruptcy Code and any similar state law (the "<u>Avoidance Actions</u>") against counterparties to Purchased Contracts and the vendors, landlords, and services providers used in the acquired business to the extent of such parties' relationship with the acquired business, and all other claims or causes of action of the Sellers against counterparties to Purchased Contracts and the vendors, landlords, or service providers used in the acquired business to the extent of such parties' relationship with the acquired business under any other provision of the Bankruptcy Code or applicable Laws, and (ii) the Purchaser, or any other person claiming by, through or on behalf of the Purchaser (including by operation of law, sale, assignment, conveyance or otherwise) shall not pursue, prosecute, litigate, institute or commence an action based on, assert, sell, convey, assign or file any claim that relates to the Avoidance Actions.  For the avoidance of doubt, the Purchaser is

not purchasing any claims or causes of action against insiders of the Debtors.

25.    <u>Return of Assets and Liabilities</u>. As set forth in Section 2.6(b) of the Asset Purchase Agreement, if after the Closing (i) Purchaser or its designee holds any Excluded Assets or Excluded Liabilities or (ii) any Debtor holds any Purchased Assets or Assumed Liabilities, Purchaser or the applicable Debtor shall promptly transfer (or cause to be transferred) such assets or assume (or cause to be assumed) such Liabilities to or from (as the case may be) the other Party.  Prior to any such transfer, the Party receiving or possessing any such asset shall hold it in trust for such other Party.  Without limiting the generality of the foregoing, in the event that any Debtor receives any payment from a third party after the Closing Date pursuant to any of the Purchased Contracts (or with respect to the operation by Purchaser of the Acquired Business or any Purchased Asset during the post-Closing period) and to the extent such payment is not in respect of an Excluded Asset or a Excluded Liability, Debtors shall forward such payment, as promptly as practicable but in any event within 30 days after such receipt, to Purchaser and notify such third party to remit all future payments (in each case, to the extent such payment is in respect of any post-Closing period with respect to the Acquired Business and is not in respect of an Excluded Asset or an Excluded Liability) pursuant to the Purchased Contracts to Purchaser.  Similarly, in the event that Purchaser receives any payment from a third party after the Closing on account of, or in connection with, any Excluded Asset, Purchaser shall forward such payment, as promptly as practicable but in any event within 30 days after such receipt, to Debtors and notify such third party to remit all future payments on account of or in connection with the Excluded Assets to Debtors.

26.    <u>Good-Faith Purchaser</u>.  The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections

-25-

afforded thereby.  Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification on appeal of this Order approving the FTD Sale Transaction under subsection (b) or (c) of section 363 of the Bankruptcy Code does not affect the validity of the FTD Sale Transaction under this Order to the Purchaser, which purchased the Purchased Assets in good faith, whether or not the Purchaser knew of the pendency of the appeal, unless this Order and the FTD Sale Transaction were stayed pending appeal.

27.     No Avoidance.  Neither the FTD Sale Transaction nor the Asset Purchase Agreement is subject to avoidance, and no party is entitled to any damages or other recovery in connection therewith under section 363(n) of the Bankruptcy Code.

28.     Bulk Sales.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the FTD Sale Transaction.

29.     Amendments.    The Asset Purchase Agreement may be amended, supplemented or otherwise modified by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided, that, any such amendment, supplement or modification shall not have a material adverse effect on the Debtors' estates.

30.     Binding Order.  This Order and the Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the  Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case of any of the Debtors if any of these Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7 or dismissed, all creditors of any and all of the Debtors (whether known or unknown), all Counterparties to any Purchased Contracts and all Recording Officers.  Neither the FTD Sale Transaction nor the Asset Purchase

Agreement shall be subject to rejection or avoidance under any circumstances.  This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and its respective successors and assigns.

31.    Failure to Specify Provisions; Conflicts.    The failure specifically to include or mention any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Debtors and the Purchaser that the Asset Purchase Agreement be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.

32.    Further Assurances.  From time to time, as and when requested, all parties to the FTD Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the FTD Sale Transaction, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Purchaser its right, title and interest in and to the Purchased Assets and the assigned Purchased Contracts.

33.    Automatic Stay.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Asset Purchase Agreement and to take any and all actions permitted or required under the Asset Purchase Agreement in accordance with the terms and conditions thereof.

34.    No Stay of Order.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and

enforceable immediately upon entry. The provisions of this Order shall be self-executing. Time is of the essence in implementing the Asset Purchase Agreements and closing the FTD Sale Transaction.

35.     Governing Terms. To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement, the terms of this Order shall govern.

36.     Application of Cash Proceeds in Accordance with Final DIP Order. The cash proceeds (net of the (a) the amounts payable to the applicable Investment Banker and (b) the amounts payable under the *Order Granting Motion of the Debtors for an Order (I) Approving the Debtors (A) Key Employee Incentive Program and (B) Key Employee Retention Program and (II) Granting Certain Related Relief* [Docket No. 249]) derived from the sale of the Purchased Assets shall be distributed in accordance with the DIP Documents, the Prepetition Loan Documents, the Interim Order and the Final Order at the closing of the FTD Sale Transaction. Capitalized terms in paragraphs 36 and 37 of this Order not otherwise defined herein shall have the meanings given to such terms in that certain *Final Order Pursuant to Sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, (I) Authorizing Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling Final Hearing, and (IV) Granting Related Relief* [Doc. No. 311] (the "Final DIP Order").

37.     Pre-Trigger Notice Reserve Account. Pursuant to paragraph 17(b)(vi) of the Final DIP Order, upon the consummation of the FTD Sale Transaction, the Debtors shall be authorized and directed to transfer from the proceeds of the FTD Sale Transaction funds equal to

RLF1 21851004v.2

the Pre-Trigger Carve-Out Amount into the Pre-Trigger Notice Reserve Account.  The amount to be placed in the Pre-Trigger Notice Reserve Account on account of Allowed Professional Fees shall be calculated by adding the good-faith estimate of each Professional Person as to the amount of Allowed Professional Fees such Professional Person incurred or earned at any time between the Petition Date and the first Business Day following the consummation of the FTD Sale Transaction (for each Professional Person, the "Estimated Allowed Professional Fees").  No Professional Person shall be entitled to receive more than their Estimated Professional Fees from the Pre-Trigger Notice Reserve Account for Allowed Professional Fees incurred or earned at any time between the Petition Date and the first Business Day following the consummation of the FTD Sale Transaction.

38.    Texas Ad Valorem Taxes. Notwithstanding the foregoing, as adequate protection for the claims and liens of Dallas County, Galveston County and Tarrant County (the "Local Texas Tax Authorities"), $12,510 of proceeds of the sales of assets located in the state of Texas pursuant to the FTD Sale Transaction that are subject to a lien held by the Local Texas Tax Authorities, shall be deposited in a segregated account as adequate protection for the secured claims of the Local Texas Tax Authorities prior to the distribution of any such proceeds to any other creditor.  Any valid liens of the Local Texas Tax Authorities shall attach to these proceeds to the same extent and with the same priority as such liens currently attach to the applicable property of the Debtors.  The claims and liens of the Local Texas Tax Authorities shall remain subject to any objections any party (including the Debtors) would otherwise be entitled to raise as to the priority, validity, or extent of such liens. These segregated proceeds may be distributed upon agreement between the Local Texas Tax Authorities and the Debtors, or upon order of the Court with notice to the Local Texas Tax Authorities.

RLF1 21851004v.2

39.    <u>EasySaver Class Action Settlement</u>.    For the avoidance of doubt, and notwithstanding any other provision of this Order, the Asset Purchase Agreement and all other ancillary documents shall not and do not sell, convey, transfer or assign (a) the insurance policies (collectively, the "<u>Policies</u>") issued to Provide Commerce LLC or any of its affiliates by any of Hartford Fire Insurance Company, Hartford Casualty Insurance Company, Hartford Insurance Company of the Midwest and/or other applicable insurers (collectively, the "<u>Insurers</u>"), or the proceeds of those Policies that cover or may be accessed for payment of monies due under, that certain Settlement Agreement entered into on or about June 13, 2012, by and between the class representatives (on behalf of themselves and all other similarly situated members of the settlement in the Class Action (as defined below)), Provide Commerce, Inc., and Regent Group, Inc., dba Encore Marketing International, Inc. or (b) any claims or causes of action against the Insurers that relate to the class action in the United States District Court for the Southern District of California entitled *In re EasySaver Rewards Litigation*, Case No. 09-CV-2094-BAS (the "<u>Class Action</u>").

40.    <u>Retention of Jurisdiction</u>.    This Court shall retain exclusive jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order and the Asset Purchase Agreement, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith; and (b) decide any issues or disputes concerning this Order, the Asset Purchase Agreement or the rights and duties of the parties hereunder or thereunder, including the interpretation of the terms, conditions and provisions hereof and thereof, and the status, nature and extent of the Purchased Assets and the Purchased Contracts.

RLF1 21851004v.2

41.     The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: August 9th, 2019**
**Wilmington, Delaware**

-31-