**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| GUE Liquidation Companies, Inc., et al.,[1] | : | Case No. 19-11240 (LSS) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
|  | : | H'rg Date: October 23, 2019 at 2:00 p.m. (ET) |
|  | : | Obj. Deadline: October 14, 2019 at 4:00 p.m. (ET) |

**MOTION OF THE DEBTORS FOR AN ORDER
EXTENDING THE DEBTORS' EXCLUSIVE PERIODS TO
FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move the Court, pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order in substantially the form attached hereto as Exhibit A (the "Proposed Order") extending (i) the period during which the Debtors have the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period") by approximately 60 days, from October 1, 2019[2] through and including December 2, 2019, and (ii) the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period,

---

[1] The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): GUE Liquidation Companies, Inc. (5852); Bloom That, Inc. (9936); GUE Liquidation Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); GUE Liquidation, Inc. (1271); GUE Liquidation.CA, Inc. (7556); GUE Liquidation.COM, Inc. (4509); GUE Liquidation Group, Inc. (9190); GUE Liquidation Mobile, Inc. (7423); GUE Liquidation Giftco, LLC (5832); Provide Cards, Inc. (3462); GUE Liquidation Commerce LLC (0019); and GUE Liquidation Creations, Inc. (8964). The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

[2] Pursuant to Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the filing of this Motion prior to the current deadline serves to extend automatically the current deadline until such time as the Court rules on this Motion. See Local Rule 9006-2.

the "Exclusive Periods") through and including January 31, 2020, or approximately 60 days after the expiration of the Exclusive Filing Period, as extended.  In support of this Motion, the Debtors respectfully represent as follows:

### Preliminary Statement

1. Since filing their chapter 11 cases (collectively, the "Chapter 11 Cases"), the Debtors have made significant progress toward their ultimate goal – maximizing the value of their assets for the benefit of their stakeholders – while simultaneously undertaking various measures to stabilize and maintain their prior operations and minimize costs to their estates. Among other things, in the four months since the commencement of the Chapter 11 Cases, the Debtors have:  (a) secured debtor in possession financing to ensure access to liquidity necessary to administer these cases; (b) obtained Court approval of, and consummated, three separate sale processes resulting in the sale of substantially all of the Debtors' assets; and (c) filed a plan of liquidation to wind down the Chapter 11 Cases (D.I. 714) (as it may be amended or modified, the "Plan").  Each step of the way, the Debtors consistently have engaged in discussions and negotiations with their key constituencies.

2. It is against the backdrop of these activities and results that the Debtors seek to extend the periods within which they may exclusively file and solicit acceptances of a plan of liquidation.  The Debtors filed the Plan within the Exclusive Filing Period and further anticipate that, if their current projected confirmation schedule holds, the confirmation hearing on the Plan will occur on December 18, 2019.  If confirmation of the Plan is successful, this would allow the Debtors to exit chapter 11 by the end of the year.  To allow the Exclusive Periods to lapse and permit parties to file competing plans would unnecessarily increase administrative expenses and cause delays to the resolution of the Chapter 11 Cases (neither of which the Debtors or their stakeholders can afford in a liquidation process).  For the reasons set

forth herein, cause exists to extend the Exclusive Periods; accordingly, the Debtors respectfully request that the Court grant the Motion.

## Background

### A. General Background

3. On June 3, 2019 (the "Petition Date"), each of the Debtors commenced their respective Chapter 11 Cases. Pursuant to an order entered on June 4, 2019 (D.I. 41), the Chapter 11 Cases have been consolidated for procedural purposes only and are being administered jointly. The Debtors are authorized to continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. A comprehensive description of the Debtors' (a) businesses, operations, and capital structure (as of the Petition Date) and (b) the events leading to the commencement of the Chapter 11 Cases can be found in the *Declaration of Scott D. Levin in Support of First-Day Pleadings* (the "First Day Declaration") (D.I. 3), which was filed on the Petition Date and is incorporated herein by reference.

5. On June 12, 2019, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases (D.I. 118).

### B. Efforts to Maintain and Stabilize the Debtors' Operations

6. Since commencing the Chapter 11 Cases, the Debtors, with the assistance of their advisors, have devoted a significant amount of time and effort to ensuring a smooth transition into chapter 11, maintaining and stabilizing their operations, and fulfilling their administrative obligations. Among other things, the Debtors have sought and obtained Court approval:

(a)   authorizing the Debtors to pay the prepetition claims of certain lien claimants (D.I. 271);

(b)   authorizing the Debtors to pay the prepetition claims of certain essential suppliers (D.I. 275);

(c)   authorizing the Debtors to pay prepetition employee wages, benefits, and related items (D.I. 268);

(d)   authorizing the Debtors to pay prepetition insurance and surety bond obligations and continue their insurance and surety bond programs (D.I. 312);

(e)   authorizing the Debtors to pay certain prepetition taxes (D.I. 278);

(f)   establishing procedures for determining adequate assurance for the continued provision of utility services (D.I. 272);

(g)   approving the continued use of the Debtors' cash management system and approving continuation of ordinary course intercompany transactions (D.I. 281);

(h)   retaining various estate professionals (D.I. 43, 274, 280, 282, 283, 289, 292); and

(i)   securing a $94.5 million debtor in possession financing facility and the use of approximately $15.5 million in collateral for the wind down of the Debtors' estates (D.I. 311) (the "Final DIP Order").

7.   The foregoing relief was necessary (a) for the Debtors' continued operation of their businesses in bankruptcy and (b) to secure the continued support of key stakeholders – namely lenders, customers, vendors, employees, and other key parties in interest – over the course of the Chapter 11 Cases.

C.   **The Debtors' Asset Sales**

8.   The Debtors filed the Chapter 11 Cases with a stated goal of implementing and consummating value-maximizing asset sales for the benefit of their stakeholders. Within three months of the Petition Date, the Debtors' efforts resulted in the consummation of three discrete sales representing substantially all of the Debtors' assets.

9. On June 6, 2019, the Debtors filed the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (D.I. 82) (the "<u>Sale Motion</u>"), seeking approval of, among other things, (a) the Debtors' sale of substantially all of their assets; and (b) bidding procedures to be used in connection therewith. On June 25, 2019, the Court entered an order (D.I. 201) (the "<u>Bidding Procedures Order</u>") approving the Sale Motion.

10. On July 31, 2019, the Debtors held auctions for their (a) Shari's Berries/Gourmet Foods businesses and (b) legacy FTD business and restructured ProFlowers business. After multiple rounds of bidding at each auction, (a) SBGF Acquisition, LLC ("<u>SBGF</u>"), an affiliate of 1-800-Flowers.com, Inc., submitted the highest and best bid for the Shari's Berries/Gourmet Foods businesses and (b) Gateway Mercury Holdings, LLC ("<u>Gateway</u>") submitted the highest and best bid for the legacy FTD business and restructured ProFlowers business. <u>See</u> *Notice of Auction Results in Connection with the Sale of the FTD Assets and the Restructured ProFlowers Business* (D.I. 499), dated August 1, 2019; *Notice of Auction Results in Connection with the Sale of Gourmet Foods* (D.I. 500), dated August 1, 2019.

11. On August 1, 2019, the Court entered an order (D.I. 490) approving the sale of the Debtors' Personal Creations business (the "Personal Creations Sale") to PlanetArt, LLC ("PlanetArt").[3] The Personal Creations Sale closed on August 1, 2019. See *Notice of Occurrence of Closing of Sale of Personal Creations* (D.I. 520), dated August 7, 2019. On August 9, 2019, the Court entered orders (D.I. 552, 553) approving the sale of the Debtors' (a) Shari's Berries/Gourmet Foods businesses to SBGF (the "Gourmet Foods Sale") and (b) legacy FTD business and restructured ProFlowers business to Gateway (the "FTD/ProFlowers Sale"). The Gourmet Foods Sale closed on August 14, 2019, and the FTD/ProFlowers Sale closed on August 23, 2019. See *Notice of Occurrence of Closing of Sale of Gourmet Foods* (D.I. 578), dated August 15, 2019; *Notice of Occurrence of Closing of Sale of the FTD Assets and Restructured ProFlowers Business* (D.I. 603), dated August 23, 2019. As of the closing of the FTD/ProFlowers Sale, the Debtors are no longer operating entities.

**D.   The Plan**

12. On September 18, 2019, the Debtors filed the Plan, which contemplates a settlement (the "Committee Settlement") by and among the Debtors, the Committee, and the lenders under the Debtors' prepetition secured credit facility (collectively, the "Lenders"). Among other things, the Committee Settlement would (a) resolve potential claims and causes of action that might be brought against the Lenders (consistent with the Committee's challenge rights set forth in the Final DIP Order) and (b) provide for a recovery for unsecured creditors of the Debtors' estates. As of the date hereof, while the Committee and the Lenders continue to

---

[3] Except for the PlanetArt stalking horse bid, the Debtors did not receive any other Qualified Bid (as defined in the Bidding Procedures Order) for the Personal Creations business before the bid deadline. See *Notice of (I) Cancellation of Auction and (II) Successful Bid For Personal Creations* (D.I. 421), dated July 19, 2019. Accordingly, pursuant to the Bidding Procedures Order, the Debtors cancelled the auction with respect to the Personal Creations business and designated the PlanetArt stalking horse bid as the Successful Bid (as defined in the Bidding Procedures Order) for the Personal Creations business. Id.

engage in productive negotiations, the parties have not reached final agreement regarding the terms of the Committee Settlement. The Debtors are hopeful that the parties will achieve a settlement in the short term, which the Debtors believe will benefit their estates and stakeholders.

### E. Cost Saving Efforts

13. In parallel with their sale processes, the Debtors have worked with their advisors to reduce administrative expenses and generate other cost savings through the rejection of unexpired leases and executory contracts and the abandonment of burdensome personal property.

- The Debtors identified certain of their contracts and leases that were (a) no longer necessary to the Debtors' wind down efforts following the sales of their business operations; (b) unlikely to produce value for the Debtors' estates through assumption and assignment to a third party; and/or (c) accruing administrative expenses without an accompanying benefit to the Debtors' estates. As a result, the Debtors have sought and obtained Court approval of six omnibus motions to reject executory contracts and unexpired leases (D.I. 455, 599, 697, 698, 699, 696).

- The Debtors identified certain personal property that was of inconsequential value and burdensome to the Debtors' estates, which the Debtors have abandoned pursuant to (a) various Court orders (D.I. 455, 539, 571, 583, 686, 700) and (b) certain notice procedures provided by the *Order Establishing Procedures for the Sale, Transfer or Abandonment of Miscellaneous and De Minimis Assets and Granting Certain Related Relief* (D.I. 294, 633).

### F. Compliance with Ongoing Reporting and Other Obligations

14. Finally, the Debtors and their advisors have spent considerable time and energy complying with their ongoing reporting requirements in the Chapter 11 Cases. Among other things, the Debtors have filed their: (a) first Bankruptcy Rule 2015.3 report (D.I. 414); (b) schedules of assets and liabilities and statements of financial affairs (D.I. 349-378); and (c) monthly operating reports (D.I. 145, 483, 620). Further, the Debtors have prepared for and attended two "Section 341" meetings. More recently, the Debtors obtained Court approval

(D.I. 450) to establish bar dates for filing proofs of claim and requests for payment of administrative expenses in the Chapter 11 Cases.

### Jurisdiction

15. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

16. By this Motion, the Debtors request the entry of the Proposed Order, pursuant to section 1121(d) of the Bankruptcy Code, extending the Exclusive Filing Period by approximately 60 days, from October 1, 2019 through and including December 2, 2019, and extending the Exclusive Solicitation Period by 60 days therefrom, through and including January 31, 2020. The Debtors also request that such extensions be without prejudice to their rights to request further extensions or to seek other appropriate relief.

### Basis For Relief

17. Under section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a chapter 11 plan in the first 120 days following the commencement of a chapter 11 case. If a debtor files a plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code provides a debtor with 60 days following the expiration of the exclusive filing period (or 180 days following the commencement of the case) to solicit acceptances of a plan.

18. Section 1121(d) of the Bankruptcy Code provides a debtor with a mechanism to extend these exclusive periods, stating that "on request of a party in interest made ... and after notice and a hearing, the court may for cause reduce or increase the 120-day

period or the 180-day period referred to in this section."  11 U.S.C. § 1121(d)(1).  The ultimate decision to extend a debtor's exclusive periods rests within the discretion of the bankruptcy court.  See First Am. Bank of N.Y. v. S.W. Gloves & Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986) (finding authority to extend the debtor's exclusivity within the discretion of the bankruptcy court).

19. While the Bankruptcy Code does not define "cause," courts rely on various factors to determine whether cause exists to extend a debtor's exclusive periods.  These factors include:

(a) the size and complexity of the case;

(b) the necessity of sufficient time to negotiate and prepare adequate information;

(c) the existence of good faith progress;

(d) whether the debtor is paying its debts as they become due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress negotiating with creditors;

(g) the length of time a case has been pending;

(h) whether the debtor is seeking an extension to pressure creditors; and

(i) whether or not unresolved contingencies exist.

See In re Adelphia Comm. Corp., 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006); In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); In re Express One Int'l Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); see also In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989) (listing certain of the above factors); In re Grand Traverse Dev. Co. Ltd. P'ship, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992) (same).

20. Not all of these factors are relevant in every case, and a finding that even one of these factors exists may justify extending a debtor's exclusive periods. See Express One, 194 B.R. at 100-01 (four factors relevant in determining whether cause exists to extend exclusivity); In re Interco, Inc., 137 B.R. 999, 1000-01 (Bankr. E.D. Mo. 1992) (four factors demonstrated that bondholders' committee failed to show cause to terminate debtors' exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269-70 (Bankr. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon a showing of certain of the factors listed above). In fact, the mere complexity and size of a chapter 11 case alone may warrant extension of the exclusive periods in order to permit a debtor meaningful opportunity to formulate a chapter 11 plan. See, e.g., In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) (holding that "cause" existed to grant debtor's first request to extend exclusivity based on size and complexity of case alone).

21. Based on a weighing of the relevant factors, there is more than sufficient cause to approve the extension of the Exclusive Periods requested by the Debtors:

- The Chapter 11 Cases are large and complex. As further described in the First Day Declaration, the Debtors, on the Petition Date, provided floral, specialty foods, gift, and related products to consumers, retail florists, and other retail locations on an international scale. In order to achieve their goal of maximizing value for stakeholders, in the short time that the Debtors' cases have been pending, the Debtors have confronted and addressed complex and challenging issues, including execution of three parallel sale processes for the sale of the Debtors' Personal Creations, Shari's Berries/Gourmet Foods, and FTD/ProFlowers business operations.

- The Debtors have made substantial good faith progress in these cases while continuing to engage in discussions and negotiations with their key creditor constituencies. In addition to the sale of substantially all of their assets, the Debtors have, among other things: (a) obtained access to necessary liquidity through a consensual postpetition credit facility; (b) obtained approval of a variety of administrative and operational relief to ensure the efficient operation of the Debtors postpetition and support the value-maximizing sale processes; and (c) filed the Plan to enable the

- Debtors to wind down their estates and exit chapter 11 in an efficient manner. The Debtors intend to continue engaging with their stakeholders in good faith as they pursue confirmation and consummation of the Plan.

- Since filing the Chapter 11 Cases, the Debtors believe that they have continued to pay substantially all of their postpetition, undisputed expenses and invoices in the ordinary course of business or as otherwise provided by order of the Court.

- The requested extension of the Exclusive Periods is the first such request made in the Chapter 11 Cases and comes approximately four months after the Petition Date. As discussed above, during this time, the Debtors have expended substantial resources on obtaining approval of, and executing, the Court-approved sale processes, complying with the requirements of the Bankruptcy Code and the Bankruptcy Rules, administering their estates, and undertaking other cost-saving measures for the benefit of their stakeholders.

- The Debtors are not seeking an extension of the Exclusive Periods to pressure or prejudice any of their stakeholders. Rather, the Debtors are seeking an extension of the Exclusive Periods to preserve the progress embodied in their filed Plan, including continued negotiations regarding the Committee Settlement involving the Committee and the Lenders (i.e., their two most important creditor constituencies). The Debtors' efforts will benefit, not prejudice, their creditors.

22. The relevant factors described above support the Debtors' requested extension of the Exclusive Periods. Extending the Exclusive Filing Period by approximately 60 days and extending the Exclusive Solicitation Period by an additional 60 days will ensure that the Debtors are able to capitalize on the progress they have made to date in the Chapter 11 Cases. Further, the requested extension is well within the range of similar relief granted by courts in this district under similar circumstances. See, e.g., In re Imerys Talc Am., Inc., No. 19-10289 (LSS) (Bankr. D. Del. Sep. 18, 2019) (D.I. 1051) (granting a 90-day extension); In re Samuels Jewelers, Inc., No. 18-11818 (KJC) (Bankr. D. Del. Jan. 2, 2019) (D.I. 555) (same); In re VER Tech. HoldCo LLC, No. 18-10834 (KG) (Bankr. D. Del. Aug. 14, 2018) (D.I. 705) (granting a 150-day extension); In re M&G USA Corp., No. 17-12307 (BLS) (Bankr. D. Del. Mar. 12, 2018)

(D.I. 1135) (granting a 120-day extension); <u>In re CST Indus. Holdings Inc.</u>, No. 17-11292 (BLS) (Bankr. D. Del. Oct. 23, 2017) (D.I. 673) (same); <u>In re Aquion Energy, Inc.</u>, No. 17-10500 (KJC) (Bankr. D. Del. Jul. 17, 2017) (D.I. 277) (same); <u>In re Golfsmith Int'l Holdings, Inc.</u>, No. 16-12033 (LSS) (Bankr. D. Del. Jan. 30, 2017) (D.I. 717) (same).

### Reservation of Rights

23. The Debtors reserve their rights to request an additional extension of the Exclusive Filing Period and the Exclusive Solicitation Period.

### Consent to Jurisdiction

24. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### Notice

25. Notice of this Motion shall be provided to (a) the U.S. Trustee; (b) Kelley Drye & Warren LLP and Benesch Friedlander Coplan & Aronoff LLP, as co-counsel to the Committee; (c) Moore & Van Allen PLLC, as counsel to Bank of America, N.A., as administrative agent under the Debtors' prepetition and postpetition secured credit facilities; and (d) any other party entitled to notice pursuant to Bankruptcy Rule 2002 or order of the Court. Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

### No Prior Request

26. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Proposed Order, granting the relief requested herein; and (ii) grant such other and further relief to the Debtors as the Court may deem proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

| | |
|---|---|
| Dated: September 30, 2019<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Megan E. Kenney*<br>Daniel J. DeFranceschi (No. 2732)<br>Paul N. Heath (No. 3704)<br>Brett M. Haywood (No. 6166)<br>Megan E. Kenney (No. 6426)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 N. King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701<br>Email: defranceschi@rlf.com<br>heath@rlf.com<br>haywood@rlf.com<br>kenney@rlf.com<br><br>-and-<br><br>Heather Lennox (admitted *pro hac vice*)<br>Thomas A. Wilson (admitted *pro hac vice*)<br>JONES DAY<br>901 Lakeside Avenue<br>Cleveland, Ohio 44114<br>Telephone: (216) 586-3939<br>Facsimile: (216) 579-0212<br>Email: hlennox@jonesday.com<br>tawilson@jonesday.com<br><br>Brad B. Erens (admitted *pro hac vice*)<br>Caitlin K. Cahow (admitted *pro hac vice*)<br>JONES DAY<br>77 West Wacker<br>Chicago, Illinois 60601<br>Telephone: (312) 782-3939<br>Facsimile: (312) 782-8585<br>Email: bberens@jonesday.com<br>ccahow@jonesday.com<br><br>ATTORNEYS FOR<br>DEBTORS AND DEBTORS IN POSSESSION |