# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| GUE Liquidation Companies, Inc., et al.,[1] | : | Case No. 19-11240 (LSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Obj. Deadline:  December 3, 2019 at 4:00 p.m. (ET)** |
| | : | **Hearing Date:  December 18, 2019 at 10:00 a.m. (ET)** |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING SETTLEMENT BY AND AMONG THE DEBTORS AND THE PENSION BENEFIT GUARANTY CORPORATION WITH RESPECT TO PBGC CLAIMS

GUE Liquidation Companies, Inc. and certain of its direct and indirect domestic subsidiaries, as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent as follows:

### Background

1. On June 3, 2019 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Pursuant to an order entered on June 4, 2019 (D.I. 41), the Debtors' chapter 11 cases (collectively, the "Chapter 11 Cases") have been consolidated for procedural purposes only and are being administered jointly.  The Debtors are authorized to continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. A comprehensive description of the Debtors' (a) historic businesses, operations, and capital structure (as of the Petition Date) and (b) the events leading to the

---

[1]  The Debtors are the following 15 entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses):  GUE Liquidation Companies, Inc. (5852); Bloom That, Inc. (9936); GUE Liquidation Delivery, Inc. (6960); FlowerFarm, Inc. (2852); FSC Denver LLC (7104); FSC Phoenix LLC (7970); GUE Liquidation, Inc. (1271); GUE Liquidation.CA, Inc. (7556); GUE Liquidation.COM, Inc. (4509); GUE Liquidation Group, Inc. (9190); GUE Liquidation Mobile, Inc. (7423); GUE Liquidation Giftco, LLC (5832); Provide Cards, Inc. (3462); GUE Liquidation Commerce LLC (0019); and GUE Liquidation Creations, Inc. (8964).  The Debtors' noticing address in these chapter 11 cases is 3113 Woodcreek Drive, Downers Grove, IL 60515.

commencement of the Chapter 11 Cases can be found in the *Declaration of Scott D. Levin in Support of First-Day Pleadings* (D.I. 3), which was filed on the Petition Date and is incorporated herein by reference.

3. On June 12, 2019, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these Chapter 11 Cases (D.I. 118).

4. On August 1, 2019, the Court entered an order (D.I. 490) approving the sale of the Debtors' Personal Creations business (the "Personal Creations Sale") to PlanetArt, LLC.  The Personal Creations Sale closed on August 1, 2019.  See *Notice of Occurrence of Sale of Personal Creations* (D.I. 520), dated August 7, 2019.  On August 9, 2019, the Court entered orders (D.I. 552; 553) approving the sale of the Debtors' (a) Shari's Berries/Gourmet Foods businesses to SBGF Acquisition, LLC (the "Gourmet Foods Sale") and (b) legacy FTD business and restructured ProFlowers business to Gateway Mercury Holdings, LLC (the "FTD/ProFlowers Sale" and together with the Personal Creations Sale and the Gourmet Foods Sale, the "Sales").  The Gourmet Foods Sale closed on August 14, 2019, and the FTD/ProFlowers Sale closed on August 23, 2019.  See *Notice of Occurrence of Closing of Sale of Gourmet Foods* (D.I. 578), dated August 15, 2019; *Notice of Occurrence of Closing of Sale the FTD Assets and Restructured ProFlowers Business* (D.I. 603), dated August 23, 2019.  As of the closing of the FTD/ProFlowers Sale, the Debtors are no longer operating entities.

## Jurisdiction and Venue

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

6. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors hereby seek the entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Order"), approving the settlement detailed herein (the "Settlement") by and among the Debtors and the Pension Benefit Guaranty Corporation (the "PBGC," and together with the Debtors, the "Parties") resolving the PBGC's proofs of claim.[2]

**Facts Relevant to This Motion**

**A.    The PBGC and the Debtors' Pension Plan**

7. The PBGC is a wholly owned United States government corporation and federal agency created under Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),[3] that administers the termination insurance program for certain defined-benefit pension plans. The PBGC guarantees payment of certain pension benefits upon termination of a plan covered under Title IV of ERISA. When an underfunded plan terminates, the PBGC generally becomes trustee, takes custody of the terminated plan's assets, and subject to statutory limitations, pays plan participants and beneficiaries their accrued benefits.

8. Debtor GUE Liquidation Delivery, Inc. (*f/k/a* Florists' Transworld Delivery, Inc.) ("FTD") was the contributing sponsor and administrator of the Florists' Transworld Delivery, Inc. Salaried Employees' Pension Plan (the "Pension Plan"), which was established effective November 1, 1953 to provide retirement benefits for certain of FTD's salaried employees. The Pension Plan is covered under Title IV of ERISA.

---

[2]    Claim Nos. 249-2, 246-2, 246-3, 247-3, 249-3, 250-4, 242-4, 243-4, 243-5, 242-5, 250-5, 246-5, 249-5, 247-6, 248-6, 248-7, 242-7, 250-7, 247-7, 243-8, 248-9, 253-10, 251-10, 251-11, 253-11, 251-13, 253-13, 245-27, 245-28, 245-31, 244-41, 244-42, 244-44, 254-70, 254-72, 254-75, 241-86, 241-87, 241-90, 252-159, 252-161, 252-177, 240-287, 240-288, 240-289.

[3]    ERISA is codified in title 29, sections 1001-1461 of the United States Code.

### B.      Freezing of the Pension Plan

9.      In 1995, FTD implemented a "complete freeze" of the Pension Plan, which resulted in the cessation of service accruals and the earning of benefits for all of the Pension Plan's participants.  As of the Petition Date, there were approximately 50 remaining participants under the Pension Plan, with only eight of such participants being active employees of FTD.

### C.      Postpetition Termination of the Pension Plan

10.     On September 23, 2019, the PBGC issued a *Notice of Determination*, indicating (a) that the Pension Plan has not met the minimum funding standard required under section 412 of the Internal Revenue Code and will be unable to pay benefits when due under 29 U.S.C. § 1342(a)(1) and (2), (b) that the Pension Plan must be terminated to protect the interests of participants under 29 U.S.C. § 1342(c), and (c) the PBGC's intention to proceed under 29 U.S.C. § 1342 to have the Pension Plan terminated and the PBGC appointed as statutory trustee and under 29 U.S.C. § 1348 to have the Pension Plan's date of plan termination established as August 31, 2019 (the "Termination Date").  Given the cessation of the Debtors' businesses and the need to provide for continuity of present and prospective retirement pension benefits to FTD's now-former employees, the Debtors agreed to the termination of the Pension Plan by the PBGC as of the Termination Date.

### D.      The PBGC Claims

11.     *Termination Premium Claims*.  The PBGC asserts unsecured claims against each of the Debtors in the amount of $195,000 in respect of alleged termination premiums under 29 U.S.C. §§ 1306(a)(7) and 1307 (the "Termination Premium Claims").  An example of the Termination Premium Claims is attached hereto as Exhibit B.

12.     *Unfunded Benefits Liability Claims*.  The PBGC asserts claims against each of the Debtors in the amount of $1,524,913 in respect of the Pension Plan's unfunded

-4-
RLF1 22476384v.1

benefits liabilities under 29 U.S.C. §§ 1362 and 1368 (the "Unfunded Benefits Liability Claims"). An example of the Unfunded Benefits Liability Claims is attached hereto as Exhibit C. The PBGC asserts that the Unfunded Benefits Liability Claims are entitled to administrative expense priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code as a tax incurred by the estate in an unliquidated amount up to 30% of the controlled group's collective net worth. Alternatively, the PBGC asserts that the Unfunded Benefits Liability Claims are entitled to priority under section 507(a)(8) of the Bankruptcy Code.

13. ***Minimum Funding Contribution Claims***. The PBGC filed claims against each of the Debtors in the amount of $83,022 in respect of the Pension Plan's unpaid minimum funding contributions under 26 U.S.C. §§ 412 and 430 and 29 U.S.C. §§ 1082, 1342, and 1362(c) (the "Minimum Funding Contribution Claims," and together with the Unfunded Benefits Liability Claims and the Termination Premium Claims, the "PBGC Claims"). An example of the Minimum Funding Contribution Claims is attached hereto as Exhibit D. The PBGC has asserted that $8,048 of the Minimum Funding Contribution Claims is entitled to administrative expense priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code for the normal cost portions of contributions attributable to the postpetition period. The PBGC also has asserted that $3,381 of the Minimum Funding Contribution Claims is entitled to priority under section 507(a)(5) of the Bankruptcy Code for the normal cost portion of contributions attributable to the 180 days immediately preceding the Petition Date.

**E.     Settlement**

14. The Debtors and PBGC conferred about PBGC's assertions in its claims, in particular with respect to priority. In order to avoid the time and expense associated with litigating the factual and legal issues presented by the PBGC Claims, the Parties pursued settlement discussions which ultimately led to this proposed Settlement:

a) the PBGC shall have a single allowed general unsecured claim in the amount of $1,791,506 (the "Allowed General Unsecured Claim");

b) the PBGC shall have a single allowed administrative expense claim in the amount of $11,429 (the "Allowed Administrative Expense Claim" and, together with the Allowed General Unsecured Claim, the "Allowed Claims");

c) the Allowed Claims shall be in full and final satisfaction of any and all claims that have been or could have been asserted by the PBGC against the Debtors, including the PBGC Claims;

d) the Debtors will add the following language to the proposed confirmation order with respect to the Debtor's proposed chapter 11 plan (the "Confirmation Order"):  "Nothing in the Plan or this Confirmation Order shall in any way be construed to discharge, release, limit, or relieve any party for a fiduciary breach related to the Florists' Transworld Delivery, Inc. Salaried Employees' Pension Plan. The PBGC and the Florists' Transworld Delivery, Inc. Salaried Employees' Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility by any of the provisions of the Plan or this Confirmation Order."; and

e) the PBGC will not object to any part of, or vote against, the Debtors' chapter 11 plan.

15. The Settlement is the fruit of good-faith negotiations between the Parties and provides for a complete and final resolution of the PBGC Claims.

**Basis for Relief**

16. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  The compromise or settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy."  In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Cent. Transp. Co., 596 F.2d 1102 (3d Cir. 1979).

17. "[T]he decision whether to approve a compromise under [Bankruptcy] Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."  In re Louise's, Inc., 211 B.R.

-6-

798, 801 (D. Del. 1997). Courts should canvas the issues to see whether the compromise falls below the lowest point in the range of reasonableness. See In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986); In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983); see also In re World Health, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (internal citations and quotations omitted).

   18. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Nw. Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006) (finding that the Martin factors are useful when analyzing a settlement of a claim against the debtor as well as a claim belonging to the debtor); see also TMT Trailer Ferry, Inc., 390 U.S. at 424; In re Marvel Entm't Group, Inc., 222 B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate); In re Mavrode, 205 B.R. 716, 721 (Bankr. D.N.J. 1997). The test may be summarized as whether the terms of the proposed compromise fall "within a reasonable range of litigation possibilities." In re Penn Cent., 596 F.2d at 1114 (citations omitted); see In re Pa. Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992) (same).

   19. The compromise embodied in the Settlement falls well within the range of reasonableness. Specifically, the Settlement allows the Debtors to avoid the costs, risks, and distractions associated with litigating the PBGC Claims. Moreover, the Settlement ensures that only a fraction of the PBGC Claims (0.6%) is allowed as an administrative or priority claim — a critical part of the Debtors' goal in ensuring they remain administratively solvent and that their

-7-

chapter 11 plan remains feasible. While the Debtors could attempt to object to the allowed amount of the PBGC claims, given the complexity of that issue and the low distribution projected for general unsecured creditors under the Debtor's chapter 11 plan (5% or less), the costs to the estates of pursuing such an objection likely would exceed any value, even if successful (the total amount likely to be distributed to the PBGC under the Settlement if general unsecured creditors receive 5% on their claims is approximately $100,000).

20. To the extent that section 363 of the Bankruptcy Code is implicated in connection with the Settlement, the Debtors seek authority to execute and perform the obligations thereunder. The Debtors submit that the terms of the Settlement have a sound business purpose and represent the exercise of sound business judgment. Accordingly, any actions required to effectuate the terms of the Settlement should be authorized and approved pursuant to section 363(b), to the extent applicable. See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him [or her] a good business reason to grant the application."); In re Del. & Hudson R.R. Co., 124 B.R. 169, 179 (Bankr. D. Del. 1991).

21. Finally, authorizing the Debtors to enter into and effectuate the terms of the Settlement is well within the equitable powers of this Court. See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); see also Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws").

22. Accordingly, the Settlement should be approved under Bankruptcy Rule 9019 and sections 105 and 363 of the Bankruptcy Code.

## Consent to Jurisdiction

23. Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

24. Notice of this Motion shall be provided to (a) the U.S. Trustee; (b) Kelley Drye & Warren LLP and Benesch Friedlander Coplan & Aronoff LLP, as co-counsel to the Committee; (c) Moore & Van Allen PLLC, as counsel to Bank of America, N.A., as administrative agent under the Debtors' prepetition and postpetition secured credit facilities; (d) the PBGC; and (e) any other party entitled to notice pursuant to Bankruptcy Rule 2002 or order of the Court. Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

## No Prior Request

25. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Proposed Order, granting the relief requested herein; and (ii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: November 19, 2019  
　　　　Wilmington, Delaware

Respectfully submitted,

*/s/ Brett M. Haywood*
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Brett M. Haywood (No. 6166)
Megan E. Kenney (No. 6426)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
　　　　heath@rlf.com
　　　　haywood@rlf.com
　　　　kenney@rlf.com

　　　　-and-

Heather Lennox (admitted *pro hac vice*)
Thomas A. Wilson (admitted *pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: hlennox@jonesday.com
　　　　tawilson@jonesday.com

Brad B. Erens (admitted *pro hac vice*)
Caitlin K. Cahow (admitted *pro hac vice*)
JONES DAY
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: bberens@jonesday.com
　　　　ccahow@jonesday.com

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION